IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

UNITED STATES OF AMERICA                                              PLAINTIFF

v.                              Case No. 4:14-cr-00201-KGB

LYNN ESPEJO                                                          DEFENDANT

**TENTATIVE FINDINGS**

The Court has received and reviewed the Presentence Investigation Report ("PSR") for defendant Lynn Espejo. The Court also has received and reviewed Ms. Espejo's objections to the PSR, the Probation Office's responses to those objections, and Ms. Espejo and the United States' sentencing memoranda (Dkt. Nos. 180, 181). Further, the Court heard argument at the initial sentencing hearing conducted in this matter on September 22, 2017 (Dkt. No. 182). Based on the Court's consideration of those items, as well as the testimony and evidence presented at the trial, the Court issues the following Tentative Findings. The Court advises the parties that these Tentative Findings are issued with the understanding that, pursuant to *United States v. Booker*, 543 U.S. 220 (2005), the sentencing guidelines are advisory.

   **I.   Objection to Loss Calculation**

Ms. Espejo objects to the loss calculation and resulting 14-level enhancement set forth in the PSR pursuant to the United States Sentencing Guideline ("USSG") § 2B1.1(b)(2), (Dkt. No. 180, at 2). Ms. Espejo asserts that the amount of loss is the actual loss of $285,459.86 for which she was charged in the indictment and ultimately convicted (*Id*., at 3).

As a general rule, the amount of loss under the USSG is the greater of actual loss or intended loss. *See* United States Sentencing Commission, *Guidelines Manual*, § 2B1.1 cmt. n. 3(A) (Nov. 2016) ("USSG Manual"); *United States v. Parish*, 565 F.3d 528, 534 (8th Cir. 2009). Actual loss is defined as the reasonably foreseeable pecuniary harm that resulted from the offense,

and intended loss is defined as the pecuniary harm that was intended to result from the offense. USSG Manual § 2B1.1 cmt. n. 3(A)(i)-(ii). Because it is often difficult to calculate the precise amount of loss in a fraud case, "a district court's determination of loss need not be precise, although it must reflect a reasonable estimate of the loss." *United States v. Boesen,* 541 F.3d 838, 851 (8th Cir. 2008); USSG Manual § 2B1.1 cmt. n. 3(C). The burden of proving the extent of the loss at sentencing falls on the government; the government must prove the extent of loss by a preponderance of the evidence. *United States v. Mills,* 987 F.2d 1311, 1315 (8th Cir. 1993).

A sentencing court must include in its calculation any losses caused by "relevant conduct." *United States v. Quevedo*, 654 F.3d 819, 823 (8th Cir. 2011). This includes charged and uncharged conduct that was "part of the same course of conduct or common scheme or plan as the offense[s] of conviction." *Id.* (citing *United States v. McIntosh,* 492 F.3d 956, 960–61 (8th Cir. 2007)). Relevant conduct under the USSG need not be charged to be considered in sentencing, and it includes all acts and omissions that were part of the same course of conduct or common scheme or plan as the offense of conviction. *United States. v. Radtke*, 415 F.3d 826, 841 (8th Cir. 2005). Courts are not limited to loss amounts proven at trial in their calculation. *United States v. Jokhoo*, 806 F.3d 1137, 1141 (2015). Relevant conduct may include conduct that predates that charged in the indictment and conduct that is committed outside the relevant statute of limitations period. *See e.g., United States v. Cousineau*, 929 F.2d 64, 68 (2d Cir. 1991); *United States v. Silkowski*, 32 F.3d 682, 688 (2d Cir. 1994); *United States v. Lokey,* 945 F.2d 825, 840 (5th Cir.1991).

In her presentence memorandum, Ms. Espejo objects to the PSR loss calculation of $611,099.41; she claims this figure is the result of erroneously adding the money laundering amounts to the wire fraud amounts (Dkt. No. 180, at 3). At the sentencing hearing, Ms. Espejo objected to the incorporation of funds transferred from PMSI and BMSI to her personal accounts

prior to November 2009 as outside the statute of limitations period. However, the Court concludes that $611,099.41 is the sum of the amounts transferred from PSMSI and BMSI to Ms. Espejo's personal accounts over the course of her employment at PMSI and not the result of double counting funds to arrive at a loss amount. The Court further finds that it can include the pre-indictment transfers from PSMSI and BMSI to Ms. Espejo's personal accounts as relevant conduct.

As such, the Court tentatively determines that the government has proven by a preponderance of the evidence that the amount of loss is $611,099.41. The testimony of Internal Revenue Service ("IRS") Agent John Shortway, and corresponding audit trail and certified bank records, presented at trial showed that Ms. Espejo transferred the following amounts from PMSI and BMSI accounts to her personal accounts: $148,371.97 in 2007, $103,267.21 in 2008, $149,034.45 in 2009, and $210,425.41 in 2010 (Dkt. No. 160, at 661). Evidence at trial, which the jury found credible, further showed that Ms. Espejo was at no time authorized to transfer money from PMSI and BMSI accounts to her personal accounts.

The Court concludes that all of the transfers are relevant conduct for this Court to consider in sentencing Ms. Espejo. The Court tentatively determines that the government has proven by a preponderance of the evidence that the 14-level enhancement is warranted pursuant to U.S.S.G. § 2B1.1(b)(1)(H) and overrules Ms. Espejo's objections related to loss amount.

## II.     Objection to Tax Calculation

Ms. Espejo objects to the tax loss calculation set forth in paragraph 26 of the PSR. She argues that the tax loss calculation is erroneous and should be calculated based on the amount she was convicted of defrauding PMSI, or $285,459.86.

Tax fraud convictions under 26 U.S.C. § 7206(1) are addressed in U.S.S.G. § 2T1.1. Section 2T1.1 provides a base offense level obtained from the tax tables at § 2T4.1 based upon the

tax loss. The offense level is based on the tax loss attributable to the defendant's conduct. "Relevant conduct for sentencing is viewed broadly: 'In determining the total tax loss attributable to the offense . . ., all conduct violating the tax laws should be considered as part of the same course of conduct or common scheme or plan unless the evidence demonstrates that the conduct is clearly unrelated.'" *United States v. Ervasti*, 201 F.3d 1029, 1042 (8th Cir. 2000) (quoting USSG Manual § 2T1.1(c)(1), cmt. n.2). Tax loss is "the total amount of loss that was the object of the offense." U.S.S.G. § 2T1.1(c)(1). The government has the burden at sentencing to prove tax loss by a preponderance of the evidence. *United States v. Tucker*, 217 F.3d 960, 961 (8th Cir. 2000). The amount of the tax loss may be made based on a reasonable estimate from the available facts. *Ervasti*, 201 F.3d at 1042.

Here, the United States has submitted evidence, including the testimony of IRS Agent Kim Johnson who reviewed Ms. Espejo's tax filings for the years 2007 through 2010. Agent Johnson concluded that the total additional tax due from Ms. Espejo was $207,941.00 (Dkt. No. 160, at 663). Further, the Court determines that all of the transfers from PMSI and BMSI to Ms. Espejo's personal accounts are relevant conduct. A tax loss of greater than $100,000.00 and less than $250,000.00 results in an offense level of 16. USSG Manual § 2T4.1. The Court determines that the government has proven by a preponderance of the evidence that the tax loss calculation set forth in the PSR is correct. The Court tentatively overrules Ms. Espejo's objection to the tax loss calculation and imposes an offense level of 16 for the offense of filing false or fraudulent tax returns.

### III. Objection To Obstruction Of Justice Enhancement

Ms. Espejo objects to the two-level enhancement for obstruction of justice set forth in paragraphs 23 and 30 of the PSR pursuant to USSG § 3C1.1. In addition, Ms. Espejo objects to

the factual allegations set forth in paragraphs 11 and 15 of the PSR related to the adjustment for obstruction of justice. When a defendant objects to specific factual allegations contained in the PSR that the government relies on to establish a sentencing enhancement, the government must then prove by a preponderance of the evidence those allegations. *United States v. Razo-Guerra*, 534 F.3d 970, 975 (8th Cir. 2008). Assuming that the specific factual allegations to which Ms. Espejo objects are relied on by the government to establish a sentencing enhancement, the Court turns to determining whether the government has proven those allegations by a preponderance of the evidence.

> The two-level sentencing enhancement for obstruction of justice applies if
>
> the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (2) the obstructive conduct related to (A) the defendant's offense of conviction and any relevant conduct; or (B) a closely related offense . . . .

USSG Manual § 3C1.1.

"[C]ommitting, suborning, or attempting to suborn perjury" constitute types of conduct to which the enhancement applies. *United States v. King*, 854 F.3d 433, 446 (8th Cir. 2017) (quoting USSG Manual § 3C1.1 cmt. n. 4(B)). A district court may apply the two-level increase under § 3C1.1 if it "finds by a preponderance of the evidence that a defendant committed perjury, *i.e.*, that he willfully testified falsely as to a material matter." *United States v. Reid*, 827 F.3d 797, 801 (8th Cir. 2016); *see also United States v. Waters*, 799 F.3d 964, 974 (8th Cir. 2015) ("Perjury occurs when a witness 'gives false testimony concerning a material matter with the wilfull intent to provide false testimony.'" (quoting *United States v. Petrovic*, 701 F.3d 849, 859 (8th Cir. 2012)). "'Material' evidence, fact, statement, or information, as used in this section, means evidence, fact, statement, or information that, if believed, would tend to influence or affect the issue under

determination." USSG Manual § 3C1.1 cmt. n. 6. Even if "the district court neglect[s] to address whether the false testimony was material[,] . . . this court has affirmed a finding of obstruction of justice where the finding is 'strongly supported by the record.'" *King*, 854 F.3d at 446 (quoting *United States v. McDonald*, 826 F.3d 1066, 1071 (8th Cir. 2016)).

A district court applying the obstruction of justice enhancement for perjury must review the evidence and make an independent finding, by a preponderance of the evidence, of perjury in order to impose a sentence enhancement for obstruction of justice. *United States v. Thomas*, 93 F.3d 479, 489 (1996). Under the Guidelines, not all inaccurate testimony or statements necessarily reflect a willful attempt to obstruct justice. USSG Manual § 3C1.1 cmt. 2.

The Court determines that the government has not carried its burden of proof to demonstrate that Ms. Espejo committed perjury with regard to a material matter as it relates to her tax return testimony. Ms. Espejo testified at trial that her husband prepared the tax returns from 2007 through 2009 (Dkt. No. 163, at 876-77). Based upon the questioning during trial, the following exchanges took place before the grand jury, with Ms. Espejo providing the answers:

> Q. Did your husband or you file joint tax returns, federal tax returns in the years 2007, 2008, 2009, and 2010?
>
> A. We do file joint tax returns.
>
> Q. Did you file joint tax returns for those three years?
>
> A. Did – yes, we did file joint tax returns. I did the return and we filed it. Yes.
>
> . . .
>
> Q. Did you file it through Bell & Company?
>
> A. Bell & Company is not – not our CPA.
>
> Q. I know. Were they filed through Bell & Company, which is your husband's employer?

| | | |
|---|---|---|
| | A. | I did the return myself. |
| | Q. | Did you electronically file it? |
| | A. | Well, that's a free service that everybody gets there. |
| | Q. | So is that a "yes?" |
| | A. | I mean, I worked there, too. Yes. |

(Dkt. No. 163, at 877-78). The government concedes that Ms. Espejo then explained, "I worked there 2005 through '06 or '07." (*Id.* at 878).

The Court determines that, at best, Ms. Espejo's testimony reflects confusion or a misunderstanding of counsel's questions. Ms. Espejo explained at trial that, when questioned before the grand jury, she believed the government to be accusing her of not filing a tax return for those years, which she testified that she did (*Id.* at 877). The imprecision with which Ms. Espejo answers questions regarding who prepared and filed the joint tax returns does not rise to the level of willful false testimony, as required for this sentencing enhancement. The Court declines to make a finding of perjury based upon Ms. Espejo's tax return testimony. As a result of this ruling, the Court tentatively sustains Ms. Espejo's objections to paragraphs 15, 23, 30, 31, 32, 35, and 38 of the PSR, as well as her objections to the corresponding paragraphs that total and reflect her base offense level. Even if the Court were to make a finding of perjury regarding Ms. Espejo's tax return testimony and apply the obstruction of justice enhancement, which the Court does not, the Court finds that the enhancement would only apply as to the counts in Group 2. The guidelines provide that committing, suborning, or attempting to suborn perjury is conduct warranting an obstruction enhancement if such perjury pertains to conduct that forms the basis of the offense of conviction. USSG Manual § 3C1.1 cmt. 4(B). The Court determines that Ms. Espejo's testimony

regarding the preparation and filing of her tax returns was not material to the counts forming Group 1 and did not affect the jury's determination of guilt in the Group 1 counts.

Specific to Group 2, Ms. Espejo objects to the alternative basis for an obstruction of justice enhancement set forth in paragraph 30 of the PSR. Paragraph 30 provides that Ms. Espejo filed false and fraudulent claims against Acting United States Attorney Patrick C. Harris and IRS Special Agent John Shortway during her investigation and prosecution. During the sentencing hearing, the government waived any argument and offers of proof on these allegations and rested its basis for an obstruction of justice enhancement on perjury alone. Therefore, the Court determines that the government has not proven by a preponderance of the evidence the basis for an obstruction of justice enhancement as set forth in paragraph 30 of the PSR. The Court tentatively sustains Ms. Espejo's objection as to the alternative basis set out in paragraph 30 for the obstruction of justice enhancement as to Group 2.

As a second alternative ground for obstruction of justice, the government, in its presentence memorandum and at the sentencing hearing, pointed the Court to conflicting trial testimony and evidence regarding Ms. Espejo's authorization to transfer PMSI and BMSI funds to her personal accounts. The government argues that Ms. Espejo committed perjury when she testified that Dr. Sanderson authorized her to wire transfer funds to herself, in contradiction to the testimony of Dr. Sanderson and other evidence presented at trial (Dkt. No. 181, at 7). At the sentencing hearing, the government was unable to point the Court specifically to the record giving fair notice to Ms. Espejo for this alternative ground for an obstruction enahncement. By subsequent communication with the Court on September 22, 2017, the government directed the Court to paragraph 11 of the PSR, which reads in pertinent part: "[Ms. Espejo's] testimony regarding the wire transfers to her bank accounts was inconsistent with the testimony of the other witnesses." Ms. Espejo objected

to paragraph 11 but only insofar as it concerns the tax return testimony at trial and in front of the grand jury. The Court determines that, because the government did not raise this as an alternative basis for an obstruction of justice enhancement until the filing of its presentence memorandum, fair notice was not given to Ms. Espejo that the government intended to rely on the wire transfer testimony as an alternative basis upon which to seek an obstruction of justice enhancement. Further, even if this Court were to examine the merits of this as a basis for an obstruction of justice enhancement, the Court would not conclude that an enhancement for obstruction of justice is warranted under the USSG based on Ms. Espejo and the doctors' conflicting trial testimony. The Court tentatively sustains Ms. Espejo's objection to this alternative basis for the obstruction of justice enhancement.

**IV.  Objection To Sophisticated Means Enhancement**

Ms. Espejo objects to the two-level enhancement for the use of sophisticated means pursuant to USSG § 2B1.1(b)(10)(C). The guidelines define "sophisticated means" as "especially complex or especially intricate offense conduct pertaining to the execution or concealment of an offense." *United States v. Huston*, 744 F.3d 589, 591-92 (8th Cir. 2014) (quoting USSG Manual § 2B1.1 cmt. n. 9(B)). "The sophisticated-means enhancement is appropriate when the offense conduct, viewed as a whole, 'was notably more intricate than that of the garden-variety [offense].'" *United States v. Sethi*, 702 F.3d 1076, 1079 (8th Cir. 2013) (alteration in original) (quoting *United States v. Hance*, 501 F.3d 900, 909 (8th Cir. 2007)). "Even if any single step is not complicated, repetitive and coordinated conduct can amount to a sophisticated scheme." *Huston*, 744 F.3d at 592 (quoting *United States v. Fiorito*, 640 F.3d 338, 351 (8th Cir. 2011)); *see United States v. Benz*, 470 Fed. App'x 531, 533 (8th Cir. 2012) (finding no error in district court's application of sophisticated means enhancement where defendant's "repetitive and coordinated transactions,

9

involving well over 200 fraudulent checks and transfers, amounted to a multi-front assault on [victim's] finances over at least a seven-year period" and "to ensure the covert success of her operation, [defendant] used bank programs, falsely labeled transfers, created false documents, and strategically timed certain transactions to avoid detection by external auditors").

Based on the evidence presented at trial, Ms. Espejo manipulated the Quickbooks software, causing money to be transferred from PMSI and BMSI to her own accounts over the course of her employment with PMSI. Ms. Espejo misrepresented and concealed the transfers by categorizing them as payments to outside vendors or lab expenses. Evidence presented at trial supports that she did not transfer funds during the month of December when she provided year-end financial information to PMSI's accountant. Whether this conduct merits the sophisticated means enhancement is a close question. Ultimately, the Court concludes that, although Ms. Espejo's conduct was repetitive and coordinated, it did not involve the use of sophisticated means. Considering all of the evidence and materials presented, the Court determines that Ms. Espejo's acts, when measured for their complexity and intricacy, do not distinguish themselves from other acts or similar schemes of wire fraud. The Court tentatively sustains Ms. Espejo's objection to the two-level enhancement pursuant to USSG § 2B1.1(b)(10)(C). As a result of this ruling, the Court tentatively sustains Ms. Espejo's objection to paragraph 19 of the PSR.

### V. Objection To Abuse Of Position Of Trust

Ms. Espejo objects to the two-level enhancement for role in the offense. A two-level enhancement pursuant to § 3B1.3 of the USSG applies when a defendant "abused a position of public or private trust . . . in a manner that significantly facilitated the commission or concealment of the offense." USSG Manual § 3B1.3. A position of public or private trust refers to a position that is characterized by professional or managerial discretion (*i.e.*, substantial discretionary

judgment that is ordinarily given considerable deference). *Id*. § 3B1.3 cmt. n. 1. Persons holding such positions ordinarily are subject to significantly less supervision than employees whose responsibilities are primarily non-discretionary in nature. *Id*. Any job constitutes a position of trust in some sense, but "the guideline definition requires something more than a mere employment relationship to warrant an upward adjustment." *United States v. Brelsford*, 982 F.2d 269, 271 (8th Cir. 1992). The abuse of trust enhancement applies only where the offender has abused discretionary authority entrusted to the defendant by the victim. To apply the private trust standard, the Court simply considers "whether trust is inherent to the nature of the position." *Brelsford*, 982 F.2d at 272.

Courts analyzing abuse of a position of trust in the context of bookkeepers or office managers generally look to the amount of "autonomy" or "managerial discretion" the individual holds. *United States v. Deal*, 147 F.3d 562, 564 (7th Cir. 1998); *United States v. O'Connell*, 252 F.3d 524, 529 (1st Cir. 2001). The government points the Court to *United States v. Mills*, No. 14-3028, 2017 WL 3887792 (3d Cir. 2017). In *Mills*, the Third Circuit Court of Appeals found defendant Mills, a bookkeeper, subject to the abuse of position of trust enhancement. However, the facts of *Mills* are distinguishable from the facts in Ms. Espejo's case. Defendant Mills had autonomy in that she had check-writing authority, was subject to no oversight, and perpetuated her crime over a span of eight years. Here, testimony shows that Ms. Espejo had no check-writing authority and was, at least in theory, subject to the doctors' oversight. While she was entrusted with the payment of bills necessary for PMSI's operations, she occupied a position more clerical in nature and less akin to than that of an attorney, bank executive, or physician. *See* USSG Manual § 3B1.3 cmt. n. 1 (providing examples of positions of trust contemplated by the Guidelines).

While the doctors at PMSI may have trusted Ms. Espejo, and certainly testified to such at trial, whether a defendant holds a position of trust with respect to a victim turns on the nature of the defendant's position and amount of discretion and control relative to the victim, not whether the victim subjectively trusted the defendant. *United States v. Miell*, 661 F.3d 995, 999 (8th Cir. 2011) (citing *United States v. Santoro*, 302 F.3d 76, 81-82 (2d Cir. 2002)). Thus, whether the doctors at PMSI placed their trust in Ms. Espejo does not figure into the Court's analysis.

For these reasons, the Court tentatively sustains Ms. Espejo's objection as to the two-level enhancement for abuse of a position of trust.

**VI.     Objections To Certain Facts In The PSR**

The Court has received and reviewed Ms. Espejo's PSR objections submitted to the United States Probation Office. Many of these objections appear to have been resolved in the revised draft PSR. Where pertinent to matters addressed specifically in this Order, the Court has ruled on her objections to certain PSR paragraphs. A few objections remain outstanding. In regard to paragraph 1 of the PSR, Ms. Espejo objects to the allegation that "[t]he offenses occurred from in or about March 2007 to in or about October 2010." Ms. Espejo objects to "October 2010," stating that she no longer worked for PMSI/BMSI after September 2010 and requesting that "October 2010" be changed to "September 2010."

According to Ms. Espejo's trial testimony, she resigned her position at PMSI on October 1, 2010 (Dkt. No. 163, at 824). Regardless, the factual allegation is not one upon which the government relies to request a sentencing enhancement. The Court overrules this objection.

In regard to paragraph 14 of the PSR, Ms. Espejo objects to the paragraph as argumentative and unsupported. Paragraph 14 relates to a Victim Impact Statement of one of the physicians at

PMSI. The factual allegation is not one upon which the government relies to request a sentencing enhancement. The Court overrules this objection.

In regard to paragraph 60 of the PSR, the Court seeks clarification of whether Ms. Espejo graduated from Southern Arkansas University in Magnolia, Arkansas, with a degree in business in administration in 2002, as reflected in the revised PSR, or 2003, as reflected in Ms. Espejo's objections.

To the extent other objections to the PSR remain pending, the Court will address these objections at the second sentencing hearing scheduled for November 2, 2017.

### VII. Request For Variance

At this time, the Court takes under advisement Ms. Esepjo's request for variance. The Court wishes to hear additional argument, and will receive whatever additional materials the parties wish to present, in regard to this request at the second sentencing hearing scheduled for November 2, 2017.

### VIII. Conclusion

For the foregoing reasons, the Court tentatively overrules in part and sustains in part Ms. Espejo's objections to the PSR. The Court takes under advisement Ms. Espejo's request for variance.

DATED this 27th day of October, 2017.

KRISTINE G. BAKER
UNITED STATES DISTRICT JUDGE