**FILED**
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

January 20, 2021

JAN **2 0** 2021

**JAMES W. McCORMACK, CLERK**
By:_____
                              **DEP CLERK**

The Honorable Kristine G. Baker
United States District Judge
500 West Capitol Avenue, Room D444
Little Rock, AR 72203

RE: Case No 4:14-cr-00201 KGB
      United States of America v. Lynn Alisa Espejo
      Eastern District of Arkansas, Central Division

Dear Judge Baker:

This letter is intended to provide information to you surrounding the events that
transpired last week.

1. Please find attached a copy of the incident report (<u>EXHIBIT 1</u>) I was given on
   January 12th that is signed by Mr. Michael South, Facility Director of City of
   Faith. I do not believe it is valid on its face under BOP policy for several reasons.
   According to BOP policy, the staff issuing the report must be the staff member
   who witnessed the inmate violating the rule. It is my belief that Mr. South nor
   any other staff member would be able to issue such an incident report since they
   did not witness me emailing inmates. I was honest when asked by my case
   manager, Ms. Shannon, about the emailing. However, an admission by an inmate
   is not enough under BOP policy to find guilt if no actual staff member witnessed
   the incident. The incident report does not list the actual rule that was violated,
   therefore it is not valid and must be dismissed. I do not know what BOP policy
   number covers this and have no access to a law library, but I did learn this
   information while I was housed at FPC Bryan.
2. The BOP has placed me in a COVID-19 situation prior to being found guilty of
   anything. I have attached Program Statement 5270.09, Inmate Discipline
   Program, as <u>EXHIBIT 2</u>. Under these policies, I was to be teamed on the incident
   report within three days. I was to be able to request a staff member to represent
   me in the matter, as well as to participate in my own defense. By locking me up
   in the county jail where I have no ability to do any of these things, the BOP has
   violated these policies. A 300 series incident report is a low level shot that would
   not require an inmate to be treated like this.
3. I was never provided a copy of any Halfway House paperwork when I was being
   held at the Federal Transfer Center in Oklahoma City. I was called from my cell
   to sign papers for release to home confinement but was not allowed to read them
   and never received a copy of what I signed, even after multiple requests were
   made for a copy. On the day of my release on May 27, 2020 to home

confinement, I was given a one-day furlough document, a copy of which I have attached as <u>EXHIBIT 3</u>.

4. I was never told by anyone at City of Faith Halfway House that I was not allowed to email women that I became friends with and left behind when I was released. I received a Federal Resident Handbook during my Halfway House orientation and this manual does not state that emailing incarcerated women is prohibited. It also states that a "verbal warning" is to be given for the 1st offense of a house rule. I have attached this handbook as <u>EXHIBIT 4</u>.

5. I have been on home confinement since May 27, 2020 without any violations and would not have violated this rule had I been informed about it. I have communicated with women that I left behind for over 7 months using my real name and email address, all through the BOP's monitored email system provided by Corrlinks.

6. The BOP is attempting to punish me now because it believes that I hired a mobile billboard service to call attention to inmates housed at FPC Bryan that were not being allowed to call home for the holidays. Staff at FPC Bryan sent an email to Ms. Victoria Fitzhugh, my future Probation Officer, blaming me for the billboard after they read my blog post that brought attention to the matter. I had nothing to do with the hiring of this mobile billboard.

7. I also believe that the BOP is attempting to retaliate against me because I am currently cooperating with a Texas Department of Labor investigation into the Cosmetology program at FPC Bryan. I was enrolled in the Cosmetology program at FPC Bryan and inmates were asked to sign documents to report hours we did not actually receive in class. I refused to do so because I believed that I would be committing both a federal and state crime because the program was funded with a federal grant and the false hours were furnished to the State of Texas. This matter was reported by me to Senator John Boozman of Arkansas and I signed an affidavit prepared by the Department of Justice and furnished to me by SIA staff shortly before my release from the Federal Transfer Center in Oklahoma City.

8. The staff at City of Faith told me that they were instructed to write the 309 incident report by BOP staff and it is my belief that City of Faith staff did not wish to do so as I have been a model resident and have followed all their rules.

9. I am currently being held at the Pulaski County Jail in Little Rock and have been here since January 12, 2021. I am in a cell with a mentally ill woman who believes President Trump is trying to destroy her family. My anxiety is through the roof and I am having continuous panic attacks. My PTSD is exacerbated by being held here and my blood pressure has been high per the facility nurse. To be able to see a mental health professional here takes at least a month. I have been moved 3 times since I arrived here on January 12th and I am placed in cells that obviously have not been cleaned or sterilized for the COVID-19 virus. I have no access to any type of cleaner, paper towels or hand sanitizer. The telephones and other community use items are not being sterilized and CDC guidelines are not being followed. I have none of the rights afforded to federal inmates here, such as 500 phone minutes, free video chats, and appropriate mask coverings.

10. I was supposed to have a follow up check up on my skin cancer issues that I had before I was incarcerated and that only became worse while I was housed at FPC

Bryan since medical staff there would not treat the issue.  I have had multiple areas on my body treated and several cancerous lesions removed after I was released to home confinement and the nurse here believes that I have an area on my chest that needs treatment immediately.

11. A 300 series incident report does not prohibit an inmate from compassionate release as it is a low level incident so even if I am found guilty of the incident report the court has the discretion to rule in my favor.

12. I was scheduled to begin my last semester of classes at Southern Arkansas University on Wednesday, January 13, the day after I was placed in the Pulaski County Jail.  I would still be able to participate and complete my Masters Program but I would need to be released back to home confinement to register again for the spring semester.  The last day for me to enroll again for spring semester classes is Friday, January 22, 2021.

13. The U.S. Marshal who escorted me to the Pulaski County Jail on January 12 was shocked that the BOP was even doing this.

I pray that you take these items into consideration in your decision and that I am placed back on home confinement, or as my prior motion requests, furnish me an early release to supervised release under my probation officer.

Thank you for your time and consideration in this matter.

Respectfully submitted,

*Lynn Espejo*

Lynn Espejo, under power of attorney by Pancho Espejo (husband)

# EXHIBIT 1

## Incident Report

BP-S205.073 **INCIDENT REPORT (CCC'S)** CDFRM
MAR 10
**U.S. DEPARTMENT OF JUSTICE**                    **FEDERAL BUREAU OF PRISONS**

| 1. Name of CCC: City of Faith (6ZG) <br> Part I - Incident Report | | | |
|---|---|---|---|
| 2. Name of Offender <br> **Espejo, Lynn** | 3.Register Number <br> 26304-009 | 4. Date of Incident <br> 3 December 2020 | 5. Time <br> 2:21p |
| 6. Place of Incident <br> HCC Residence | 7. Component <br> HCC | 8. Type of Offender <br> BOP | |

| 9. Incident <br> 309 : Violating a condition of a community program. |
|---|

| 11.   Description of Incident (Date: 8 January 2021, Time: 4:18p staff become aware of incident) |
|---|
| On 8 January 2021 at 4:18p, the Bureau of Prisons, Re-Entry Services Division forwarded City of Faith documentation that shows evidence, of inmate Espejo, Lynn, Reg. No. 26304-009 communicating with inmates currently incarcerated in numerous Federal Prisons. Specifically, inmates Breshears, Crystal #31527-045) and Hardman, Kelly #28557-031, housed in FCI Greenville; Lane, Demika (#45413-177, housed in FDC Oklahoma; inmates Dinh, Jenney #54992-177, Keel, Meagan #03518-480 and Trevino, Roxey #23539-479, housed in FPC Bryan. According to TRUVIEW Email Address Center Report inmate Espejo is utilizing e-mail address lynnespejo@sbcglobal.net to communicate with these inmates. <br><br> A review of TRUVIEW shows inmate Vasquez, Amber, Reg. No. 49829-177, communicating with Espejo, Lynn, Reg. No. 26304-009, by email address, lynnespejo@sbcglobal.net, on December 3, 2020 at 9:21 PM, Espejo, writes, "The number for the show on Friday, December 4th is 661-451-1451 and it is from 6 – 8 central standard time". On December 5, 2020 at 2:21 PM Vasquez replies, "Lynn we were not able to make it on the phone until after 8. We will try again next week. We have lots of updates including people who've recently filed civil suits and a commutation of sentence aka reduction. Talk with you soon." |

| 12.Signature of Reporting Employee | Date & Time <br> 12 Jan. 21 10:03a | 13.   Name & Title (Printed) <br> Michael South, Facility Director | |
|---|---|---|---|
| 14 Incident Report Delivered to Above Offender By | | 15. Date Incident <br> Report Delivered <br> 1/12/21 | 16.   Time Incident <br> Report Delivered <br> 12:18 p.n. |

| (Continued below) |
|---|
| |

# EXHIBIT 2

Program Statement
5270.09, Inmate
Discipline Program



**U.S. Department of Justice**
Federal Bureau of Prisons

P R O G R A M   S T A T E M E N T
OPI:                CPD/CSB
NUMBER:         5270.09
DATE:              July 8, 2011
EFFECTIVE DATE:  August 1, 2011

# Inmate Discipline Program

         /s/
*Approved*:   Thomas R. Kane
Acting Director, Federal Bureau of Prisons

## 1.  PURPOSE AND SCOPE

### § 541.1   Purpose.

**This subpart describes the Federal Bureau of Prisons' (Bureau) inmate discipline program.   This program helps ensure the safety, security, and orderly operation of correctional facilities, and the protection of the public, by allowing Bureau staff to impose sanctions on inmates who commit prohibited acts.   Sanctions will not be imposed in a capricious or retaliatory manner.   The Bureau's inmate discipline program is authorized by 18 U.S.C. 4042(a)(3).**

### § 541.2   Application.

**This program applies to sentenced and unsentenced inmates in Bureau custody. It also applies to sentenced and unsentenced inmates designated to any prison, institution, or facility in which persons are held in custody by direction of, or under an agreement with, the Bureau of Prisons.**

This policy applies to all persons in the custody of the Federal Bureau of Prisons or Bureau contract facilities, including persons charged with or convicted of offenses against the United States; D.C. Code felony offenders; and persons held as witnesses, detainees, or otherwise. These provisions do not apply to Federal inmates designated to a non-Federal facility (e.g., inmates serving Federal sentences in state or county facilities).

**Federal Regulations from 28 Code of Federal Regulations, part 541, are shown in this type.**
Implementing instructions are shown in this type.

2. **SUMMARY OF CHANGES**

a.  Establish Greatest and High severity level prohibited acts for sexual assault of any person. The Greatest severity level act (114) requires the use or threat of force.   The High severity level act (229) is for incidents without the use or threat of force.

b.  Increase the severity level of escapes from non-secure facilities from a High to a Greatest severity level prohibited act.

c.  Amend the Code 104 to include any instrument used as a weapon.

d.  Establish a Code 115 for destroying and/or disposing of any item during a search or attempt to search.

e.  Establish a High severity level prohibited act code for escape from a work detail, a non-secure institution, or other non-secure custody, including a community facility, with subsequent voluntary return to custody within four hours.

f.  Clarify possession of a cellular telephone or other electronic communications device is a Greatest severity level prohibited act.

g.  Increase the severity level of all alcohol-related offenses from a High to a Greatest severity level prohibited act.

h.  Establish a High severity level prohibited act code for stalking.

i.  Establish a High severity level prohibited act code for possession of stolen property.

j.  Establish a Moderate severity level prohibited act code for circulating a petition.

k.  Establish a High severity level prohibited act code for refusing to participate in a required physical test or examination unrelated to testing for drug abuse (e.g., DNA, HIV, TB).

l.  Increase the severity level for tattooing and self-mutilation to a High severity level prohibited act.

m.  Establish a Moderate severity level prohibited act code for the fraudulent or deceptive completion of a skills test.

n.  Increase the severity level for conducting a business to a Moderate severity level prohibited act.

o.  Establish a Moderate severity level prohibited act code for communicating gang affiliation.

P5270.09   7/8/2011   **Federal Regulations are shown in this type.**   Implementing instructions: this type.   2

p.  Establish Greatest, High, and Moderate severity level prohibited acts for abuse of the mail.

q.  Establish a sanction of monetary fine.

r.  Remove the formal sanctions of reprimand and warning.

s.  Increase the sanction of disciplinary segregation from a range of 7 to 60 days to a range of 1 to 18 months.

t.  Change from three work days to five work days for the UDC to ordinarily conduct a review.

u.  The Special Housing Unit policy (conditions of disciplinary segregation, administrative detention, and protection cases) has been removed and guidance is provided in a separate program statement.

3.  **PRINCIPLES**

Several general principles apply to every disciplinary action:

a.  Incident reports can be written by Bureau staff, Federal Prison Industries (FPI) staff, and Public Health Service (PHS) officers detailed to the Bureau.   Community Corrections Managers may take disciplinary action on inmates in contract RRC's.

b.  Staff take disciplinary action at such times and to the degree necessary to regulate an inmate's behavior within Bureau rules and institution guidelines and to promote a safe and orderly institution environment.

c.  Staff control inmate behavior in an impartial and consistent manner.

d.  Disciplinary action may not be capricious or retaliatory.

e.  Staff may not impose or allow corporal punishment of any kind.

4.  **DIRECTIVES AFFECTED**

a.  **Directive Rescinded**

P5270.08        Inmate Discipline and Special Housing Units (12/4/09)

b.  **Directives Referenced**

P1315.07        Inmate Legal Activities (11/5/99)
P1330.16        Administrative Remedy Program (12/31/07)

P1505.03      Language Translations Used in Official Documents (10/31/97)
P2000.02      Accounting Management Manual (10/15/86)
P4500.07      Trust Fund/Deposit Fund Manual (4/19/10)
P4700.05      Food Service Manual (6/12/06)
P5100.08      Inmate Security Designation and Custody Classification (9/12/06)
P5162.05      Categorization of Offenses (3/16/09)
P5180.05      Central Inmate Monitoring System (PS Only) (12/31/07)
P5180.06      Central Inmate Monitoring System (Operations Manual Only) (3/24/08)
P5212.07      Control Unit Programs (2/20/01)
P5215.05      Youth Corrections Act (YCA) Inmates and Programs (3/17/99)
P5264.08      Inmate Telephone Regulations (1/24/08)
P5265.14      Correspondence (4/5/11)
P5267.08      Visiting Regulations (5/11/06)
P5270.10      Special Housing Units (8/1/11)
P5322.12      Inmate Classification and Program Review (11/29/06)
P5360.09      Religious Beliefs and Practices (12/31/04)
P5380.08      Financial Responsibility Program, Inmate (8/15/05)
P5500.11      Correctional Services Manual (10/10/03)
P5500.12      Correctional Services Procedures Manual (10/10/03)
P5521.05      Searches of Housing Units, Inmates, and Inmate Work Areas (6/30/97)
P5580.07      Inmate Personal Property (12/28/05)
P5800.15      Correctional Systems Manual (1/1/09)
P5880.28      Sentence Computation Manual (CCCA of 1984) (7/20/99)
P5880.30      Sentence Computation Manual (Old Law, Pre-CCCA of 1984) (9/8/99)
P5880.32      Sentence Computation Manual (District of Columbia) (1/23/01)
P5884.03      Good Conduct Time Under the Prison Litigation Reform Act (3/31/06)
P7300.09      Community Corrections Manual (5/19/99)
P7331.04      Pretrial Inmates (1/31/03)

c.  Rules cited in this Program Statement are contained in 28 CFR § 541.2 and §§ 541.10-23.

5. **AGENCY ACA ACCREDITATION PROVISIONS**

a.  American Correctional Association 4th Edition Standards for Adult Correctional Institutions:

4-4226, 4-4227, 4-4228, 4-4229, 4-4230, 4-4231, 4-4232, 4-4233, 4-4234, 4-4235, 4-4236,
4-4237, 4-4238, 4-4239, 4-4240, 4-4241, 4-4242, 4-4243, 4-4244, 4-4245, 4-4246, 4-4247,
4-4248, 4-4255, 4-4399

b.  American Correctional Association 4th Edition Performance-Based Standards for Adult
Local Detention Facilities:

4-ALDF-2A-47, 4-ALDF-2A-50, 4-ALDF-3A-01, 4-ALDF-3A-02, 4-ALDF-4C-40,
4-ALDF-6C-01, 4-ALDF-6C-02, 4-ALDF-6C-03, 4-ALDF-6C-04, 4-ALDF-6C-05,

4-ALDF-6C-06, 4-ALDF-6C-07, 4-ALDF-6C-08, 4-ALDF-6C-09, 4-ALDF-6C-10,
4-ALDF-6C-11, 4-ALDF-6C-12, 4-ALDF-6C-13, 4-ALDF-6C-14, 4-ALDF-6C-15,
4-ALDF-6C-16, 4-ALDF-6C-17, and 4-ALDF-6C-18.

## 6. **INSTITUTION SUPPLEMENTS**

None required.

## 7. **NOTICE TO INMATE OF THE INMATE DISCIPLINE PROGRAM**

Staff must give each inmate a copy of the following documents promptly after his/her arrival at
an institution:

- Summary of the Inmate Discipline System (Appendix B).
- Inmate Rights and Responsibilities (Appendix C).
- Prohibited Acts and Available Sanctions (Table 1).

Receipt of these documents must be noted on the intake screening form and maintained in the
inmate's central file.   The receipt is kept in the inmate's central file.

To the extent reasonably available, a qualified staff member or translator will help an inmate who
has a language or literacy problem, in accordance with the Program Statement **Language
Translations Used in Official Documents**.

**CONTENTS**

**Chapter 1**

**§ 541.3   Prohibited acts and available sanctions**...........................................................9
  (a)  Prohibited acts ..........................................................................................9
  (b)  Available sanctions ...................................................................................9
      (1)  Greatest Severity Level Offenses ...............................................9
      (2)  High Severity Level Offenses .....................................................9
      (3)  Moderate Severity Level Offenses .............................................9
      (4)  Low Severity Level Offenses ...................................................10
      (5)  All Severity Level Offenses .....................................................10

**§ 541.4   Loss of good conduct sentence credit as a mandatory sanction** ..................11
  (a)  Groups that lose good conduct sentence credit .....................................11
      (1)  VCCLEA – violent inmates .....................................................11
      (2)  PLRA inmates and D.C. Code offenders .................................11
  (b)  Amount of credit lost .............................................................................11
      (1)  Greatest Severity Level Offenses .............................................11
      (2)  High Severity Level Offenses ...................................................11
      (3)  Moderate Severity Level Offenses ...........................................12
      (4)  Low Severity Level Offenses ...................................................12

**Available Sanctions**..............................................................................................12
(A)  Recommend Parole Date Rescission or Retardation................................12
(B)  Forfeit Earned Statutory Good Time, Non-vested Good Conduct Time,
or Terminate or Disallow Extra Good Time .................................................12
(B.1)  Disallowance of Good Conduct Time .....................................................13
(C)  Disciplinary Segregation ........................................................................14
(D)  Make Monetary Restitution.....................................................................15
(E)  Monetary Fine........................................................................................15
(F)  Loss of Privileges...................................................................................15
(G)  Change Housing Quarters .......................................................................15
(H)  Remove from Program or Group Activity ...............................................15
(I)  Loss of Job .............................................................................................16
(J)  Impound Inmate's Personal Property .......................................................16
(K)  Confiscate Contraband ...........................................................................16
(L)  Restrict to Quarters ................................................................................16
(M)  Extra Duty..............................................................................................16

**Chapter 2**

**§ 541.5   Discipline process** .......................................................................17
  (a)   Incident report ......................................................................17
  (b)   Investigation ........................................................................18
    (1)   Information..........................................................................18
    (2)   Statement...........................................................................18
    (3)   Informally resolving the incident report...........................................20

**Chapter 3**

**§ 541.6   Mentally ill inmates** .....................................................................21
  (a)   Competency to participate in disciplinary proceedings...........................21
  (b)   Responsibility for conduct .....................................................21

**Chapter 4**

**§ 541.7   Unit Discipline Committee (UDC) review of the incident report** ................23
  (a)   Available dispositions ..........................................................23
  (b)   UDC members .....................................................................23
  (c)   Timing ..........................................................................24
  (d)   Inmate appearance ...............................................................24
  (e)   Evidence ........................................................................24
  (f)   Sanctions .......................................................................24
  (g)   Referral to the DHO .............................................................25
  (h)   Written report ..................................................................25
  (i)   Appeals .........................................................................25

**Chapter 5**

**§ 541.8   Discipline Hearing Officer (DHO) hearing** ....................................27
  (a)   Available dispositions ..........................................................27
  (b)   Discipline Hearing Officer ......................................................27
  (c)   Timing ..........................................................................27
  (d)   Staff representative.............................................................27
    (1)   How to get a staff representative...............................................28
    (2)   How the staff representative will help .........................................28
    (3)   How the staff representative may appear ........................................28
  (e)   Inmate appearance ...............................................................28
  (f)   Evidence and witnesses ..........................................................29
  (g)   Sanctions .......................................................................33
  (h)   Written report...................................................................34
  (i)   Appeals .........................................................................35

**APPENDIXES**

**A.**  List of Forms ..................................................................................................37

**B.**  Summary of Inmate Discipline System ..........................................................38

**C.**  Inmate Rights and Responsibilities ...............................................................39

**D.**  Data Entry Instructions ..................................................................................41

**TABLES**

**1.**  Prohibited Acts and Available Sanctions .......................................................44

**2.**  Additional Available Sanctions for Repeated Prohibited Acts
Within the Same Severity Level .........................................................................55

**CHAPTER 1.**

**§ 541.3   Prohibited acts and available sanctions.**

**(a)   *Prohibited acts.*   The list of prohibited acts are divided into four separate categories based on severity: Greatest; High; Moderate; and Low.   We describe the prohibited acts in Table 1 - Prohibited Acts and Available Sanctions.   Aiding, attempting, abetting, or making plans to commit any of the prohibited acts is treated the same as committing the act itself.**

**(b)   *Available sanctions.*   The list of available sanctions for committing prohibited acts is listed in Table 1 - Prohibited Acts and Available Sanctions.   If you commit repetitive prohibited acts, we can impose increased sanctions, as listed in Table 2 - Additional Available Sanctions for Repeated Prohibited Acts Within the Same Severity Level.**

(1)   **Greatest Severity Level Offenses**.   The Discipline Hearing Officer (DHO) imposes one or more of sanctions A through E.   Sanction B.1 must be imposed for a VCCLEA inmate rated "violent" (an inmate who, per the Violent Crime Control and Law Enforcement Act of 1994, committed a crime of violence on or after September 13, 1994) and for a PLRA inmate (an inmate sentenced for an offense committed on or after April 26, 1996, per the Prison Litigation Reform Act).   The DHO may impose any available sanctions (A through M) in addition to sanctions A through E.   All Greatest severity level charges must be referred to the DHO.

(2)   **High Severity Level Offenses**.   The DHO imposes one or more of sanctions A through M, and, except as noted in the sanction, may also suspend one or more sanctions A through M. Sanction B.1 must be imposed for a VCCLEA inmate rated "violent" and for a PLRA inmate. All High severity level charges must be referred to the DHO.

Prohibited Act Code 225, Stalking, is for the purpose of punishing repetitive inmate behavior, e.g., loitering, staring, leering, inappropriate remarks (short of insolence, profanity, or sexual proposals), that are not clearly covered by another prohibited act code.   When staff encounter such behavior, the inmate should be specifically warned that it is inappropriate and must cease. If the behavior fits another prohibited act code provision, the inmate should be charged with violating that specific provision instead of stalking.   Examples of other prohibited act code behavior that may be used instead of Code 225, Stalking, include, but are not limited to Insolence (Code 312), Being in an Unauthorized Area (Code 316), Threatening (Code 203), and Making a Sexual Proposal or Threat (Code 206).

(3)   **Moderate Severity Level Offenses**.   The DHO imposes at least one sanction A through M, but, except as noted in the sanction, may suspend any sanction(s) imposed. Sanction B.1 ordinarily must be imposed for a VCCLEA inmate rated "violent" and for a PLRA inmate.

Except for charges referred to the DHO, the Unit Discipline Committee (UDC) shall impose at least one sanction F through M, but may suspend any sanctions imposed.

The UDC ordinarily refers to the DHO a moderate severity level charge for a VCCLEA inmate rated "violent" or for a PLRA inmate if the inmate was found to have committed two moderate offenses during his/her current anniversary year (the 12-month period for which an inmate may be eligible to earn good conduct time [GCT]).   The UDC must document the reasons why a third charge for such an inmate was not referred to the DHO.

A prohibited act charge for 331 involving tobacco or nutritional supplements must be referred to the DHO for final disposition.

(4)  **Low Severity Level Offenses**.   The DHO imposes at least one sanction B.1, or D through M.   The DHO may suspend any sanction(s) imposed; however, a B.1 sanction may not be suspended.   Except for charges referred to the DHO, the UDC imposes at least one sanction F through M, but may suspend any sanction(s) imposed.

The UDC ordinarily refers to the DHO a low severity level charge for a VCCLEA inmate rated "violent" or for a PLRA inmate if the inmate had been found to have committed three low offenses during his/her current anniversary year.   The UDC must document the reasons why a charge for such an inmate was not referred to the DHO.

Sanction B.1 may be imposed on the Low severity level **only** if the inmate has committed a Low severity level prohibited act more than once within a six-month period (except for a VCCLEA inmate rated "violent" or a PLRA inmate).

(5)  **All Severity Level Offenses**.   In all categories of severity, **aiding** another person to commit any of these offenses, **attempting** to commit them, or **making plans** to commit them, **is considered equivalent to committing the offense itself**.   In these cases, the letter "A" is combined with the offense code.   For example, planning an escape is Escape, Code 102A. Attempting to adulterate food or drink is Code 209A.

When the prohibited act is **Interfering with a Staff Member in the Performance of Duties (Code 198, 298, 398 or 498) or Conduct Which Disrupts (Code 199, 299, 399, or 499)**, the DHO or UDC must specify the severity level of the conduct that is most comparable to an offense(s) at that severity level.   **Example:** "I find the act of Conduct Which Disrupts (Code 299) to be of High severity level, most comparable to the prohibited act of Engaging in a Group Demonstration (Code 212)."

**Suspensions of any sanction cannot exceed six months**.   Suspended sanctions may only be revoked and executed if the inmate is found to have committed a subsequent prohibited act. Only the DHO may execute, suspend, or revoke and execute suspension of sanctions A through E (B and B.1. may never be suspended).   The DHO or UDC may execute, suspend, or revoke and

execute suspensions of sanctions F through M.   The DHO may execute UDC-suspended sanctions.   However, the UDC may **not** execute DHO-suspended sanctions A through E.

When an inmate receives an incident report while on a DHO-imposed, but suspended sanction, the new incident report is forwarded by the UDC to the DHO, both for a final disposition on the new incident report, and for a disposition on the suspended sanction. This procedure is not necessary when the UDC informally resolves the new incident report.   The DHO may return an incident report to the UDC if a decision not to execute the suspended sanction is made.

The UDC or DHO may impose increased sanctions for repeated, frequent offenses per the guidelines in Table 2.

Noting that not all UDC or DHO decisions finding an inmate committed a prohibited act will result in a change to the inmate's security designation score, the Unit Team may recommend a greater security transfer, using their professional judgment, and in accordance with the policy on Inmate Security Designation and Custody Classification.

### § 541.4   Loss of good conduct sentence credit as a mandatory sanction.

**(a)   You will lose good conduct sentence credit as a mandatory disciplinary sanction if you are in one of the following two groups:**

**(1)   *VCCLEA-violent inmates.*   The date of your U.S. Code offense was on or after September 13, 1994, but before April 26, 1996, and you committed a "crime of violence" as defined by the Violent Crime Control and Law Enforcement Act of 1994 (VCCLEA); or**

**(2)   *PLRA inmates and D.C. Code offenders.*   The date of your U.S. Code offense was on or after April 26, 1996, and, therefore, under the Prison Litigation Reform Act (PLRA), or the date of your District of Columbia (DC) Code offense was on or after August 5, 2000.**

**(b)   If you are an inmate in one of the above groups and commit a prohibited act, you will lose good conduct sentence credit as a mandatory disciplinary sanction. The amount of good conduct sentence credit you will lose depends on the severity level of the prohibited act(s) committed, as follows:**

**(1)   *Greatest Severity Level Offenses.*   You will lose at least 41 days, or 75% of available credit if less than 54 days are available for the prorated period, for each act committed.**

**(2)   *High Severity Level Offenses.*   You will lose at least 27 days, or 50% of available credit if less than 54 days are available for the prorated period, for each act committed.**

**(3)  *Moderate Severity Level Offenses.*   You will lose at least 14 days, or 25% of available credit if less than 54 days are available for the prorated period, after committing two or more Moderate severity acts during the current year of your good conduct sentence credit availability.**

**(4)  *Low Severity Level Offenses.*   You will lose at least 7 days, or 12.5% of available credit if less than 54 days are available for the prorated period, after committing three or more Low severity acts during the current year of your good conduct sentence credit availability.**

**Available Sanctions** (upon finding the inmate committed the prohibited act(s)):

**(A)  Recommend Parole Date Rescission or Retardation.**   The DHO may recommend retardation or rescission of parole grants to the U.S. Parole Commission or respective parole authority.

**(B)  Forfeit Earned Statutory Good Time, Non-vested Good Conduct Time, or Terminate or Disallow Extra Good Time.**

*Forfeited good conduct time* (GCT) is not eligible for restoration.   However, *forfeited statutory good time* (SGT) may be restored.   Restoration of statutory good time is approved at initial eligibility only when the inmate has shown a period of improved good behavior.   When the Warden (or designee) denies restoration of forfeited statutory good time, the unit team notifies the inmate of the reasons for denial.   The unit team establishes a new eligibility date, not to exceed six months from the date of denial.

An application for restoration of statutory good time is forwarded from the inmate's unit team, through the DHO and Captain for comments, to the Warden for final decision.

Inmates who committed their crimes on or after November 1, 1987, and are sentenced under the Sentencing Reform Act provisions of the Comprehensive Crime Control Act, are only eligible to receive 54 days GCT credit (18 U.S.C. § 3624(b)).   This credit is given at the end of each year served and, once given, is vested.   For these inmates, the DHO's authority is final and subject only to review by the Regional Director to ensure conformity with the discipline policy and by inmate appeal through Administrative Remedy procedures.

The statutory good time available for forfeiture is limited to an amount computed by multiplying the months served at the time of the offense for which forfeiture is taken, by the applicable monthly rate specified in 18 U.S.C. § 4161 (less previous forfeiture or withholding).   The amount of GCT available for forfeiture is limited to total days in "non-vested" status at the time of misconduct (less previous forfeiture).

Forfeiture of GCT may not be suspended.

Disallowance of extra good time is limited to extra good time for the calendar month in which the violation occurs.   It may not be withheld or restored.

The sanction of termination or disallowance of extra good time may not be suspended.

Forfeited GCT will not be restored.   Authority to restore forfeited statutory good time is delegated to the Warden, and may not be delegated lower than the Associate Warden level. Limitations on this sanction and eligibility for restoration are based on the severity scale.   (See Table 2.)

To ensure an inmate's case is not overlooked when statutory good time has been forfeited, the unit manager will ensure the eligibility requirements are reviewed for restoration per the time frames in the Program Statement on Classification and Program Review of Inmates.   A recommendation of the unit team for or against restoration is forwarded to the Warden through the DHO and Captain.   Except as noted, eligibility for restoration of forfeited statutory good time is computed from the date of the withholding or forfeiture action by the DHO.

An inmate who has escaped and receives a forfeiture at a subsequent in absentia hearing begins the eligibility for restoration period upon return to Bureau custody.   The Warden refers to the Regional Director any case where exceptional circumstances support restoration of statutory good time before completion of the eligibility requirements.

Sanction B does not apply to inmates committed under the Comprehensive Crime Control Act for crimes committed on or after November 1, 1987, and prior to passage of the Violent Crime Control and Law Enforcement Act of 1994 (September 23, 1994).   For those inmates, the applicable sanction is B.1.

**(B.1)   Disallowance of Good Conduct Time.**   An inmate sentenced under the Sentencing Reform Act provisions of the Comprehensive Crime Control Act (committed a crime on or after November 1, 1987) may not receive statutory good time, but is eligible to receive 54 days GCT credit each year (18 U.S.C. § 3624(b)).   Once awarded, the credit is vested, and may not be disallowed.

Crimes committed on or after September 13, 1994, and before April 26, 1996, (VCCLEA) credit is not vested unless the inmate has earned or is making satisfactory progress toward a high school diploma or equivalent degree (or is exempt because of a learning disability).

For crimes committed on or after April 26, 1996, (PLRA and SRAA) GCT credit toward an inmate's service of sentence vests on the date the inmate is released.   Once disallowed, the credit may not be restored, except by immediate review or appeal as indicated below.   Prior to this award being made, the credit may be disallowed for an inmate found to have committed a prohibited act.

A sanction of GCT disallowance may not be suspended.   Only the DHO can take action to disallow GCT.   The DHO considers the severity of the prohibited act and the suggested disallowance guidelines in making a determination.

A decision to go above the guideline is warranted for a greatly aggravated offense or a repeated violation of another prohibited act within a relatively short time (e.g., within 24 months for a greatest severity level prohibited act, 18 months for a high severity level prohibited act, and 12 months for a moderate severity level prohibited act).   A decision to go below the guidelines is warranted for strong mitigating factors.   A decision above or below the guidelines is justified in the DHO report.

VCCLEA inmates rated "violent" and PLRA inmates are ordinarily disallowed GCT for each prohibited act they are found to have committed at a DHO hearing, consistent with the following:

- **Greatest Severity Level Offenses**.   A minimum of 41 days (or, if less than 54 days are available for the prorated period, a minimum of 75% of available GCT) for each act committed.

- **High Severity Level Offenses**.   A minimum of 27 days (or, if less than 54 days are available for the prorated period, a minimum of 50% of available GCT) for each act committed.

- **Moderate Severity Level Offenses**.   A minimum of 14 days (or, if less than 54 days are available for the prorated period, a minimum of 25% of available GCT) for each act committed if the inmate has committed two or more moderate severity level offenses during the current anniversary period.

- **Low Severity Level Offenses**.   A minimum of 7 days (or, if less than 54 days are available for the prorated period, a minimum of 12.5% of available GCT) for each act committed if the inmate has committed three or more low moderate offenses during the current anniversary period.

Except for VCCLEA inmates rated "violent" or PLRA inmates, Sanction B.1 may be imposed on the Low severity level only where the inmate has committed a Low severity level act more than once within a six-month period.

GCT credit may only be given to an inmate serving a sentence of more than one year, but less than life.   In the last year or part of a year of an inmate's sentence, only the GCT available for the time remaining may be disallowed.

**(C)  Disciplinary Segregation.**   The DHO may direct that an inmate be placed or retained in disciplinary segregation.   Consecutive disciplinary segregation sanctions can be imposed for inmates found to have committed offenses that are part of different acts only.   Limits on time in disciplinary segregation are based on the severity scale (see Tables 1 and 2).

Unless otherwise specified by the DHO, disciplinary segregation placements for different or separate prohibited acts are imposed consecutively.

**(D)   Make Monetary Restitution.**   The DHO may direct that an inmate reimburse the U.S. Treasury for damages to U.S. Government property that the individual caused or contributed to. The UDC is prohibited from imposing the sanction of make monetary restitution.

Commissary privileges should be suspended by the DHO until restitution is made.   See the Program Statement **Trust Fund/Deposit Fund Manual** for instructions regarding impoundment of inmate funds.

**(E)   Monetary Fine.**   The DHO may direct that an inmate pay a fine, as follows:

- Greatest severity level offense – Up to $500, or 75% of the inmate's trust fund balance.
- High severity level offense – Up to $300, or 50% of the inmate's trust fund balance.
- Moderate severity level offense – Up to $100, or 25% of the inmate's trust fund balance.
- Low severity level offense – Up to $50, or 12.5% of the inmate's trust fund balance.

Commissary privileges should be suspended until the fine is paid.   See the Trust Fund/Deposit Fund Manual for instructions regarding impoundment of inmate funds.

This sanction cannot be used as a form of monetary restitution.   The UDC is prohibited from imposing the sanction of monetary fine.

**(F)   Loss of Privileges (e.g., visiting, telephone, e-mail, commissary, movies, recreation).** The DHO or UDC may direct that an inmate forego specific privileges for a specified time.

The DHO or UDC may impose non-contact visiting or immediate family-only visitation in addition to loss of visiting.

Loss of recreation privileges (exercise periods) may not be imposed on inmates in a Special Housing Unit (SHU), but may be used for general population inmates.

The DHO or UDC may impose a loss of mattress sanction from lights on to lights off for inmates in the SHU.   Staff must ensure the inmate has a mattress from lights off to lights on.

**(G)   Change Housing (Quarters).**   The DHO or UDC may direct that an inmate be moved to other housing.

**(H)   Remove from Program or Group Activity.**   The DHO or UDC may direct that an inmate not participate in any program or group activity for a specified time.

**(I)   Loss of Job.**   The DHO or UDC may direct that an inmate be removed from his/her present job or assigned to another job.

**(J)   Impound Inmate's Personal Property.**   The DHO or UDC may direct that an inmate's personal property be stored in the institution for a specified time.

**(K)   Confiscate Contraband.**

**(L)   Restrict Quarters.**   The DHO or UDC may direct that an inmate be confined to quarters or its immediate area for a specified time.

**(M)   Extra Duty.**   The DHO or UDC may direct that an inmate perform tasks other than those performed during his/her regular job.

**CHAPTER 2.**

**§ 541.5   Discipline process.**

**(a)  *Incident report.*   The discipline process starts when staff witness or reasonably believe that you committed a prohibited act.   A staff member will issue you an incident report describing the incident and the prohibited act(s) you are charged with committing.   You will ordinarily receive the incident report within 24 hours of staff becoming aware of your involvement in the incident.**

When staff witness or reasonably believe that a violation of Bureau regulations has been committed, staff must prepare an incident report and forward it to the appropriate Lieutenant. The Lieutenant will enter the incident report into SENTRY.

The reporting employee immediately completes Part 1 of the incident report.   The incident is a prohibited act listed in Appendix C.   The entire language of the prohibited act(s) does not have to be copied. For example, "Destroying Government Property, Code 218" or "Possessing Narcotics, Code 113" would be acceptable listings.

The description of the incident should contain all facts known by the employee that are not confidential.   Anything unusual about the inmate's behavior should be noted.   The reporting employee also lists persons (staff, inmates, others) at the scene, and physical evidence (weapons, property, etc.) the employee may have handled.   The report reflects any actions taken, including use of force.   The reporting employee signs the report, enters his/her title, date, and time, and forwards it to the Lieutenant.   The description of the incident provides the inmate with specific evidence for which he/she may prepare a defense.

References to attachments and other investigative materials should not be identified in Section 11 of the report.   For example, if staff observe two inmates in a physical altercation, the reporting officer should describe in Section 11 specific actions by each inmate; e.g., throwing punches to the head with a closed fist, striking one another with closed fists, biting, scratching, hair pulling.

Acts are different or separate if they have different elements (time, place, persons involved, actions).   For example, if an inmate is involved in a fight with another inmate and also strikes a staff member trying to break it up, the inmate can be charged with fighting (Code 201) and assaulting a staff member (Code 224 or 101, depending on seriousness of injuries).

Code 305, Possession of anything not authorized, may be appropriate for inmates possessing items in excess of authorized limits.

Codes 199, 299, and 399, most like 196, 296, and 396, respectively, may be appropriate for inmates using electronic messaging (e.g., TRULINCS) in violation of policy.   Sanctions Code F., Loss of privileges, in the form of loss of electronic messaging privileges, may be an appropriate sanction for these offenses.

**(b)** *Investigation.* **After you receive an incident report, a Bureau staff member will investigate it.**

The Investigating Officer is an employee at the supervisory level who conducts an investigation of alleged inmate misconduct.   The Investigating Officer must be IDC-certified, and may not be the employee reporting the incident or otherwise be involved in the incident.   The officer is ordinarily a Lieutenant, but the Warden may appoint another staff member.

Staff conduct the investigation as promptly as possible.   The Investigating Officer is ordinarily appointed within 24 hours of the incident report.   The investigation should be finished within 24 hours after the appointment.

When it appears likely that the incident may involve criminal prosecution, the investigating officer suspends the investigation.   Staff may not question the inmate until the FBI or other investigative agency releases the incident report for administrative processing.   The incident report should then be delivered to the inmate by the end of the next business day.   The time frame for processing the Incident report is suspended until it is released for processing.

The Investigating Officer may informally resolve the Incident report (except for prohibited acts in the Greatest or High severity level categories) or conduct an investigation consistent with this section.

**(1)** *Information:* **The investigator will specifically inform you:**

**(A)** **of the charge(s) against you; and**

**(B)** **that you may remain silent at all stages of the discipline process, but that your silence may be used to draw an adverse inference against you at any stage of the process.   Your silence alone, however, cannot be the basis for finding you committed the prohibited act(s).**

**(2)** *Statement:* **When the investigator asks for your statement, you may give an explanation of the incident, request any witnesses be interviewed, or request that other evidence be obtained and reviewed.   However, the staff investigation of the incident report may be suspended before requesting your statement if it is being investigated for possible criminal prosecution.**

The Investigating Officer provides a copy of the incident report to the inmate at the beginning of the investigation, unless there is good cause for later delivery, such as absence of the inmate from the institution or a medical condition that argues against delivery.   If the investigation is delayed, any employee may deliver the charge(s) to the inmate.   The reason for the delay must be documented in the discipline record.

The incident report should be delivered to the inmate within 24 hours of the time staff become aware of the inmate's alleged misconduct.   If an incident is referred for prosecution, the report is delivered by the end of the next business day after release for administrative processing.   (The five-day time frame for a UDC review starts when the incident report is released for administrative processing.)

The staff member must record the date and time the inmate received a copy of the report.   The investigator also reads the charge(s) to the inmate and asks for the inmate's statement about the incident.

The investigator then talks to persons with direct and relevant information, and summarizes their statements.   (For example, if an inmate was in a fight, the investigator talks with the other inmate(s) involved.)   Often, the investigator will want to talk to the reporting employee to obtain a report firsthand and to clarify any questions.   Although an inmate may not identify or request any witnesses at this stage of the discipline process, the investigator should interview any witnesses to the incident (and victims, if applicable) to record their statements. The investigator records the disposition of evidence.

If practicable, the inmate's statements offering a rationale for his/her conduct or for the charges against him/her should be investigated.   If the inmate requests exculpatory evidence, such as video or audio surveillance, the investigator must make every effort to review and preserve the evidence.   It would also be prudent for the investigator to review and preserve the video or audio surveillance even if the inmate does not make a specific request as such evidence is relevant to the incident.

An inmate who receives an Incident report based on a "positive" urine test may claim this result comes from either:

- Permissible medication he/she was given.
- A combination of medications he/she is taking.

In the first situation, the investigator must contact Health Services staff to determine if the inmate is receiving medication that contains the compound found in the urinalysis.   In the second situation, the investigator must confirm that the inmate is authorized to take the medications. When necessary, the testing laboratory is contacted to see if the combined medications could produce a "false positive."

While an inmate can challenge the **results** of a urine test, and this may be considered by the DHO, the validity of the testing **process** is not at issue.   Neither the investigator nor the DHO has the experience to assess the accuracy of the laboratory process.   See the Program Statement **Urine Surveillance**.

Under Comments and Conclusions, the investigator may include:

- Comments on the inmate's prior record and behavior.
- Analysis of any conflict between witnesses.
- Conclusions regarding what happened.

The investigator must record all steps and actions taken on the incident report and forward the relevant materials to staff holding the initial hearing.

**The inmate does not receive a copy of the investigation (Sections 23 through 27 of the incident report).**   However, if the case is ultimately forwarded to the DHO, the DHO must give a copy of the investigation and other relevant materials to the inmate's staff representative, if requested, for use on the inmate's behalf.

The UDC chairman or DHO taking **final** action ensures that the required information is entered into SENTRY.   The unit team files all discipline documents in the inmate's central file.

**(3)   *Informally resolving the incident report.*   The incident report may be informally resolved at any stage of the disciplinary process, except for prohibited acts in the Greatest and High severity levels, or as otherwise required by law or these regulations.   If the incident report is informally resolved, it will be removed from your records.**

The Bureau encourages informal resolution of incidents.   However, prohibited acts in the Greatest severity level (100 level) and High severity level (200 level) may not be informally resolved, and must be referred to the DHO.   Moderate severity level (300 level) and Low severity level (400 level) offenses can be informally resolved at any stage of the process.   A record of any informal resolution is maintained in SENTRY.   However, the incident report is not filed in the inmate's central file.

Staff may suspend discipline proceedings up to two calendar weeks while informal resolution is undertaken.   If informal resolution is unsuccessful, staff may reinstate disciplinary proceedings at the stage at which they were suspended.   The time requirements then restart at the point at which they were suspended.   Staff are required to write the incident report before starting informal resolution so the facts of the incident will be preserved if informal resolution is not successful. While informal resolution requires the consent of both staff and inmate to be successful, the determination to informally resolve an incident report is solely at the discretion of staff.

**CHAPTER 3.**

**§ 541.6   Mentally ill inmates.**

**If it appears you are mentally ill at any stage of the discipline process, you will be examined by mental health staff.**

**(a)   *Competency to Participate in Disciplinary Proceedings.*   If evidence indicates that you cannot understand the nature of the disciplinary proceedings, or cannot help in your own defense, disciplinary proceedings may be postponed until you are competent to participate.   The Unit Disciplinary Committee or Discipline Hearing Officer will make this decision based on evidence, including evidence presented by mental health staff.**

**(b)   *Responsibility for Conduct.*   You will not be disciplined for conduct committed when, as the result of a severe mental disease or defect, you were unable to appreciate the nature and quality, or wrongfulness of the act.   The UDC or DHO will make this decision based on evidence, including evidence presented by mental health staff.**

If it appears at any stage of the discipline process that an inmate is mentally ill, staff refers him/her to a mental health professional to determine whether he/she is responsible for his/her conduct or is incompetent.   Staff may take no discipline action against an inmate who is determined by a mental health professional to be incompetent to participate in the disciplinary proceedings or not responsible for his/her behavior.

A person is **not responsible** for his/her conduct if, at the time of the conduct, as a result of a severe mental disease or defect, he/she was unable to appreciate the nature and quality or the wrongfulness of his/her acts.   When a person is determined not responsible for his/her conduct, the incident report shows as a finding that the person did not commit the prohibited act because he/she was found not mentally responsible.   The incident report is retained in the inmate's central file.   The DHO or UDC, as appropriate, enters this finding into SENTRY in the Chronological Disciplinary Record.

A person is **incompetent** if he/she lacks the ability to understand the disciplinary proceedings, or to assist in his/her defense.   When a person is determined incompetent, the disciplinary proceedings are postponed until the inmate is able to understand the proceedings and assist in his/her defense.   If competency is not restored within a reasonable time, the incident report shows as a finding that the inmate is incompetent.   The incident report is retained in the inmate's central file.   The DHO or UDC chairman records the finding into SENTRY in the Chronological Disciplinary Record.

Generally, the UDC initiates referral to a mental health professional.   However, staff at any stage of the discipline process may make such a referral.    The completed mental health evaluation is returned to the UDC, which then decides whether the incident may be handled by the UDC (other than Greatest or High severity level), or referred to the DHO.   In Greatest or High severity level cases, the UDC may refer an inmate for a mental health evaluation along with referral to the DHO.   The completed evaluation is returned to the UDC, which forwards it to the DHO.

**CHAPTER 4.**

**§ 541.7   Unit Discipline Committee (UDC) review of the incident report.**

**A Unit Discipline Committee (UDC) will review the incident report once the staff investigation is complete.   The UDC's review involves the following:**

**(a)   *Available dispositions.*   The UDC will make one of the following decisions after reviewing the incident report:**

**(1)   You committed the prohibited act(s) charged, and/or a similar prohibited act(s) as described in the incident report;**

**(2)   You did not commit the prohibited act(s) charged; or**

**(3)   The incident report will be referred to the Discipline Hearing Officer (DHO) for further review, based on the seriousness of the prohibited act(s) charged.**

**(4)   If you are charged with a Greatest or High severity prohibited act, or are an inmate covered by § 541.4, the UDC will automatically refer the incident report to the DHO for further review.**

**(b)   *UDC members.*   The UDC ordinarily consists of two or more staff.   UDC members will not be victims, witnesses, investigators, or otherwise significantly involved in the incident.**

The Warden designates ordinarily two or more unit staff members to hold an initial review and impose available sanctions upon completion of the investigation of alleged misconduct for moderate category and low category offenses.   One staff member UDCs are permitted when other members are not reasonably available.

Only one unit staff member is required to hold an initial review when the incident report is required by policy to be referred to the DHO.

A staff member witnessing an incident may serve on the UDC in cases where virtually every staff member in the institution witnessed the incident in whole or in part.

A staff member may not sit on the UDC without successfully completing the self-study program for UDC certification.

Each Warden must select at least one UDC Trainer to monitor the progress of staff participating in the self-study program.

**(c)   *Timing*.   The UDC will ordinarily review the incident report within five work days after it is issued, not counting the day it was issued, weekends, and holidays.   UDC review of the incident report may also be suspended if it is being investigated for possible criminal prosecution.**

The Warden's approval is required for any extension beyond five work days.   The UDC will ensure the approval is documented and included in the discipline packet.   The time that an incident report is suspended for referral to another agency for possible prosecution is not included in this five work day time frame.   The time line commences when the incident report is released from the outside agency for administrative processing.   However, the inmate should be advised of the delay, and if appropriate, the reason for the delay.

**(d)   *Inmate appearance*.   You are permitted to appear before the UDC during its review of the incident report, except during UDC deliberations or when your presence would jeopardize institution security, at the UDC's discretion.   Also:**

**(1)   You may appear either in person or electronically (for example, by video or telephone conferencing) at the UDC's discretion.**

**(2)   You may waive your appearance before the UDC.   If you waive your appearance, the UDC will review the incident report in your absence.**

**(3)   If you escape or are otherwise absent from custody, the UDC will conduct a review in your absence at the institution where you were last confined.**

The UDC must document its reasons for excluding an inmate from the hearing.

A waiver may be in writing, signed by the inmate, or if the inmate refuses to sign, by a memo indicating the inmate's refusal to appear (Waiver of Appearance (BP-A0307)).

**(e)   *Evidence*.   You are entitled to make a statement and present documentary evidence to the UDC on your own behalf.   The UDC will consider all evidence presented during its review.   The UDC's decision will be based on at least some facts and, if there is conflicting evidence, on the greater weight of the evidence.**

The phrase "some facts" refers to facts indicating the inmate committed the prohibited act.   The phrase "greater weight of the evidence" refers to the strength of the evidence.

**(f)   *Sanctions*.   If you committed a prohibited act(s), the UDC can impose any of the available sanctions listed in Tables 1 and 2, except loss of good conduct sentence credit, disciplinary segregation, or monetary fines.**

**(g)  *Referral to the DHO.*   If the UDC refers the incident report to the DHO for further review, the UDC will advise you of your rights at the upcoming DHO hearing, as detailed in § 541.8.**

The UDC is prohibited from imposing the sanctions of make monetary restitution or monetary fines.

The UDC forwards copies of relevant documents to the DHO with a statement of reasons for the referral, along with recommendations for sanctions if the DHO finds the inmate has committed the act or another prohibited act.   The UDC Chair records reasons for the referral and recommendations for disposition in the "Committee Action" section of the incident report. Recommendations are contingent upon a DHO finding that the inmate committed the act.

When charges are referred to the DHO, the UDC advises the inmate of the rights afforded at a hearing.   The UDC asks the inmate to choose a staff representative, if any, and the names of witnesses the inmate wishes to be called to testify and what testimony they are expected to provide.   The UDC advises the inmate that he/she may waive the right to be present at the hearing, but still have witnesses or a staff representative appear on his/her behalf.

If an inmate waives the right to appear at the UDC review, the UDC ensures the inmate is advised of the rights afforded at a hearing before the DHO (see forms for Inmate Rights at Discipline Hearing and Notice of Discipline Hearing Before the Discipline Hearing Officer (DHO)).

**(h)  *Written report.*   You will receive a written copy of the UDC's decision following its review of the incident report.**

The UDC prepares a record of its proceedings, which need not be verbatim.   A record of the hearing and supporting documents is kept in the inmate's central file.

The UDC gives the inmate a written copy of the decision and disposition by the close of business the next work day.   Action taken as a minor disposition may be reviewed under the Administrative Remedy Program (see 28 CFR Part 542, Subpart B.).

All UDC member(s) must print their name and sign Part II of the incident report to certify they served on the UDC and that the completed Part II accurately reflects their review.

When the UDC finds the inmate committed the prohibited act charged or a similar prohibited act reflected in the incident report, the chair ensures the information is entered into SENTRY in the Chronological Disciplinary Record.

**(i)  *Appeals.*   You may appeal the UDC's action(s) through the Administrative Remedy Program, 28 CFR Part 542, Subpart B.**

The Program Statement **Administrative Remedy Program** covers the regulations in 28 CFR Part 542, Subpart B.   In addition to a review under the Administrative Remedy procedure, the Warden or designee audits and reviews discipline hearings and dispositions to ensure conformity with this policy.

When the UDC holds a full review and determines that the inmate did not commit a prohibited act of Moderate or Low severity, the UDC expunges the inmate's file of the incident report and related documents.

**CHAPTER 5.**

**§ 541.8   Discipline Hearing Officer (DHO) hearing.**

**The Discipline Hearing Officer (DHO) will only conduct a hearing on the incident report if referred by the UDC.   The DHO's hearing involves the following:**

**(a)   *Available dispositions.*   The DHO will make one of the following decisions after a hearing on the incident report:**

**(1)   You committed the prohibited act(s) charged, and/or a similar prohibited act(s) as described in the incident report;**

**(2)   You did not commit the prohibited act(s) charged; or**

**(3)   The incident report will be referred back for further investigation, review, and disposition.**

**(b)   *Discipline Hearing Officer.*   The DHO will be an impartial decision maker who was not a victim, witness, investigator, or otherwise significantly involved in the incident.**

The term Discipline Hearing Officer (DHO) refers to a one-person, independent officer who conducts hearings and imposes sanctions for incidents of misconduct referred by the UDC.   A DHO may not conduct hearings without receiving specialized training and passing a certification test.   If the institution's assigned DHO is unable to conduct hearings, the Warden arranges for another DHO, who must be certified.

The DHO may not hear any case not referred by the UDC.   Only the DHO has authority to impose or suspend sanctions A through E.

**(c)   *Timing.*   You will receive written notice of the charge(s) against you at least 24 hours before the DHO's hearing.   You may waive this requirement, in which case the DHO's hearing can be conducted sooner.**

The inmate does not appear before the DHO less than 24 hours before receiving written notice, unless he/she is to be released from custody within that time or waives the 24-hour notice requirement.

**(d)   *Staff Representative.*   You are entitled to have a staff representative during the DHO hearing process as follows:**

**(1)   *How to get a staff representative.*   You may request the staff representative of your choice, so long as that person was not a victim, witness, investigator, or otherwise significantly involved in the incident.   If your request(s) cannot be fulfilled, and you still want a staff representative, the Warden will appoint one. The Warden will also appoint a staff representative if it appears you are unable to adequately represent yourself before the DHO, for example, if you are illiterate or have difficulty understanding the charges against you.**

**(2)   *How the staff representative will help you.*   Prior to the DHO's hearing, the staff representative will be available to help you understand the incident report charges and potential consequences.   The staff representative may also assist you by speaking with and scheduling witnesses, obtaining written statements, and otherwise helping you prepare evidence for presentation at the DHO's hearing.   During the DHO's hearing, you are entitled to have the staff representative appear and assist you in understanding the proceedings.   The staff representative can also assist you in presenting evidence during the DHO's hearing.**

**(3)   *How the staff representative may appear.*   Your staff representative may appear either in person or electronically (for example, by video or telephone conferencing) at the DHO's discretion.   If your staff representative is not available for the scheduled hearing, you may either select another staff representative, request the hearing be postponed for a reasonable amount of time until your staff representative can appear, or proceed without a staff representative.**

The Warden provides a full-time staff member to represent an inmate, if requested.   If the request cannot be fulfilled, and the inmate still wants a staff representative, the Warden will appoint one.   The executive staff, the DHO or alternate DHO, reporting officer, investigating officer, witnesses to the incident, and UDC members involved in the case may not be staff representatives.   The Warden may exclude other staff in a particular case or when there is a potential conflict.

The DHO arranges for the presence of the staff representative selected by the inmate.   If the staff member declines or is unavailable, the inmate can select another representative, wait a reasonable period for the staff member's return, or proceed without a representative.   The DHO affords a staff representative adequate time to speak with the inmate and interview witnesses.   While it is expected that a staff member will have ample time to prepare before the hearing, delays to allow additional preparation may be ordered by the DHO.

**(e)   *Inmate appearance.*   You are permitted to appear before the DHO during the hearing on the incident report as follows:**

**(1)   You may appear either in person or electronically (for example, by video or telephone conferencing), at the DHO's discretion.**

**(2)   Your appearance may be prohibited during DHO deliberations or when your presence would jeopardize institution security, at the DHO's discretion.**

**(3)   You may waive your appearance before the DHO.   If you waive your appearance, the DHO hearing will be conducted in your absence.**

**(4)   If you escape or are otherwise absent from custody, the DHO will conduct a hearing in your absence at the institution where you were last confined.**

Although an inmate may waive the right to be present, he/she may elect to have a staff representative and witness(es) appear.

The DHO must document reason(s) for excluding an inmate from the hearing.   An inmate may waive the right to be present, provided the waiver is documented and reviewed by the DHO.   A waiver may be in writing, signed by the inmate, or if the inmate refuses to sign, by a memo signed by staff and witnessed by a second staff member indicating the inmate's refusal to appear.

The DHO may conduct a hearing in the absence of an inmate when the inmate waives the right to appear.   If an inmate escapes or is otherwise absent, the DHO conducts a hearing in the inmate's absence at the institution in which the inmate was last confined.   When an inmate returns to custody following an absence during which sanctions were imposed by the DHO, the Warden has the charges reheard before the DHO, ordinarily within 60 days after the inmate's arrival at the institution to which he/she is designated after return to custody, following an appearance before the UDC at that institution.

The UDC ensures that the inmate is aware of all rights for an appearance before the DHO, including delivery of charge(s), advisement of the right to remain silent, and other rights exercised before the DHO.   Procedural requirements before the DHO apply to this in-person hearing, except that written statements of witnesses not readily available may be liberally used in place of in-person witnesses.

The DHO may affirm the earlier action taken, dismiss the charge(s), modify the finding of the original DHO as to the offense committed, or modify sanctions imposed in the inmate's absence.

When an inmate escapes, and is in local custody where a hearing may be held, an in-person rather than in-absentia hearing may be held at the DHO's discretion.

**(f)   *Evidence and witnesses.*   You are entitled to make a statement and present documentary evidence to the DHO on your own behalf.   The DHO will consider all evidence presented during the hearing.   The DHO's decision will be based on**

**at least some facts and, if there is conflicting evidence, on the greater weight of the evidence.   Witnesses may appear at the DHO's hearing as follows:**

**(1)   Witnesses may appear before the DHO either in person or electronically (for example, by video or telephone conferencing) at the DHO's discretion.**

**(2)   The DHO will call witnesses who have information directly relevant to the charge(s) and who are reasonably available.   However, the DHO need not call witnesses adverse to you if their testimony is adequately summarized in the incident report or other investigation materials.**

**(3)   You or your staff representative may request witnesses appear at the hearing to testify on your behalf.   Your requested witnesses may not appear if, in the DHO's discretion, they are not reasonably available, their presence at the hearing would jeopardize institution security, or they would present repetitive evidence.**

**(4)   If your requested witnesses are unavailable to appear, written statements can be requested by either the DHO or staff representative.   The written statements can then be considered during the DHO's hearing.**

**(5)   Only the DHO may directly question witnesses at the DHO's hearing.   Any questions by you or your staff representative must be submitted to the DHO, who will present the question to the witness in his/her discretion.**

**(6)   The DHO may consider evidence provided by a confidential informant (CI) that the DHO finds reliable.   You will not be informed of the CI's identity.   You will be informed of the CI's testimony to the extent it will not jeopardize institution security, at the DHO's discretion.**

The DHO may refer the case back to the UDC for further information or disposition when the case does not warrant DHO involvement.   When further investigation or more evidence is needed, the DHO may postpone or, before deciding whether a prohibited act was committed, continue the hearing until a later date.   A postponement or continuance must be for good cause (determined by the DHO) and documented in the record.

The phrase "some facts" refers to facts indicating the inmate committed the prohibited act.   The phrase "greater weight of the evidence" refers to the strength of the evidence, not to its quantity or to the number of witnesses testifying.

The DHO may consider negative information (e.g., known peddler of contraband) as part of the fact-finding process.   Negative information may be used to draw an adverse inference against the inmate.   However, negative information alone may not be used to support a finding that an inmate committed a prohibited act.

■ **Witnesses**.  An inmate may request witnesses from outside the institution.   In such instances, the inmate charged may be excluded during the appearance of an outside witness. An outside witness should appear in an area in which outside visitors are usually allowed. Written statements from outside witnesses may be used by the DHO in lieu of live testimony.

The DHO need not call repetitive witnesses.   The reporting officer and other adverse witnesses need not be called if their knowledge of the incident is adequately summarized in the incident report and other investigative materials.   The DHO must document reasons for declining to call requested witnesses in the DHO report, or, if the reasons are confidential, in a separate report, not available to the inmate.

The inmate's staff representative, or, when the inmate waives staff representation, the DHO, questions witnesses requested by the inmate, who are called before the DHO.   An inmate who waives staff representation may submit questions for requested witnesses in writing to the DHO.   The inmate may not question witnesses.

When an inmate is excluded during the appearance of a witness, including an outside witness, the DHO informs the inmate before the close of the hearing of the substance of the testimony, except where security would be jeopardized.

There is no minimum or maximum number of witnesses who may be called; the number should be based on the situation and the information to be presented.   While several eyewitnesses may be called, it is expected that the number of character witnesses would be limited, at the discretion of the DHO.

The DHO may not refuse to call a witness who is reasonably available (e.g., on a different shift) and has information relevant to the charge **solely** because the witness (staff or inmate) does not wish to appear.   An inmate witness can be required to attend, and failure to cooperate with the DHO can result in disciplinary action (e.g., for Refusing to Obey an Order of a Staff Member, Code 307).

The DHO may notify the inmate when a witness does not wish to testify.   This may be warranted when it appears that to force the witness's appearance could result in threats to a person's safety, or disruption to security or orderly running of the institution.

The statement of an inmate requesting a witness is not enough to mandate the witness's appearance. There must be an indication that the witness has information directly relevant to the charges.

The DHO may remind an inmate witness that statements at the hearing must be "true" to the best of the inmate's knowledge.

On occasion, an inmate may request a witness who is not reasonably available to testify in person (e.g., an inmate from another institution).   When this occurs, the DHO ordinarily

allows time for the written statement of the witness to be received, if he/she is expected to have relevant information.   The witness should sign the written statement.   If an extension is not granted, the DHO must clearly state in the record reasons for not granting it.

- ■ **Confidential informants**.   When a discipline decision is based on confidential informant information, the UDC or DHO must document, ordinarily in the hearing report, their finding as to the reliability of each confidential informant and the factual basis for that finding.   If the report would reveal the confidential informant's identity, this finding is part of a separate report prepared by the DHO, not available to the inmate.

  Confidential informant information should not be used, or relied on in the report, when independent information is available to support a finding.   Just because an informant provided information that opened an investigation does not mean that informant must be referred to, as long as there are other facts or independent evidence.

  An **informant** is a person (non-staff, ordinarily an inmate) who provides staff (usually at the person's initiation) with information about the commission of an offense or about misconduct.   A **confidential informant** is one whose identity must be protected for personal safety.   Ordinarily, the finding that an inmate committed a prohibited act must be supported by more than one reliable confidential source.   If there is only one, the confidential information must be corroborated by independently verified evidence linking the inmate to the prohibited act.

  Uncorroborated confidential information from a single informant is **insufficient** as the sole basis for a finding, **unless** the circumstances of the incident and the knowledge possessed by the informant are convincing enough to show that the information must be reliable.   In an unwitnessed assault, for example, the statement of a seriously injured assault victim **could** be sufficient to support a finding without corroborating evidence.

  The reliability of a confidential informant must be established before the information may be used to support a finding.   Reliability may be determined by a record of past reliability or by other factors that reasonably convince the DHO.   The staff member providing information to the DHO must include a written statement of the frequency with which the informant provided information, the period during which the informant provided information, and the information's accuracy.   If reliability is based on other factors, they must be clearly specified.

  Staff have an obligation to determine whether there is any basis for concluding that the informant is providing false information.   Neither the DHO nor UDC may consider information obtained in exchange for the promise of a favor to support its finding.

  Confidential information presented to the UDC or DHO must be in writing and must state facts and the manner in which the informant learned the facts.   If possible, the statement must be signed by the confidential informant.   If the informant does not write a statement,

the staff member receiving the information provides the information in language as close to the informant's as possible (actual words where possible).

The identity of a confidential informant must be known, at a minimum, by the DHO.   Where the UDC does not make a final disposition, but refers a case to the DHO, the UDC need not know the identity of an informant or the substance of the information.

An inmate's staff representative need not know the identity of informants.   While confidential information may, at the discretion of the DHO, be divulged to, and challenged by, a staff representative, the **reliability** of informants may not be questioned by the staff representative.   The DHO is responsible for establishing reliability.

Confidential informants' statements must, at a minimum, be incorporated in discipline hearing reports by reference.   The UDC or DHO must document, ordinarily in the UDC or DHO report, their finding as to the reliability of each informant and its factual basis.   The report must identify specific information relied on and the factual basis for that reliance. When the DHO decides that information given by a single confidential informant is sufficient, the report should include a rationale for that decision.

When the DHO determines that including information in the report would not reveal the identity of the informant, such information is included.   When the DHO determines that including information in the report might reveal the identity of the informant, the DHO prepares a separate report documenting the findings of the reliability of each informant, their factual basis, the information relied on, and the factual basis for that reliance.   This separate report need not be placed in the inmate central file, but is retained in a secure location as long as it is available for later administrative or judicial review, and as long as the separate report is incorporated by reference into the DHO report.

Since information received anonymously does not meet the necessary reliability standard, it may not be used as evidence in making a finding.   Such information, however, may be used in the investigation.

When relying on confidential informant information in making a finding, the DHO must justify the reliability of this information and its factual basis.   If the testimony of conflicting witnesses (any witness, not just confidential informants) is presented, or there are other conflicts in the evidence, the DHO indicates in the record the reason for believing the testimony of one witness over another or otherwise resolving the conflict.   When including this information in the written report would jeopardize security, the DHO may provide it in a separate report, not available to the inmate.

**(g)**   *Sanctions.*   **If you committed a prohibited act(s), the DHO can impose any of the available sanctions listed in Tables 1 and 2.**

The Regional Director audits discipline hearings and dispositions to ensure conformity with this policy.

**(h)  *Written Report.*   You will receive a written copy of the DHO's decision following the hearing.   The DHO is not required to prepare a verbatim record of the hearing.   The DHO's written report will document the following:**

**(1)   Whether you were advised of your rights during the DHO process;**

**(2)   The evidence relied on by the DHO;**

**(3)   The DHO's decision;**

**(4)   The sanction imposed by the DHO; and**

**(5)   The reason(s) for the sanction(s) imposed.**

The DHO prepares a record of the proceedings.   The evidence, decision, and reasons for actions taken must be specific, unless this would jeopardize security.   The DHO gives the inmate a written copy of the decisions and disposition, ordinarily within 15 work days of the decision.

The DHO signs the discipline hearing report, certifying that it accurately reflects the proceedings.

A record of the hearing and supporting documents are kept in the inmate central file.

The DHO ensures that the required information is entered into SENTRY in the inmate's Chronological Disciplinary Record.

If the DHO expunges an incident report, unit staff must ensure the inmate's central file does not include the incident report and/or related documents.

References to significant prohibited acts that are not supported by disciplinary actions and hearings may not be used by the Bureau in ways that have an adverse impact on an inmate, specifically the forfeiture or disallowance of good time, good conduct time, or a parole recommendation.   Staff may maintain such references in an inmate's central file for use in making classification, administrative transfer, and other decisions if the following conditions are met:

- References in an inmate's central file must be maintained accurately.   For example, an inmate suspected of being involved in an escape attempt who was never found to have violated disciplinary regulations or was never charged due to lack of evidence would have to have the lack of evidence noted in any reference to alleged involvement in the escape attempt.

- Placement of a reference to 100 or 200 severity level offenses not supported by disciplinary action in an inmate's central file may only be done with the written approval of the Warden of the institution where the incident occurred.   This must be documented in the inmate's central file.   Approval signifies that in the Warden's judgment this information is necessary for proper management of the inmate.

**(i)   *Appeals.*   You may appeal the DHO's action(s) through the Administrative Remedy Program, 28 CFR Part 542, Subpart B.**

The reviewing official (Warden, Regional Director, or General Counsel) may approve, modify, reverse, or send back with directions, including ordering a rehearing, any action of the UDC or DHO, but may not increase a valid sanction.   The initial reviewing official for the UDC is the Warden.   The decision of the DHO is final and subject to review only by the Regional Director to ensure conformity with the discipline policy and by appeal through the Administrative Remedy program.   The DHO ensures the inmate is notified that any appeal must be made within the time frames in the Administrative Remedy procedures.   The Warden may also review DHO hearings to the extent he or she considers necessary to ensure substantial compliance with the provisions of the discipline policy.   Also, the DHO may receive informal complaints about the procedure and correct mistakes locally.

On appeals, the reviewing authority considers:

- Whether the UDC or DHO substantially complied with regulations on inmate discipline.
- Whether the UDC or DHO based its decision on facts.
- If there was conflicting evidence, whether the decision was based on the greater weight of the evidence.
- Whether an appropriate sanction was imposed or the severity level of the prohibited act, and other relevant circumstances.

The reviewing official is limited to determining if the UDC or DHO could have rationally concluded that the evidence supports the decision, not necessarily whether the reviewing official would have made the same decision.

The investigator, UDC members, DHO, reporting officer, or staff representative may not investigate or help prepare the response to administrative appeals from UDC or DHO actions.

Where a remand is directed, the UDC or DHO is bound by the original sanction(s), except where:

- The sanction is in violation of policy.
- The remand is made specifically because of the sanction.
- The inmate's behavior or activity since the first hearing is determined by the UDC or DHO to justify an increase or decrease in sanction(s).   The intervening behavior or activity and the reasons for an increase or decrease in sanction(s) must be documented in the hearing record.

When an appeal results in the original sanction being replaced by a suspended sanction, the suspension (when possible) runs from the date the original sanction was imposed.

When an inmate files a Regional or Central Office appeal of a disciplinary action, those offices may request copies of disciplinary records.   Each Warden will designate an appropriate staff member with the proper clearance to ensure that copies sent for review or appeal include confidential information, witness and notice of rights forms, staff memos concerning the incident, investigative reports, and any dissenting reports.   Documentation is forwarded within three working days of the receipt of request.

**Appendix A.   LIST OF FORMS**

- Incident Report (BP-A0288 JUN 11).
- Inmate Rights at Discipline Hearing (BP-A0293 JUN 11).
- Notice of Discipline Hearing Before the Discipline Hearing Officer (DHO) (BP-A0294 JUN 11).
- Duties of Staff Representative (BP-A0306 JUN 11).
- Waiver of Appearance (BP-A0307 JUN 11).
- Discipline Hearing Officer (DHO) Report (BP-A0304 JUN 11).

**Appendix B.   SUMMARY OF INMATE DISCIPLINE SYSTEM**

1.   Staff becomes aware of inmate's involvement in incident or once the report is released for administrative processing following a referral for criminal prosecution.



　　ordinarily maximum of 24 hours

2.   Staff gives inmate notice of charges
　　by delivering Incident Report.

　　　　　maximum ordinarily of 5 work days from the
　　　　　time staff became aware of the inmate's
　　　　　involvement in the incident.   (Excludes
　　　　　the day staff become aware of the inmate's
　　　　　involvement, weekends, and holidays.)

　　　　　　　　　　　3.　　　Initial review (UDC)

　　minimum of 24 hours
　　　(unless waived)

4.　Discipline Hearing Officer (DHO) Hearing

**NOTE**:   Time limits are subject to exceptions as provided in the rules.

Staff may suspend disciplinary proceedings for a period not to exceed two calendar weeks while undertaking informal resolution.   If informal resolution is unsuccessful, staff may reinitiate disciplinary proceedings.   The requirements then begin running at the same point at which they were suspended.

**Appendix C.   INMATE RIGHTS AND RESPONSIBILITIES**

| RIGHTS | RESPONSIBILITIES |
|---|---|
| 1.  You have the right to expect that you will be treated in a respectful, impartial, and fair manner by all staff. | 1. You are responsible for treating inmates and staff in the same manner. |
| 2.  You have the right to be informed of the rules, procedures, and schedules concerning the operation of the institution. | 2. You have the responsibility to know and abide by them. |
| 3.  You have the right to freedom of religious affiliation and voluntary worship. | 3. You have the responsibility to recognize and respect the rights of others in this regard. |
| 4.  You have the right to health care, which includes nutritious meals, proper bedding and clothing,- and a laundry schedule for cleanliness of the same, an opportunity to shower regularly, proper ventilation for warmth and fresh air, a regular exercise period, toilet articles, and medical and dental treatment. | 4. It is your responsibility not to waste food, to follow the laundry and shower schedule, maintain neat and clean living quarters, to keep your area free of contraband, and to seek medical and dental care as you may need it. |
| 5.  You have the opportunity to visit and correspond with family members and friends, and correspond with members of the news media, in accordance with Bureau rules and institution guidelines. | 5. It is your responsibility to conduct yourself properly during visits.   You will not engage in inappropriate conduct during visits to include sexual acts and introduction of contraband, and not to violate the law or Bureau guidelines through your correspondence. |
| 6.  You have the right to unrestricted and confidential access to the courts by correspondence (on matters such as the legality of your conviction, civil matters, pending criminal cases, and conditions of your imprisonment.) | 6. You have the responsibility to present honestly and fairly your petitions, questions, and problems to the court. |

7.  You have the right to legal counsel from an attorney of your choice by interviews and correspondence.

7.  It is your responsibility to use the services of an attorney honestly and fairly.

8.  You have the right to participate in the use of law library reference materials to assist you in resolving legal problems. You also have the right to receive help when it is available through a legal assistance program.

8.  It is your responsibility to use these resources in keeping with the procedures and schedule prescribed and to respect the rights of other inmates to the use of the materials and assistance.

9.  You have the right to a wide range of reading materials for educational purposes and for your own enjoyment.  These materials may include magazines and newspapers sent from the community, with certain restrictions.

9.  It is your responsibility to seek and use such materials for your personal benefit, without depriving others of their equal rights to the use of this material.

10. You have the right to participate in educational, vocational training, counseling, and employment programs as resources permit, and in keeping with your interests, needs, and abilities.

10.  You have the responsibility to take advantage of activities which will aid you to live a successful and law-abiding life within the institution and in the community.  You will be expected to abide by the regulations governing the participation in such activities.

11. You have the right to use your funds for commissary and other purchases, consistent with institution security and good order, for opening bank and/or savings accounts, and for assisting your family, in accordance with Bureau rules.

11.  You have the responsibility to meet your financial and legal obligations, including, but not limited to, DHO and court-imposed assessments, fines, and restitution. You also have the responsibility to make use of your funds in a manner consistent with your release plans, your family needs, and for other obligations that you may have.

**Appendix D.   DATA ENTRY INSTRUCTIONS**

Each Discipline Hearing Officer (DHO) or Unit Discipline Committee (UDC) is responsible for the validity and accuracy of the data on all cases resolved at their level.   It is critical that the data is reported correctly and uniformly.

**Prohibited Acts**.   Data collection requirements apply only to the following prohibited acts:

- Code 100 – Killing.
- Code 101 – Assaulting any Person (Serious).
- Code 107 – Taking Hostages.
- Code 114 – Sexual Assault by Force.
- Code 203 – Threatening Another with Bodily Harm.
- Code 205 – Engaging in Sexual Acts.
- Code 206 – Making Sexual Proposals or Threats to Another.
- Code 224 – Assaulting any Person (Less Serious).
- Code 225 – Stalking.
- Code 229 – Sexual Assault without Force.

**SENTRY Screens**.   When an inmate is found to have committed one or more of the prohibited acts listed above, the DHO or UDC enters data on the following SENTRY screens:

- Add Hearings/Findings or Update Status After Procedural Hearing.
- Update Hearing/Findings or Execute/Unexecute Sanctions.

Because data collection is not required at the charging or accusatory levels, there are no additional requirements for the Update Charges screen.

**Data Keying Requirements**.   Four characters are available to enter data on a particular act; the fourth is always used for aiding and abetting or attempts (for example, code 101**A**).

For the prohibited acts specified above, SENTRY allows three additional characters (fields) for DHOs or UDCs to input data:

- The first field requires data on **type of victim**.
- The second requires data on **type of weapon** used.
- The third applies to the **nature of the injury**.

A fourth, separate field records whether the incident was referred for prosecution.

**Type of Victim**.   The DHO and UDC Chairman must select one of three codes that best identifies the victim's status and enter it in the Additional Tracking Identifier (ATI) field for the prohibited act (e.g., ATI.: S̲, ATI.: O̲):

I = Inmate
S = Staff
O = Other

There can be only one victim for each prohibited act.   When there are multiple victims (two or more inmates, or one staff member and one inmate), there must be multiple prohibited acts against the inmate.   If there are multiple acts for the same code, they must be keyed under separate incident report numbers even though the finding could be based on a single incident report.

"Other" is entered when the victim is a visitor, contracting staff, U.S. Marshal, etc.

**Type of Weapons Classification**.   DHOs must review the list of weapons codes starting from the top (code "A") to the bottom (code "N").   Using this rank-ordered review, select the **first** code that **best** describes the most serious weapon the inmate used or attempted to use.   The selection is placed in the second position after the type of victim (e.g. ATI.: S**B**, ATI.: O**F**):

A   gun
B   sharp object (used to inflict cutting injury)
C   pointed object (used to inflict stabbing injury)
D   solid\blunt object (thrown or used to hit)
E   toxic or flammable fluids or substances
F   fists\hands
G   feet\legs
H   bodily fluids\waste (spit, urine, feces, blood, etc.)
J   teeth
K   head
L   water
M   other or unknown
N   no weapon

"Weapons" refers to objects, instruments, or substances listed above that the inmate controlled at the time of the offense, and are considered an element of the offense.

When an inmate threatens to use a weapon that was not readily available or under his or her control at the time of the incident, select code "N", "no weapon."

**Nature of Injury Assessment**.   The level of injury is best assessed by considering the medical treatment required, if any.   Choose the injury code that best describes the most serious injury suffered.   The choice is placed in the third position after type of weapon (e.g., ATI.: SB**4**, ATI.: OF**1**):

1   **No injury** - The victim or medical staff reported no injuries.

2  **Minor injury** - The victim received minor injuries that may have been treated at the facility, or treated at the facility with a possible recommendation for a non-inmate victim to consult with his/her physician.

3  **Moderate injury** - The victim received more serious injuries that generally require treatment at an outside hospital, or, in the case of non-inmate victims, treatment by their own physicians.   Moderate injuries are not judged life-threatening.

4  **Major injury** - The victim received injuries that are life-threatening, requiring emergency medical treatment at an outside hospital.

5  **Fatal injury** - The victim received injuries resulting in loss of life.

**Example One**:   ATI.: **SB4** – "Staff-**S**" victim, with the weapon being a "sharp object-**B**", and "major injuries-**4**" sustained.

**Example Two**:   ATI.: **OF1** – "Other-**O**" victim with the weapon being "fists/hands-**F**", and "no injury-**1**" sustained.

**Referrals for Prosecution (RFP)**.   For this system to provide accurate data, it is imperative that Special Investigative Supervisors (SIS) and Special Investigative Agents (SIA) refer assaults for prosecution and record the data in section 25 of the incident report.   This is a separate field; the DHO keys either accepted or declined for prosecution by the Assistant U.S. Attorney in the screens for:

- Add Hearings/Findings.
- Update Status After Procedural Hearing.
- Update Hearing/Findings.
- Execute/Unexecute Sanctions.

The SIS or SIA documents this under "Other Facts" in section 25 of the incident report (e.g., RFP.: **A** for accepted or RFP.: **D** for declined).

**Table 1.   PROHIBITED ACTS AND AVAILABLE SANCTIONS**

**GREATEST SEVERITY LEVEL PROHIBITED ACTS**

**100**   **Killing.**

**101**   **Assaulting any person, or an armed assault on the institution's secure perimeter (a charge for assaulting any person at this level is to be used only when serious physical injury has been attempted or accomplished).**

**102**   **Escape from escort; escape from any secure or non-secure institution, including community confinement; escape from unescorted community program or activity; escape from outside a secure institution.**

**103**   **Setting a fire (charged with this act in this category only when found to pose a threat to life or a threat of serious bodily harm or in furtherance of a prohibited act of Greatest Severity, *e.g.,* in furtherance of a riot or escape; otherwise the charge is properly classified Code 218, or 329).**

**104**   **Possession, manufacture, or introduction of a gun, firearm, weapon, sharpened instrument, knife, dangerous chemical, explosive, ammunition, or any instrument used as a weapon.**

**105**   **Rioting.**

**106**   **Encouraging others to riot.**

**107**   **Taking hostage(s).**

**108**   **Possession, manufacture, introduction, or loss of a hazardous tool (tools most likely to be used in an escape or escape attempt or to serve as weapons capable of doing serious bodily harm to others; or those hazardous to institutional security or personal safety; *e.g.,* hacksaw blade, body armor, maps, handmade rope, or other escape paraphernalia, portable telephone, pager, or other electronic device).**

**109**   **(Not to be used).**

**110**   **Refusing to provide a urine sample; refusing to breathe into a Breathalyzer; refusing to take part in other drug-abuse testing.**

**111**   **Introduction or making of any narcotics, marijuana, drugs, alcohol, intoxicants, or related paraphernalia, not prescribed for the individual by the medical staff.**

112   Use of any narcotics, marijuana, drugs, alcohol, intoxicants, or related paraphernalia, not prescribed for the individual by the medical staff.

113   Possession of any narcotics, marijuana, drugs, alcohol, intoxicants, or related paraphernalia, not prescribed for the individual by the medical staff.

114   Sexual assault of any person, involving non-consensual touching by force or threat of force.

115   Destroying and/or disposing of any item during a search or attempt to search.

196   Use of the mail for an illegal purpose or to commit or further a Greatest category prohibited act.

197   Use of the telephone for an illegal purpose or to commit or further a Greatest category prohibited act.

198   Interfering with a staff member in the performance of duties most like another Greatest severity prohibited act.   This charge is to be used only when another charge of Greatest severity is not accurate.   The offending conduct must be charged as "most like" one of the listed Greatest severity prohibited acts.

199   Conduct which disrupts or interferes with the security or orderly running of the institution or the Bureau of Prisons most like another Greatest severity prohibited act.   This charge is to be used only when another charge of Greatest severity is not accurate.   The offending conduct must be charged as "most like" one of the listed Greatest severity prohibited acts.

**AVAILABLE SANCTIONS FOR GREATEST SEVERITY LEVEL PROHIBITED ACTS**

A. Recommend parole date rescission or retardation.

B. Forfeit and/or withhold earned statutory good time or non-vested good conduct time (up to 100%) and/or terminate or disallow extra good time (an extra good time or good conduct time sanction may not be suspended).

B.1.   Disallow ordinarily between 50% and 75% (27-41 days) of good conduct time credit available for year (a good conduct time sanction may not be suspended).

C. Disciplinary segregation (up to 12 months).

D.  Make monetary restitution.

E.  Monetary fine.

F.  Loss of privileges (*e.g.,* visiting, telephone, commissary, movies, recreation).

G.  Change housing (quarters).

H.  Remove from program and/or group activity.

I.   Loss of job.

J.  Impound inmate's personal property.

K.  Confiscate contraband.

L.   Restrict to quarters.

M. Extra duty.

## HIGH SEVERITY LEVEL PROHIBITED ACTS

200   Escape from a work detail, non-secure institution, or other non-secure confinement, including community confinement, with subsequent voluntary return to Bureau of Prisons custody within four hours.

201   Fighting with another person.

202   (Not to be used).

203   Threatening another with bodily harm or any other offense.

204   Extortion; blackmail; protection; demanding or receiving money or anything of value in return for protection against others, to avoid bodily harm, or under threat of informing.

205   Engaging in sexual acts.

206   Making sexual proposals or threats to another.

207   Wearing a disguise or a mask.

**208**   **Possession of any unauthorized locking device, or lock pick, or tampering with or blocking any lock device (includes keys), or destroying, altering, interfering with, improperly using, or damaging any security device, mechanism, or procedure.**

**209**   **Adulteration of any food or drink.**

**210**   **(Not to be used).**

**211**   **Possessing any officer's or staff clothing.**

**212**   **Engaging in or encouraging a group demonstration.**

**213**   **Encouraging others to refuse to work, or to participate in a work stoppage.**

**214**   **(Not to be used).**

**215**   **(Not to be used).**

**216**   **Giving or offering an official or staff member a bribe, or anything of value.**

**217**   **Giving money to, or receiving money from, any person for the purpose of introducing contraband or any other illegal or prohibited purpose.**

**218**   **Destroying, altering, or damaging government property, or the property of another person, having a value in excess of $100.00, or destroying, altering, damaging life-safety devices (e.g., fire alarm) regardless of financial value.**

**219**   **Stealing; theft (including data obtained through the unauthorized use of a communications device, or through unauthorized access to disks, tapes, or computer printouts or other automated equipment on which data is stored).**

**220**   **Demonstrating, practicing, or using martial arts, boxing (except for use of a punching bag), wrestling, or other forms of physical encounter, or military exercises or drill (except for drill authorized by staff).**

**221**   **Being in an unauthorized area with a person of the opposite sex without staff permission.**

**222**   **(Not to be used).**

**223**   **(Not to be used).**

**224**   **Assaulting any person (a charge at this level is used when less serious physical injury or contact has been attempted or accomplished by an inmate).**

**225**   **Stalking another person through repeated behavior which harasses, alarms, or annoys the person, after having been previously warned to stop such conduct.**

**226**   **Possession of stolen property.**

**227**   **Refusing to participate in a required physical test or examination unrelated to testing for drug abuse (e.g., DNA, HIV, tuberculosis).**

**228**   **Tattooing or self-mutilation.**

**229**   **Sexual assault of any person, involving non-consensual touching without force or threat of force.**

**296**   **Use of the mail for abuses other than criminal activity which circumvent mail monitoring procedures (e.g., use of the mail to commit or further a High category prohibited act, special mail abuse; writing letters in code; directing others to send, sending, or receiving a letter or mail through unauthorized means; sending mail for other inmates without authorization; sending correspondence to a specific address with directions or intent to have the correspondence sent to an unauthorized person; and using a fictitious return address in an attempt to send or receive unauthorized correspondence).**

**297**   **Use of the telephone for abuses other than illegal activity which circumvent the ability of staff to monitor frequency of telephone use, content of the call, or the number called; or to commit or further a High category prohibited act.**

**298**   **Interfering with a staff member in the performance of duties most like another High severity prohibited act.   This charge is to be used only when another charge of High severity is not accurate.   The offending conduct must be charged as "most like" one of the listed High severity prohibited acts.**

**299**   **Conduct which disrupts or interferes with the security or orderly running of the institution or the Bureau of Prisons most like another High severity prohibited act.   This charge is to be used only when another charge of High severity is not accurate.   The offending conduct must be charged as "most like" one of the listed High severity prohibited acts.**

**AVAILABLE SANCTIONS FOR HIGH SEVERITY LEVEL PROHIBITED ACTS**

A.  Recommend parole date rescission or retardation.

B.  Forfeit and/or withhold earned statutory good time or non-vested good conduct time up to 50% or up to 60 days, whichever is less, and/or terminate or disallow extra good time (an extra good time or good conduct time sanction may not be suspended).

B.1  Disallow ordinarily between 25% and 50% (14-27 days) of good conduct time credit available for year (a good conduct time sanction may not be suspended).

C.  Disciplinary segregation (up to 6 months).

D.  Make monetary restitution.

E.  Monetary fine.

F.  Loss of privileges (*e.g.,* visiting, telephone, commissary, movies, recreation).

G.  Change housing (quarters).

H.  Remove from program and/or group activity.

I.  Loss of job.

J.  Impound inmate's personal property.

K.  Confiscate contraband.

L.  Restrict to quarters.

M.  Extra duty.

**MODERATE SEVERITY LEVEL PROHIBITED ACTS**

300  Indecent Exposure.

301  (Not to be used).

302  Misuse of authorized medication.

**303** **Possession of money or currency, unless specifically authorized, or in excess of the amount authorized.**

**304** **Loaning of property or anything of value for profit or increased return.**

**305** **Possession of anything not authorized for retention or receipt by the inmate, and not issued to him through regular channels.**

**306** **Refusing to work or to accept a program assignment.**

**307** **Refusing to obey an order of any staff member (may be categorized and charged in terms of greater severity, according to the nature of the order being disobeyed, *e.g.* failure to obey an order which furthers a riot would be charged as 105, Rioting; refusing to obey an order which furthers a fight would be charged as 201, Fighting; refusing to provide a urine sample when ordered as part of a drug-abuse test would be charged as 110).**

**308** **Violating a condition of a furlough.**

**309** **Violating a condition of a community program.**

**310** **Unexcused absence from work or any program assignment.**

**311** **Failing to perform work as instructed by the supervisor.**

**312** **Insolence towards a staff member.**

**313** **Lying or providing a false statement to a staff member.**

**314** **Counterfeiting, forging, or unauthorized reproduction of any document, article of identification, money, security, or official paper (may be categorized in terms of greater severity according to the nature of the item being reproduced, *e.g.,* counterfeiting release papers to effect escape, Code 102).**

**315** **Participating in an unauthorized meeting or gathering.**

**316** **Being in an unauthorized area without staff authorization.**

**317** **Failure to follow safety or sanitation regulations (including safety regulations, chemical instructions, tools, MSDS sheets, OSHA standards).**

**318** **Using any equipment or machinery without staff authorization.**

**319**   **Using any equipment or machinery contrary to instructions or posted safety standards.**

**320**   **Failing to stand count.**

**321**   **Interfering with the taking of count.**

**322**   **(Not to be used).**

**323**   **(Not to be used).**

**324**   **Gambling.**

**325**   **Preparing or conducting a gambling pool.**

**326**   **Possession of gambling paraphernalia.**

**327**   **Unauthorized contacts with the public.**

**328**   **Giving money or anything of value to, or accepting money or anything of value from, another inmate or any other person without staff authorization.**

**329**   **Destroying, altering, or damaging government property, or the property of another person, having a value of $100.00 or less.**

**330**   **Being unsanitary or untidy; failing to keep one's person or quarters in accordance with posted standards.**

**331**   **Possession, manufacture, introduction, or loss of a non-hazardous tool, equipment, supplies, or other non-hazardous contraband (tools not likely to be used in an escape or escape attempt, or to serve as a weapon capable of doing serious bodily harm to others, or not hazardous to institutional security or personal safety) (other non-hazardous contraband includes such items as food, cosmetics, cleaning supplies, smoking apparatus and tobacco in any form where prohibited, and unauthorized nutritional/dietary supplements).**

**332**   **Smoking where prohibited.**

**333**   **Fraudulent or deceptive completion of a skills test (*e.g.,* cheating on a GED, or other educational or vocational skills test).**

**334**   **Conducting a business; conducting or directing an investment transaction without staff authorization.**

**335**   Communicating gang affiliation; participating in gang related activities; possession of paraphernalia indicating gang affiliation.

**336**   Circulating a petition.

**396**   Use of the mail for abuses other than criminal activity which do not circumvent mail monitoring; or use of the mail to commit or further a Moderate category prohibited act.

**397**   Use of the telephone for abuses other than illegal activity which do not circumvent the ability of staff to monitor frequency of telephone use, content of the call, or the number called; or to commit or further a Moderate category prohibited act.

**398**   Interfering with a staff member in the performance of duties most like another Moderate severity prohibited act.   This charge is to be used only when another charge of Moderate severity is not accurate.   The offending conduct must be charged as "most like" one of the listed Moderate severity prohibited acts.

**399**   Conduct which disrupts or interferes with the security or orderly running of the institution or the Bureau of Prisons most like another Moderate severity prohibited act.   This charge is to be used only when another charge of Moderate severity is not accurate.   The offending conduct must be charged as "most like" one of the listed Moderate severity prohibited acts.

**AVAILABLE SANCTIONS FOR MODERATE SEVERITY LEVEL PROHIBITED ACTS**

**A.** Recommend parole date rescission or retardation.

**B.** Forfeit and/or withhold earned statutory good time or non-vested good conduct time up to 25% or up to 30 days, whichever is less, and/or terminate or disallow extra good time (an extra good time or good conduct time sanction may not be suspended).

**B.1** Disallow ordinarily up to 25% (1-14 days) of good conduct time credit available for year (a good conduct time sanction may not be suspended).

**C.** Disciplinary segregation (up to 3 months).

**D.** Make monetary restitution.

**E.** Monetary fine.

F.  Loss of privileges (*e.g.,* visiting, telephone, commissary, movies, recreation).

G.  Change housing (quarters).

H.  Remove from program and/or group activity.

I.  Loss of job.

J.  Impound inmate's personal property.

K.  Confiscate contraband.

L.  Restrict to quarters.

M.  Extra duty.

**LOW SEVERITY LEVEL PROHIBITED ACTS**

400     (Not to be used).

401     (Not to be used).

402     Malingering, feigning illness.

403     (Not to be used).

404     Using abusive or obscene language.

405     (Not to be used).

406     (Not to be used).

407     Conduct with a visitor in violation of Bureau regulations.

408     (Not to be used).

409     Unauthorized physical contact (e.g., kissing, embracing).

498     Interfering with a staff member in the performance of duties most like another Low severity prohibited act.   This charge is to be used only when another charge of Low severity is not accurate.   The offending conduct must be charged as "most like" one of the listed Low severity prohibited acts.

**499**   **Conduct which disrupts or interferes with the security or orderly running of the institution or the Bureau of Prisons most like another Low severity prohibited act.   This charge is to be used only when another charge of Low severity is not accurate.   The offending conduct must be charged as "most like" one of the listed Low severity prohibited acts.**

## AVAILABLE SANCTIONS FOR LOW SEVERITY LEVEL PROHIBITED ACTS

**B.1**   **Disallow ordinarily up to 12.5% (1-7 days) of good conduct time credit available for year (to be used only where inmate found to have committed a second violation of the same prohibited act within 6 months); Disallow ordinarily up to 25% (1-14 days) of good conduct time credit available for year (to be used only where inmate found to have committed a third violation of the same prohibited act within 6 months) (a good conduct time sanction may not be suspended).**

**D.   Make monetary restitution.**

**E.   Monetary fine.**

**F.   Loss of privileges (e.g., visiting, telephone, commissary, movies, recreation).**

**G.   Change housing (quarters).**

**H.   Remove from program and/or group activity.**

**I.   Loss of job.**

**J.   Impound inmate's personal property.**

**K.   Confiscate contraband**

**L.   Restrict to quarters.**

**M. Extra duty.**

**Table 2.   ADDITIONAL AVAILABLE SANCTIONS FOR REPEATED PROHIBITED ACTS WITHIN THE SAME SEVERITY LEVEL**

| Prohibited Act Severity Level | Time Period for Prior Offense (same code) | Frequency of Repeated Offense | Additional Available Sanctions |
|---|---|---|---|
| **Low Severity (400 level)** | **6 months** | **2nd offense** | **1. Disciplinary segregation (up to 1 month).**<br>**2. Forfeit earned SGT or non-vested GCT up to 10% or up to 15 days, whichever is less, and/or terminate or disallow extra good time (EGT) (an EGT sanction may not be suspended).** |
| | | **3rd or more offense** | **Any available Moderate severity level sanction (300 series).** |
| **Moderate Severity (300 level)** | **12 months** | **2nd offense** | **1. Disciplinary segregation (up to 6 months).**<br>**2. Forfeit earned SGT or non-vested GCT up to 37 1/2% or up to 45 days, whichever is less, and/or terminate or disallow EGT (an EGT sanction may not be suspended).** |
| | | **3rd or more offense** | **Any available High severity level sanction (200 series).** |
| **High Severity (200 level)** | **18 months** | **2nd offense** | **1. Disciplinary segregation (up to 12 months).**<br>**2. Forfeit earned SGT or non-vested GCT up to 75% or up to 90 days, whichever is less, and/or terminate or disallow EGT (an EGT sanction may not be suspended).** |
| | | **3rd or more offense** | **Any available Greatest severity level sanction (100 series).** |
| **Greatest Severity (100 level)** | **24 months** | **2nd or more offense** | **Disciplinary Segregation (up to 18 months).** |

# EXHIBIT 3

Furlough Application – Approval and Record

BP-A0291     **FURLOUGH APPLICATION  – APPROVAL AND RECORD** CDFRM

NOV 12                                                        Sequence: 164346

**U.S. DEPARTMENT OF JUSTICE**                  **FEDERAL BUREAU OF PRISONS**

| Inmate's Name<br><br>ESPEJO, LYNN | Register No.<br><br>26304-009 | Institution(address and phone number)<br>OKLAHOMA CITY FTC<br>P.O. BOX 898802<br>OKLAHOMA CITY, OK 73189<br>(405)682-4075 |
|---|---|---|

| **APPLICATION** |
|---|

| Purpose of Visit<br>Non-Transfer Furlough | Sentry Assignment<br>FURL CRI | Date/Time of Departure<br>05/27/2020 10:30 | Date/Time of Return<br>N/A |
|---|---|---|---|

Furlough Address (include name of responsible party if applicable):
9309 MILLERS POINTE CT., SHERWOOD, AR 72120

Telephone No. (Including Area Code): 501-772-6322

| Point of Contact for<br>Emergency<br>OKLAHOMA CITY FTC | Method of Transportation<br>POV | Detainer/Pending<br>Charges<br>___Yes  ✓ No | Verified by (CSM Staff) |
|---|---|---|---|

NOTE TO APPLICANT: You are reminded that should any unusual circumstances arise during the period of your visit, you should notify the institution immediately at telephone: (405)682-4075

| **UNDERSTANDING** |
|---|

I understand that if approved, I am authorized to be only in the area of the destination shown above and at ordinary stopovers or points on a direct route to or from that destination.  I understand that my furlough only extends the limits of my confinement and that I remain in the custody of the Attorney General of the United States.  If I fail to remain within the extended limits of this confinement, it shall be deemed as escape from the custody of the Attorney General, punishable as provided in Section 751 of Title 18, United States Code.  I understand that I may be thoroughly searched upon my return to the institution and that I will be held responsible for any item of contraband or illicit material that is found.  I have read or had read to me, and I understand that the foregoing conditions govern my furlough, and will abide by them.  I have read or had read to me, and I understand the CONDITIONS OF FURLOUGH as set forth on the reverse of this form.

*See Signature Page, BP-A0291IS*              *See Signature Page, BP-A0291IS*

| Witness<br>R. BUIE, UNIT SECRETARY<br>Title | ESPEJO, LYNN<br>Signature of Applicant<br>05/27/2020<br>Date Signed |
|---|---|

| **ADMINISTRATIVE ACTION** |
|---|

| Information Verified by S. GIBSON | Title CASE MANAGER |
|---|---|
| Name Of USPO Notified N/A | Date of Notification / |

Does USPO Have Any Objections to Furlough? (If so, explain) N/A

| **APPROVAL** |
|---|

| Approval for the above named Inmate to leave the Institution on a furlough as outlined is hereby granted in accordance with P.L. 93-209 and the BOP Furlough Program Statement.  The period of furlough is<br>from 05/27/2020 10:30  to 05/28/2020 16:30 | As CMC, I have reviewed the Request for Activity Clearance (404) and the SENTRY CIM Clearance and Separatee Data and I recommend the inmate be approved to participate in this furlough<br>☐ Yes ☑ No Signature of CMC |
|---|---|

Chief Executive Officer (Name & Date) - Approval and signature certifies CIMS Clearance

☑ Approval ☐ Disapproval

Reason(s) for disapproval:                                          5/27/20

| **RECORD** |
|---|

| Date/Time Released: 05/27/2020 10:30 | Date/Time Returned: N/A |
|---|---|

Travel Schedule:
DEPART FTC 5/27/20 @ 10:30 AM VIA POV DRIVEN BY PANCHO, ESPEJO, HUSBAND.
ARRIVE FURLOUGH DST NLT 6:30 PM.
REPORT IMMEDIATELY TO 9309 MILLERS POINT CT., SHERWOOD, AR 72120

Sequence: 164346



Inmate's Photo
**Conditions of Furlough**

(a) An inmate who violates the conditions of a furlough may be considered an escapee under 18 U.S.C. § 4082 or 18 U.S.C. § 751, and may be subject to criminal prosecution and institution disciplinary action.

(b) A furlough will only be approved if an inmate agrees to the following conditions and understands that, while on furlough, he/she:

   (1) Remains in the legal custody of the U.S. Attorney General, in service of a term of imprisonment;

   (2) Is subject to prosecution for escape if he/she fails to return to the institution at the designated time;

   (3) Is subject to institution disciplinary action, arrest, and criminal prosecution for violating any conditions(s) of the furlough;

   (4) May be thoroughly searched and given a urinalysis, breathalyzer, and other comparable test, during the furlough or upon return to the institution, and must pre-authorize the cost of such test(s) if the inmate or family members are paying the other costs of the furlough. The inmate must pre-authorize all testing fee(s) to be withdrawn directly from his/her inmate deposit fund account;

   (5) Must contact the institution (or United States Probation Officer) in the event of arrest, or any other serious difficulty or illness; and

   (6) Must comply with any other special instructions given by the institution.

**Special Instructions:**

You are required to contact the facility upon your arrive at your destination on 5/27/20. You are to report to the City Of Faith RRC in Little Rock, AR No Later than 4:30 pm on 5/28/2020.

**\*\*FAILURE TO MAKE REPORT TO THE RRC, YOU WILL BE PLACED ON ESCAPE STATUS.\*\***

IF YOU HAVE ANY TRAVEL ISSUES CAUSING DELAY - NOTIFY THE INSTITUTION IMMEDIATELY.

YOU ARE REQUIRED TO WEAR THE PPE (PACE MASKS) PROVIDED TO YOU WHILE IN THE COMMUNITY AS DIRECTED BY STATE AND LOCAL GUIDELINES.

It has been determined that consumption of poppy seeds may cause a positive drug test which may result in disciplinary action. As a condition of my participation in community programs, I will not consume any poppy seeds or items containing poppy seeds. (Note: Additional conditions may be added to Special Instructions as warranted).

(c) While on furlough, the inmate must not:

   (1) Violate the laws of any jurisdiction (federal, state, or local);

   (2) Leave the area of his/her furlough without permission, except for traveling to the furlough destination, and returning to the institution;

   (3) Purchase, sell, possess, use, consume, or administer any narcotic drugs, marijuana, alcohol, or intoxicants in any form, or frequent any place where such articles are unlawfully sold, dispensed, used, or given away;

   (4) Use medication that is not prescribed and given to the inmate by the institution medical department or a licensed physician;

   (5) Have any medical/dental/surgical/psychiatric treatment without staff's written permission, unless there is an emergency. Upon return to the institution, the inmate must notify institution staff if he/she received any prescribed medication or treatment in the community for an emergency;

   (6) Possess any firearm or other dangerous weapon;

   (7) Get married, sign any legal papers, contracts, loan applications, or conduct any business without staff's written permission

   (8) Associate with persons having a criminal record or with persons who the inmate knows to be engaged in illegal activities without staff's written permission;

   (9) Drive a motor vehicle without staff's written permission, which can only be obtained if the inmate has proof of a currently valid drivers license and proof of appropriate insurance; or

   (10) Return from furlough with anything the inmate did not take out with him/her (for example, clothing, jewelry, or books).

I have read, or had read to me, and I understand the above conditions concerning my furlough and agree to abide by them. See Signature Page, BP-A0291IS

Inmate's Signature: ESPEJO, LYNN     Reg. No.: 26304-009     Date: 05/27/2020

Signature/Printed Name of Staff Witness: See Signature Page, BP-A0291IS

Record Copy - Inmate Central File; Copy - Control Center, Chief Correctional Services Supervisor, Correctional Systems Department, Inmate Use on Furlough

Sequence: 164346

## Conditions of Furlough - Inmate's Copy

1. I will not violate the laws of any jurisdiction (federal, state, or local). I understand that I am subject to prosecution for escape if I fail to return to the institution at the designated time.

2. I will not leave the area of my furlough without permission, with exception of traveling to the furlough destination, and returning to the institution.

3. While on furlough status, I understand that I remain in the custody of the U.S. Attorney General. I agree to conduct myself in a manner not to bring discredit to myself or to the Bureau of Prisons. I understand that I am subject to arrest and/or institution disciplinary action for violating any condition(s) of my furlough.

4. I will not purchase, possess, use, consume, or administer any narcotic drugs, marijuana, intoxicants in any form, nor will I frequent any place where such articles are unlawfully sold, dispensed, used, or given away.

5. I will not use any medication that is not prescribed and given to me by the institution medical department for use or prescribed by a licensed physician while I am on furlough. I will not have any medical/dental/surgical/psychiatric treatment without the written permission of staff, except where an emergency arises and necessitates such treatment. I will notify institution staff of any prescribed medication or treatment received in the community upon my return to the institution.

6. I will not have in my possession any firearm or dangerous weapon.

7. I will not get married, sign any legal papers, contracts, loan applications, or conduct any business without the written permission of staff.

8. I will not associate with persons having a criminal record or with those persons who I know are engaged in illegal occupations.

9. I agree to contact the institution (or United States Probation Officer) in the event of arrest, or any other serious difficulty or illness.

10. I will not drive a motor vehicle without the written permission of staff. I understand that I must have a valid driver's license and sufficient insurance to meet any applicable financial responsibility laws.

11. I will not return from furlough with any article I did not take out with me (for example, clothing, jewelry, or books). I understand that I may be thoroughly searched and given a urinalysis and/or breathalyzer and/or other comparable tests upon my return to the institution. I understand that I will be held accountable for the results of the search and test(s).

12. It has been determined that consumption of poppy seeds may cause a positive drug test which may result in disciplinary action. As a condition of my participation in community programs, I will not consume any poppy seeds or items containing poppy seeds.

13. Special Instructions:

    You are required to contact the facility upon your arrive at your destination on 5/27/20. You are to report to the City Of Faith RRC in Little Rock, AR No Later than 4:30 pm on 5/28/2020.

    **FAILURE TO MAKE REPORT TO THE RRC, YOU WILL BE PLACED ON ESCAPE STATUS.**

    IF YOU HAVE ANY TRAVEL ISSUES CAUSING DELAY - NOTIFY THE INSTITUTION IMMEDIATELY.

    YOU ARE REQUIRED TO WEAR THE PPE (FACE MASKS) PROVIDED TO YOU WHILE IN THE COMMUNITY AS DIRECTED BY STATE AND LOCAL GUIDELINES.

**FILE IN SECTION 5 UNLESS APPROPRIATE FOR PRIVACY FOLDER**          **SECTION 5**

Sequence: 164346

Spanish: **Conditions of Furlough**   Template Copy

**This is a translation of an English-language document provided as a courtesy to those not fluent in English. If differences or any misunderstandings occur, the document of record shall be the related English-language document.**

**Esta es una traducción de un documento escrito en inglés, distribuido como una cortesía a las personas que no pueden leer inglés. Si resulta alguna diferencia o algún malentendido con esta traducción, el único documento reconocido será la versión en inglés.**

### Condiciones de Permiso de Salida Temporera – Copia del Reo

1.   No violaré leyes de ninguna jurisdicción (federal, estatal, o local). Entiendo que estoy sujeto al juicio por fuga si no vuelvo a la institución en la fecha designada.

2.   No dejaré el área designada por mi permiso de salida temporera sin autorizaci ón, con excepción al viaje hacia el area designada por el permiso de salida temporera, y el regreso a la institución.

3.   Mientras esté en estado de permiso de salida temporera, entiendo que permanezco en la custodia del General de Fiscal de EE.UU.. Acuerdo a conducirme en una manera que no desacredite a mi persona ni a la Agencia Federal de Prisiones. Entiendo que estoy sujeto a arresto y/o accion disciplinaria de la institución por violación de cualquier condición de mi permiso de salida temporera.

4.   No compraré, poseeré, usaré, consumiré, o administraré ninguna droga narcótica, marihuana, estupefacientes en cualquier forma, ni tampoco frecuentaré cualquier lugar donde tales artículos son ilegalmente vendidos, dispensados, usados, o regalados.

5.   No usaré ninguna medicación que no sea recetada y dada por el departamento médico de la institución para mi uso o recetada por un médico autorizado mientras estoy bajo permiso de salida temporera. No tendré ningún tratamiento médico/dental/quirúrgico/psiquiátrico sin el permiso escrito del personal, excepto en caso de emergencia que requiera tal tratamiento. Notificaré al personal de la institución sobre cualquier medicación recetada o tratamiento recibido en la comunidad al regresar a la institución.

6.   No tendré en mi posesión ninguna arma de fuego o arma peligrosa.

7.   No contraeré matrimonio, ni firmaré cualquier papel legal, contratos, solicitudes de préstamo o conduciré cualquier negocio sin el permiso escrito del personal.

8.   No me asociaré con personas con antecedentes criminales o con aquellas personas quienes conozco estar envueltos en ocupaciones ilegales.

9.   Acuerdo ponerme en contacto con la institución (u Oficial de la Oficina Federal de Libertad Supervisada) en caso de arresto, o cualquier otra dificultad seria o enfermedad.

10.   No conduciré un automóvil sin el permiso escrito del personal. Entiendo que debo tener una licencia de conducir válida y suficiente seguro automovilístico para satisfacer cualquier ley de responsabilidad financiera aplicable.

11.   No volveré de salida temporera con ningún articulo con el cual no haya salido (por ejemplo, ropa), joyas, o libros). Entiendo que puedo ser registrado a fondo y administrado un análisis de orina y/o alcohómetro y/u otras pruebas comparables al regresar a la institución. Entiendo que seré responsable por los resultados del examen y prueba(s).

12.   Ha sido determinado que el consumo de semillas de amapola puede causar un resultado positivo en una prueba de drogas , lo cual puede resultar en acción disciplinaria. Como condición de mi participación en programas comunitarios, no consumiré ninguna semilla de amapola o artículos que contengan semillas de amapola.

13.   Instrucciones Especiales:


Yo he leído, o se me leyeron, y entiendo las condiciones anteriormente dichas acerca de mi permiso de salida temporera y acuerdo a cumplir con ellas.

Firma del Reo:                              Número de Registro:              Fecha:

Firma / Nombre Impreso de Testigo del Personal:


FILE IN SECTION 5 UNLESS APPROPRIATE FOR PRIVACY FOLDER      **SECTION 5**

BP-A0291IS      **FURLOUGH APPLICATION - Approval and Record**     Sequence:156046
**Inmate Signature Page**

**U.S. DEPARTMENT OF JUSTICE**                           **FEDERAL BUREAU OF PRISONS**

I understand that if approved, I am authorized to be only in the area of the destination shown on the Furlough Application and at ordinary stopovers or points on a direct route to or from that destination. I understand that my furlough only extends the limits of my confinement and that I remain in the custody of the Attorney General of the United States. If I fail to remain within the extended limits of this confinement, it shall be deemed as escape from custody of the Attorney General, punishable as provided in Section 751 of Title 18, United States Code. I understand that I may be thoroughly searched upon my return to the institution and that I will be held responsible for any item of contraband or illicit material that is found. I have read or had read to me, and I understand that the foregoing conditions govern my furlough, and will abide by them. I have read or had read to me, and I understand the CONDITIONS OF FURLOUGH.

I understand and agree to abide by all conditions concerning my furlough.


**Inmate:** ESPEJO, LYNN
**Register No:** 26304-009


**Date**


**Witness**


**Date**

BP-A0291
NOV 12

**FURLOUGH APPLICATION – APPROVAL AND RECORD** CDFRM

Sequence: 161657

U.S. DEPARTMENT OF JUSTICE

FEDERAL BUREAU OF PRISONS

| Inmate's Name<br><br>ESPEJO, LYNN | Register No.<br><br>26304-009 | Institution(address and phone number)<br>OKLAHOMA CITY FTC<br>P.O. BOX 898802<br>OKLAHOMA CITY, OK 73189<br>(405)682-4075 |
|---|---|---|

## APPLICATION

| Purpose of Visit<br>RRC HOME CONFINEMENT PLACEMENT | Sentry Assignment<br>FURL TRANS | Date/Time of Departure<br>05/28/2020 10:00 | Date/Time of Return<br>N/A |
|---|---|---|---|

Furlough Address (include name of responsible party if applicable):
CITY FAITH, LITTLE ROCK, AR, 1401 SOUTH GARFIELD DRIVE, LITTLE ROCK, AR. 72204

Telephone No. (Including Area Code): 501-615-1090

| Point of Contact for Emergency<br>OKLAHOMA CITY FTC | Method of Transportation<br>POV | Detainer/Pending Charges<br>___Yes   ✓ No | Verified by (CSM Staff)<br>Russell, Christy |
|---|---|---|---|

NOTE TO APPLICANT: You are reminded that should any unusual circumstances arise during the period of your visit, you should notify the institution immediately at telephone: (405)682-4075

## UNDERSTANDING

I understand that if approved, I am authorized to be only in the area of the destination shown above and at ordinary stopovers or points on a direct route to or from that destination.   I understand that my furlough only extends the limits of my confinement and that I remain in the custody of the Attorney General of the United States.   If I fail to remain within the extended limits of this confinement, it shall be deemed as escape from the custody of the Attorney General, punishable as provided in Section 751 of Title 18, United States Code.   I understand that I may be thoroughly searched upon my return to the institution and that I will be held responsible for any item of contraband or illicit material that is found.   I have read or had read to me, and I understand that the foregoing conditions govern my furlough, and will abide by them.   I have read or had read to me, and I understand the CONDITIONS OF FURLOUGH as set forth on the reverse of this form.

See Signature Page, BP-A02911S                                    See Signature Page, BP-A02911S

                                                                                   ESPEJO, LYNN

| Witness<br>R. BUIE, UNIT SECRETARY | Signature of Applicant<br>05/15/2020 |
|---|---|
| Title | Date Signed |

## ADMINISTRATIVE ACTION

| Information Verified by M. BOYKINS | Title CASE MANAGER |
|---|---|
| Name Of USPO Notified N/A | Date of Notification / |

Does USPO Have Any Objections to Furlough? (If so, explain) N/A

## APPROVAL

| Approval for the above named Inmate to leave the Institution on a furlough as outlined is hereby granted in accordance with P.L. 93-209 and the BOP Furlough Program Statement.  The period of furlough is<br>from 05/28/2020 10:00        to 05/28/2020 16:30 | As CMC, I have reviewed the Request for Activity Clearance (404) and the SENTRY CIM Clearance and Separatee Data and I recommend the inmate be approved to participate in this furlough.<br>✓ Yes ☐ No Signature of CMC Karner, Chase |
|---|---|

Chief Executive Officer (Name & Date) - Approval and signature certifies CIMS Clearance
☑Approval ☐Disapproval  Young, S., Warden, 05/21/2020
Reason(s) for disapproval:

## RECORD

| Date/Time Released: 05/28/2020 10:00 | Date/Time Returned: N/A |
|---|---|

Travel Schedule:
DEPART FTC 5/28/20 @ 10:00 AM VIA POV DRIVEN BY PANCHO ESPEJO, HUSBAND.
ARRIVE RRC-HC NLT 4:30 PM.

Sequence: 161657



**Inmate's Photo**
**Conditions of Furlough**

(a) An inmate who violates the conditions of a furlough may be considered an escapee under 18 U.S.C. § 4082 or 18 U.S.C. § 751, and may be subject to criminal prosecution and institution disciplinary action.

(b) A furlough will only be approved if an inmate agrees to the following conditions and understands that, while on furlough, he/she:

   (1) Remains in the legal custody of the U.S. Attorney General, in service of a term of imprisonment;

   (2) Is subject to prosecution for escape if he/she fails to return to the institution at the designated time;

   (3) Is subject to institution disciplinary action, arrest, and criminal prosecution for violating any conditions(s) of the furlough;

   (4) May be thoroughly searched and given a urinalysis, breathalyzer, and other comparable test, during the furlough or upon return to the institution, and must pre-authorize the cost of such test(s) if the inmate or family members are paying the other costs of the furlough.  The inmate must pre-authorize all testing fee(s) to be withdrawn directly from his/her inmate deposit fund account;

   (5) Must contact the institution (or United States Probation Officer) in the event of arrest, or any other serious difficulty or illness; and

   (6) Must comply with any other special instructions given by the institution.

   **Special Instructions:**

   It has been determined that consumption of poppy seeds may cause a positive drug test which may result in disciplinary action.  As a condition of my participation in community programs, I will not consume any poppy seeds or items containing poppy seeds.  (Note: Additional conditions may be added to Special Instructions as warranted).

(c) While on furlough, the inmate must not:

   (1) Violate the laws of any jurisdiction (federal, state, or local);

   (2) Leave the area of his/her furlough without permission, except for traveling to the furlough destination, and returning to the institution;

   (3) Purchase, sell, possess, use, consume, or administer any narcotic drugs, marijuana, alcohol, or intoxicants in any form, or frequent any place where such articles are unlawfully sold, dispensed, used, or given away;

   (4) Use medication that is not prescribed and given to the inmate by the institution medical department or a licensed physician;

   (5) Have any medical/dental/surgical/psychiatric treatment without staff's written permission, unless there is an emergency.  Upon return to the institution, the inmate must notify institution staff if he/she received any prescribed medication or treatment in the community for an emergency;

   (6) Possess any firearm or other dangerous weapon;

   (7) Get married, sign any legal papers, contracts, loan applications, or conduct any business without staff's written permission

   (8) Associate with persons having a criminal record or with persons who the inmate knows to be engaged in illegal activities without staff's written permission;

   (9) Drive a motor vehicle without staff's written permission, which can only be obtained if the inmate has proof of a currently valid drivers license and proof of appropriate insurance; or

   (10) Return from furlough with anything the inmate did not take out with him/her (for example, clothing, jewelry, or books).

I have read, or had read to me, and I understand the above conditions concerning my furlough and agree to abide by them.

Inmate's Signature: See Signature Page BP-A0291IS
ESPEJO, LYNN

Reg. No.: 26304-009                Date: 05/15/2020

Signature/Printed Name of Staff Witness:   See Signature Page, BP-A0291IS

Record Copy - Inmate Central File;  Copy - Control Center, Chief Correctional Services Supervisor, Correctional Systems Department, Inmate Use on Furlough

Sequence: 161657

## Conditions of Furlough - Inmate's Copy

1.  I will not violate the laws of any jurisdiction (federal, state, or local). I understand that I am subject to prosecution for escape if I fail to return to the institution at the designated time.

2.  I will not leave the area of my furlough without permission, with exception of traveling to the furlough destination, and returning to the institution.

3.  While on furlough status, I understand that I remain in the custody of the U.S. Attorney General. I agree to conduct myself in a manner not to bring discredit to myself or to the Bureau of Prisons. I understand that I am subject to arrest and/or institution disciplinary action for violating any condition(s) of my furlough.

4.  I will not purchase, possess, use, consume, or administer any narcotic drugs, marijuana, intoxicants in any form, nor will I frequent any place where such articles are unlawfully sold, dispensed, used, or given away.

5.  I will not use any medication that is not prescribed and given to me by the institution medical department for use or prescribed by a licensed physician while I am on furlough. I will not have any medical/dental/surgical/psychiatric treatment without the written permission of staff, except where an emergency arises and necessitates such treatment. I will notify institution staff of any prescribed medication or treatment received in the community upon my return to the institution.

6.  I will not have in my possession any firearm or dangerous weapon.

7.  I will not get married, sign any legal papers, contracts, loan applications, or conduct any business without the written permission of staff.

8.  I will not associate with persons having a criminal record or with those persons who I know are engaged in illegal occupations.

9.  I agree to contact the institution (or United States Probation Officer) in the event of arrest, or any other serious difficulty or illness.

10. I will not drive a motor vehicle without the written permission of staff. I understand that I must have a valid driver's license and sufficient insurance to meet any applicable financial responsibility laws.

11. I will not return from furlough with any article I did not take out with me (for example, clothing, jewelry, or books). I understand that I may be thoroughly searched and given a urinalysis and/or breathalyzer and/or other comparable tests upon my return to the institution. I understand that I will be held accountable for the results of the search and test(s).

12. It has been determined that consumption of poppy seeds may cause a positive drug test which may result in disciplinary action. As a condition of my participation in community programs, I will not consume any poppy seeds or items containing poppy seeds.

13. Special Instructions:

PDF                          Prescribed by PS 5280                    Replaces BP-291 of SEPT 1999

**FILE IN SECTION 5 UNLESS APPROPRIATE FOR PRIVACY FOLDER**        **SECTION 5**

Spanish:  **Conditions of Furlough**   Template Copy

Sequence: 161657

**This is a translation of an English-language document provided as a courtesy to those not fluent in English. If differences or any misunderstandings occur, the document of record shall be the related English-language document.**

**Esta es una traducción de un documento escrito en inglés, distribuido como una cortesía a las personas que no pueden leer inglés. Si resulta alguna diferencia o algún malentendido con esta traducción, el único documento reconocido será la versión en inglés.**

### Condiciones de Permiso de Salida Temporera - Copia del Reo

1.     No violaré leyes de ninguna jurisdicción (federal, estatal, o local). Entiendo que estoy sujeto al juicio por fuga si no vuelvo a la institución en la fecha designada.

2.     No dejaré el área designada por mi permiso de salida temporera sin autorización, con excepción al viaje hacia el area designada por el permiso de salida temporera, y el regreso a la institución.

3.     Mientras esté en estado de permiso de salida temporera, entiendo que permanezco en la custodia del General de Fiscal de EE.UU. Acuerdo a conducirme en una manera que no desacredite a mi persona ni a la Agencia Federal de Prisiones. Entiendo que estoy sujeto a arresto y/o accion disciplinaria de la institución por violación de cualquier condición de mi permiso de salida temporera.

4.     No compraré, poseeré, usaré, consumiré, o administraré ninguna droga narcótica, marihuana, estupefacientes en cualquier forma, ni tampoco frecuentaré cualquier lugar donde tales articulos son ilegalmente vendidos, dispensados, usados, o regalados.

5.     No usaré ninguna medicación que no sea recetada y dada por el departamento médico de la institución para mi uso o recetada por un médico autorizado mientras estoy bajo permiso de salida temporera. No tendré ningún tratamiento médico/dental/quirúrgico/psiquiátrico sin el permiso escrito del personal, excepto en caso de emergencia que requiera tal tratamiento. Notificaré al personal de la institución sobre cualquier medicación recetada o tratamiento recibido en la comunidad al regresar a la institución.

6.     No tendré en mi posesión ninguna arma de fuego o arma peligrosa.

7.     No contraeré matrimonio, ni firmaré cualquier papel legal, contratos, solicitudes de préstamo o conduciré cualquier negocio sin el permiso escrito del personal.

8.     No me asociaré con personas con antecedentes criminales o con aquellas personas quienes conozco estar envueltos en ocupaciones ilegales.

9.     Acuerdo ponerme en contacto con la institución (u Oficial de la Oficina Federal de Libertad Supervisada) en caso de arresto, o cualquier otra dificultad seria o enfermedad.

10.    No conduciré un automóvil sin el permiso escrito del personal. Entiendo que debo tener una licencia de conducir válida y suficiente seguro automovilístico para satisfacer cualquier ley de responsabilidad financiera aplicable.

11.    No volveré de salida temporera con ningún artículo con el cual no haya salido (por ejemplo, ropa), joyas, o libros). Entiendo que puedo ser registrado a fondo y administrado un análisis de orina y/o alcohómetro y/u otras pruebas comparables al regresar a la institución. Entiendo que seré responsable por los resultados del registro y prueba(s).

12.    Ha sido determinado que el consumo de semillas de amapola puede causar un resultado positivo en una prueba de drogas , lo cual puede resultar en acción disciplinaria. Como condición de mi participación en programas comunitarios, no consumiré ninguna semilla de amapola o artículos que contengan semillas de amapola.

13.    Instrucciones Especiales:



Yo he leído, o se me leyeron, y entiendo las condiciones anteriormente dichas acerca de mi permiso de salida temporera y acuerdo a cumplir con ellas.

Firma del Reo:                       Número de Registro:             Fecha:

Firma / Nombre Impreso de Testigo del Personal:

**FILE IN SECTION 5 UNLESS APPROPRIATE FOR PRIVACY FOLDER**          **SECTION 5**

BP-A0291IS    **FURLOUGH APPLICATION - Approval and Record**    Sequence:156046
**Inmate Signature Page**

**U.S. DEPARTMENT OF JUSTICE**                    **FEDERAL BUREAU OF PRISONS**

I understand that if approved, I am authorized to be only in the area of the
destination shown on the Furlough Application and at ordinary stopovers or
points on a direct route to or from that destination.  I understand that my
furlough only extends the limits of my confinement and that I remain in the
custody of the Attorney General of the United States.  If I fail to remain
within the extended limits of this confinement, it shall be deemed as escape
from custody of the Attorney General, punishable as provided in Section 751
of Title 18, United States Code.  I understand that I may be thoroughly
searched upon my return to the institutution and that I will be held
responsible for any item of contraband or illicit material that is found.  I
have read or had read to me, and I understand that the foregoing conditions
govern my furlough, and will abide by them.  I have read or had read to me,
and I understand the CONDITIONS OF FURLOUGH.

I understand and agree to abide by all conditions concerning my furlough.


_____
Inmate: ESPEJO, LYNN
Register No: 26304-009

_____
Date

_____
Witness

_____
Date

# EXHIBIT 4

Federal Resident

Handbook



*Inspiring Commitment*

# FEDERAL
# Resident Handbook

## Basic Resident Policies and Procedures

**www.cityoffaith.org**
*City of Faith Residential Re-Entry Center*

Revised 04/04/19

## CITY OF FAITH
## RESIDENTIAL REENTRY CENTER
## RULES AND REGULATIONS

City of Faith's purpose is to assist you in successfully reentering society while maintaining the security and safety of the surrounding community. Of course, for you to ultimately return to your family and community in a timely manner you must first successfully complete your stay here.

One area of responsibility you must satisfy to successfully complete your stay here is strict adherence to every rule and regulation enumerated below. You will be held accountable for any and all rule infractions.

1. Residents are required to be courteous, cooperative, and congenial when interfacing with staff personnel, residents, and visitors.
2. Residents are not allowed in "UNAUTHORIZED AREAS" unless accompanied, or given permission by appropriate staff personnel.
3. Residents are not allowed to engage in inappropriate and/or disruptive behavior.
4. Residents are required to submit to random searches of their person, property, and personal possessions without prior notice and without debate.
5. Smoking is simply not allowed anywhere in City of Faith facilities, vehicles and anywhere on City of Faith grounds in Little Rock, AR and in the Federal RRC's in Monroe, LA.
6. Residents are not allowed to possess pornographic or other similar material.
7. Residents are expected to be prompt when attending scheduled meetings, interviews, and appointments.
8. Residents are expected to maintain their personal hygiene.
9. Residents are expected to keep their apparel clean and in good repair. Clothing which are provocation and/or representative of gang affiliation is strictly prohibited.
10. Residents are required to be fully dressed when outside of their personal areas.
11. Residents are expected to not abuse their phone privilege and to be respectful of another resident's need to use the phone
12. Resident's mail may be subjected to monitoring.
13. Residents are not allowed to possess any narcotic medication and/or psychotropic drugs. These medications must be turned over to resident security at the front desk, who will be responsible for its dispersal.
14. Residents are required to maintain gainful employment, perform satisfactorily, abide by the rules of the workplace, and to return immediately to City of Faith upon completion of their day's work.
15. A resident shall not enter into any contract without the prior approval of the Director and the Federal Bureau of Prisons.
16. Requests for driving privileges must be submitted to your Federal Case Manager for approval from the Facility Director and/or Federal Probation Officer.
17. Residents may use radios, televisions, and the like in their respective living quarters as long as they are not played in a loud and obtrusive manner, which could result in the loss of such a privilege.
18. A resident who is found not to be in his bed after lights out, pursuant to a random bed check, will be considered on escape status unless such resident is authorized to be elsewhere.

19. Bed Time is 10:30 P. M. Sunday through Thursday, and 12:00 A. M. Friday and Saturday. Wake up time is 5:00 A. M. Monday through Friday, and 8:30 A. M. Saturday and Sunday mornings.

20. Residents are expected to maintain their personal living area in an appropriate manner. Beds are required to be made **military style** when residents are not sleeping. Personal effects and clothing, including footwear, are to be kept in resident's locker at all times. Residents are expected to cooperate with each other to ensure overall cleanliness of their respective living quarters.

21. Consumption of food containing poppy seeds may result in a positive test result for unauthorized drug use; therefore its consumption is strictly prohibited.

22. Residents are prohibited from participating in medical, pharmaceutical or cosmetic experiments.

LISTED AND DESCRIBED IN THE REMAINING PAGES OF THIS HANDBOOK ARE AREAS OF INTEREST TO ASSIST YOU IN MAKING YOUR STAY HERE AT CITY OF FAITH A PRODUCTIVE, PROFITABLE AND POSITIVE EXPERIENCE. THESE AREAS HAVE BEEN ARRANGED IN ALPHABETICAL ORDER FOR YOUR CONVENIENCE. SHOULD YOU HAVE ANY QUESTIONS REGARDING ANYTHING CONTAINED IN THIS HANDBOOK, FEEL FREE TO DISCUSS SUCH WITH YOUR CASE MANAGER.

## PRISON RAPE ELIMINATION ACT (PREA)

City of Faith has zero tolerance concerning all forms of sexual abuse/misconduct. Resident on Resident, Staff on Resident and Resident on Staff sexual assault, sexual abuse, and/or sexual relationships will not be tolerated. Residents will be free from fear of sexual assault and if a report of sexual assault is made, it will be investigated thoroughly and with respect to the resident's safety, dignity, and privacy, without fear of retaliation.

Resident on Resident, Staff on Resident or Resident on Staff sexual abuse or assault is defined as one or more residents engaging in, or attempting to engage in a sexual act with one another or the use of threats, intimidating, inappropriate touching, or other actions and/or communications by one or more persons aimed at coercing and/or pressuring another to engage in a sexual act.

In order to ensure your safety, all residents are encouraged to report instances of sexual assault to a staff member immediately. Residents may also report a sexual assault/abuse through a grievance form or contacting the agency PREA coordinator. All allegations will be taken seriously and thoroughly investigated and staff shall take the necessary steps to separate the victim from the accused. Staff will make assistance available for the resident to receive a medical evaluation and care as well as needed mental health support. . A victim advocate will be provided to the victim by contacting Wellspring at (318) 323-1505 or 1-800-716-7233.

Appropriate steps will be made to protect the resident including, but not limited to: transferring to another facility where they can be housed more appropriately (i.e. single room) moved to another room in the facility closer to the staff office, increased contact with case management to provide ongoing support, etc.

Resident victims of sexual abuse shall receive timely, unimpeded access to emergency medical treatment and crisis intervention services, the nature and scope of which are determined by medical and mental health practitioners according to their professional judgment. Resident victims of sexual abuse while incarcerated shall be offered timely information about and timely

access to emergency contraception and sexually transmitted infections prophylaxis, in accordance with professionally accepted standards of care, where medically appropriate.

Treatment services shall be provided to the victim without financial cost and regardless of whether the victim names the abuser or cooperates with any investigation arising out of the incident.

City of Faith shall offer medical and mental health evaluations and, as appropriate, treatment to all residents who have been victimized by sexual abuse in our facility. The evaluation and treatment of such victims shall include, as appropriate, follow-up services, treatment plans, and, when necessary, referrals for continued care following their transfer to, or placement in, other facilities, or their release from custody.

Victims will be provided with medical and mental health services consistent with the community level of care. Resident victims of sexually abusive vaginal penetration while incarcerated shall be offered pregnancy tests. If pregnancy results from conduct specified in paragraph (d) of this section, such victims shall receive timely and comprehensive information about and timely access to all lawful pregnancy related medical services.

Resident victims of sexual abuse while incarcerated shall be offered tests for sexually transmitted infections as medically appropriate.

## AA/NA OBLIGATIONS
Residents who are mandated to attend AA/NA meetings as a condition of their judgement and commitment order or BOP referral are required to attend all such meetings. Unexcused absences will be reviewed by the Federal Case Manager, and appropriate action will be taken.

## ARREST
Any resident who is arrested will be returned to the custody of the Bureau of Prisons (BOP) and charged with technical escape. You will also be considered a program failure.

## AUTHORITY & CONTROL OVER ANOTHER RESIDENT
It is the policy of City of Faith that no resident will be in a position of authority or control over any other resident, subcontract employee or staff member while at the facility. You will avoid any actions or statements that might give the appearance of authority or control over other residents. Authority and control rest solely with the City of Faith director or other authorized City of Faith staff.

## BED CHECKS/ HEADCOUNTS
Residents are required to be on the premise when they are not at work or signed out for an approved activity. To ensure that residents are in compliance, bed checks and headcounts are conducted randomly and frequently. Any resident who cannot be readily accounted for may be considered on escape status.

## CASE MANAGER/EMPLOYMENT PLACEMENT SPECIALIST

Each resident will have meetings with the Employment Placement Specialist and will be assigned a Case Manager who will be available for consultation and direction. Both the Employment Placement Specialist and Case Manager will aid the resident in planning for release; provide direction in analyzing vocational training needs, selection of work assignments, establishment of goals, and assist in obtaining treatment and education programs.

## CELL PHONES

- The use of Cell Phones in City of Faith is a privilege and not a right. Residents that are granted the privilege of a cell phone, must remain current with their subsistence and be free from write-ups. Since use of a cell phone is a privilege, they are subject to disciplinary sanctions, including temporary or permanent loss of the privilege.
- After completing orientation, residents are permitted possession of one cell phone that must be registered with facility staff.
- Cell Phones are subject to monthly search protocols. In order to obtain a cell phone, the resident must provide staff full access to the phone on demand. No lockouts or passwords will be allowed on the phone. The resident must submit a copy of their monthly bill and/or provide online access to the account and calling records to their Case Manger to monitor usage.
- At no time will the cell phone number be blocked.
- Residents should not use cell phones for the purpose of accountability. All accountability phone calls should be made using a land line.
- Residents are not permitted to text or call former COF residents or inmates.
- Absolutely no photos will be allowed on the phone and no photos should be sent via text.
- Residents can use their cell phone to call the facility in the event of an emergency, such as a flat tire, accident or if they are stuck in traffic congestion which will make them late. Traffic congestion means that there are unusual circumstances that is holding up traffic and which will be verified. Running late is not considered an emergency.
- Residents are not to use their cell phones after curfew hours. Use of the phone after curfew will result in loss of cell phone privileges.
- RESIDENTS ARE NOT ALLOWED TO CALL OR TEXT OTHER RESIDENTS OR ANY INMATES AT A CORRECTIONAL INSTITUTION.
- Cell Phones are required to be on vibrate at all times when on facility grounds.
- Cell Phones are prohibited in group meetings, counseling, resident meetings or any other center related activity where the objective is programming.
- Residents are prohibited from allowing other residents use of their cell phone.
- When signing in or out of the center, or during any communications with staff, the resident is not to be on the cell phone. Therefore, all phone calls must stop prior to entering the facility to sign in, or before signing out.
- Cell phones are prohibited in staff offices.
- Residents are prohibited from talking on cell phones while driving, unless they have a hands free device.
- Residents must answer their cell phone if a call from City of Faith is received.
- City of Faith accepts no responsibility or liability for any charges on the cell phone, or liability for loss or damage.
- Possession of an unauthorized cell phone, will result in loss of cell phone privileges and will be confiscated as contraband.
- Misuse by the resident of the cell phone will result in loss of cell phone privileges.
- Phone chargers will be confiscated of left plugged into the wall with no phone attached.

Violations of this policy will result in the loss of cell phone privileges. The possession/use of cell phones is provided for the sole benefit of the resident and their family. It is not to interfere, disrupt or circumvent facility operations, rules, programs or quality of life.

## CLOTHING
Residents are responsible for their own clothing. At no time should any resident's pants be sagging while in the facility. Residents are not allowed to wear two (2) pairs of pants at one time.

## APPROVED INITIAL CLOTHING LIST
1. ONE HAT – BASEBALL TYPE
2. THREE WORK SHIRTS OR BLOUSES; LONG OR SHORT SLEEVE
3. THREE PAIR OF WORK PANTS (MUST FIT PROPERLY WITH NO HOLES)
4. FOUR PAIR OF SHOES – SHOWER, WORK, CASUAL, & DRESS SHOES
5. SIX TEE SHIRTS
6. SIX PAIR OF UNDERWEAR
7. SIX PAIR OF SOCKS
8. TWO BELTS
9. ONE HEAVY JACKET (WINTER ONLY) & ONE LIGHT JACKET
10. ONE PAIR OF GLOVES
11. TWO PAIR OF SHORTS – SUMMER ONLY
12. TWO LEISURE SHIRTS (HOODS ARE ALLOWED BUT NOT WORN ON THE HEAD IN THE FACILITY)
13. TWO PAIR OF LEISURE PANTS (MUST FIT PROPERLY WITH NO HOLES)

UNLESS APPROVED BY THE DIRECTOR, ANY CLOTHES OTHER THAN THE ONES LISTED ABOVE WILL BE CONFISCATED AS CONTRABAND AND DISPOSED OF.

CLOTHING WILL NOT HAVE ANY CARTOON DRAWINGS, LARGE BRAND NAMES, OR OTHER WRITING OR DRAWINGS ON THEM. ALL CLOTHING WILL BE APPROVED BY THE DIRECTOR.

## CORPORAL PUNISHMENT
The use of corporal or unusual punishment, humiliation, mental abuse, punitive interference or sexual harassment at City of Faith is strictly prohibited.

## CITY OF FAITH PROGRAM COMPONENTS
The City of Faith Community Corrections Center program is divided into three types of components:

## Community Corrections Component (CCC)
Residents in this component are confined to the facility except for job searches, employment, church, and required aftercare meetings. Residents in this component are not allowed social passes or weekend passes. In order for a resident in this component to go anywhere other than work, or aftercare meeting, an approved request signed by either the resident's Case Manager or the Facility Director is required. Probation cases remain on CCC for the entire length of their stay at the City of Faith, whereas those residents here as institutional transfers remain on CCC for the first 3 days after their arrival until they have completed the orientation process. The CCC

component is also used as a sanction for violating certain rules and regulations of the program.

**Pre-Release Status**
Being in the pre-release status normally allows the resident a little more freedom, such as social passes (Wal-Mart, haircut, and church), weekend passes, etc. Residents in the pre-release component are expected to be programing at City of Faith. This means all personal aftercare obligations that were established by you and your Federal Case Manager in the individual program plan. These obligations include opening a savings account, attending drug counseling, accountability, actively seeking employment, etc.

**Home Confinement Component**
The home confinement component is for those residents on pre-release status. These residents are in the custody of the BOP and City of Faith. It is the responsibility of the City of Faith staff to maintain proper documentation of the whereabouts of residents on home confinement at all times. This means documenting all of the resident's movements. This component is similar to house arrest; the resident must make calls to City of Faith to inform the staff of their pre-approved movements. Failure of a resident to report all movements will result in the termination of the resident's home confinement, and possibly the City of Faith's program overall. Failure to document any of the resident's movements could result in the same. **Home Confinement is a privilege, not a right.** Home Confinement residents do not pay subsistence but are still required to submit their check stubs to the Program Manager within 48 hours of receiving the check.

**CURFEW**
City of Faith observes national curfew (9pm-6am). During these hours residents are not allowed outside, in common areas, or out of the building unless given permission from their Federal Case Manager or the Facility Director. Residents will be allowed to leave their dormitory areas starting at 5am for chores. Residents leaving for work will be allowed to leave earlier as needed. All residents not completing chores will be allowed to leave their dormitory areas starting at 6am.

**DECORATIONS**
Residents are not permitted to decorate their closets, lockers, or rooms with personal possessions, such as pictures and /or posters.

**DENTAL CARE**
City of Faith allows residents to seek dental care from any licensed dentist in the area. Any fees incurred are the responsibility of the resident. Naphcare is an option BOP offers to residents to pay for required or emergency dental care. If a resident feels they would be a candidate for Naphcare, they should notify their case manager to apply.

**DISCRIMINATION**
It is the policy of City of Faith to prohibit discrimination of any sort based on a resident's race, religion, national origin, sex, disability, or political views.

# DISCIPLINE
City of Faith follows Federal Bureau of Prisons Program Statement 5270.09, Inmate Discipline Program an all matters that concern inmate discipline.

**INFORMAL DISCIPLINE RESOLUTION -** City of Faith utilizes an informal resolution system to resolve minor rule infractions. City of Faith believes that this form of resolution should take place first and foremost, unless the rule violation dictates that formal resolution must occur. City of Faith will expunge the incident report from the resident's file if informal resolution is accomplished. Staff may suspend disciplinary proceedings for a period not to exceed two calendar weeks while informal resolution is undertaken and accomplished. If informal resolution is unsuccessful, the disciplinary proceedings may be reinstated at the same stage they were suspended.

**CONTRABAND VIOLATIONS**
A resident caught violating the contraband list will receive the following:
1st offense: Confiscate contraband and loss of privileges
2nd offense: Confiscate contraband, Loss of social passes and/or visitation for 2 weeks from time of sanction
3rd offense: Confiscate contraband Formal disciplinary procedures.

**HOUSE RULES VIOLATIONS (NOT TO INCLUDE SMOKING)**
A resident caught violating any of the house rules will receive the following:
1st offense: Verbal Warning
2nd offense: Loss of social passes and/or visitation for 2 weeks from time of sanction.
3rd offense: Formal disciplinary procedures.

**HOUSE RULES VIOLATIONS (SMOKING)**
A resident caught violating any of the house rules will receive the following:
1st offense: Restriction to quarters.
2nd offense: Formal incident report (handled by in-house CDC), loss of privileges for 30 days (not to include work, looking for work, or treatment), loss of visitation for 30 days, & loss of confiscated item.
3rd offense: Formal incident report, recommend loss of good time and/or recommend transfer to a more secure institution

If a resident refuses to hand over any contraband item that has been identified by staff, the resident will be written up for refusal and interfering with a staff member's duties. This will result in termination from the City of Faith program and transfer to a more secure facility. USPO cases will be considered a program failure.

**IN-HOUSE DISCIPLINARY COMMITTEE -** City of Faith maintains an In-House Disciplinary Committee, which is comprised of at least one (1) and no more than three (3) administrative staff personnel. Such Committee only reviews violations, which fall under the major and/ or minor categories. Terminal category offenses are handled exclusively by the Federal Bureau of Prisons.

**IN-HOUSE DISCIPLINARY RULES AND SANCTIONS -** All City of Faith residents are, of course, required to comply with the Federal Bureau of Prisons Prohibited Acts during the course of their entire stay. In addition, City of Faith maintains In-House Disciplinary Rules, which all residents are also required to strictly adhere to. In an effort to ensure that residents know what is expected of them as well as penalties for non-compliance, violations are divided into three categories: terminal, major and minor. Categories, violations under each category and correlative sanctions are discussed below.

## DRESS CODE

Residents are required to adhere to the following dress code:

City of Faith maintains no specific requirements regarding length and style of a resident's hair. However, City of Faith does require residents to maintain full-time employment, therefore a resident may consider a length and style conducive to employment.

Residents are required to be clean-shaven. Beards are allowed as long as they are kept neatly trimmed and are of reasonable length.

Residents are required to keep their nails clean and closely clipped.

Residents are not permitted to wear unacceptable headwear, which includes but is not limited to: do-rags, shower caps, skullcaps or bandanas.

Residents are not allowed to wear revealing or provocative clothing.

Residents are not allowed to "sag" but must keep their pants up and belted around the waist.

Residents are required to wear their clothing in an acceptable manner. Excessively ragged or torn clothing is unacceptable unless the nature of the resident's employment requires such and pursuant to Facility Director or Case Manager approval.

Anytime residents are outside their respective living areas they must dress appropriately. No resident can leave his or her room unless fully dressed.

## DUTY SCHEDULE

Since it is City of Faith's responsibility to ensure that its facilities maintain a high level of cleanliness, all residents are required to properly maintain their respective common areas. In addition, to facilitate the cleanliness of the entire facility and its surrounding area, residents will be assigned on a rotating basis, housekeeping responsibilities. A written assignment schedule will be posted in a conspicuous location within the facility.

## EMERGENCY EVACUATION PROCEDURES

City of Faith conducts monthly fire and emergency drills. Exits are clearly marked. Residents will be instructed on City of Faith's emergency evacuation procedures during their orientation.

## EMERGENCY HEALTH CARE

It is the policy of City of Faith to provide for, and maintain, twenty-four (24) hour per day emergency medical, dental, and mental health care availability, as outlined in the City of Faith Emergency Health Care Plan, which is incorporated into the City of Faith "approved" Emergency Plan; and which, at a minimum, includes arrangements for the following:

1. On-site emergency first aid and crisis intervention;
2. Emergency evacuation of the resident from the facility;
3. Use of an emergency medical vehicle;
4. Use of one or more designated hospital emergency rooms or other health facilities;
5. Emergency on-call physician, dentist, and mental health professional services when the emergency health facility is not located in a nearby community;
6. Security procedures providing for the immediate transfer of residents, when appropriate.

## EMPLOYMENT GUIDELINES

Residents are required to maintain full-time employment. Full-time is defined as 32-40 hours per week.  For residents attending either academic or vocational school, the director will determine the appropriate number of hours to be worked.  Residents have thirty (30) calendar days in which to obtain employment after completion of the orientation process.

Any employment obtained by residents must pay at least minimum wage.  You will not be allowed to switch jobs for forty-five (45) days and will not be able to continue searching for work for forty-five (45) days unless you receive prior approval from the Facility Director or the Employment Placement Specialist.

Residents are allowed to seek employment within one hundred fifty (150) mile radius of City of Faith. All employment must be approved by the Director and verified by the Federal Case Manager or EPS.  Residents may not change employment without prior approval of the Director.

Residents who are terminated from their job due to unsatisfactory performance, poor attitude, or misconduct may incur sanctions including being returned to the custody of the Bureau of Prisons.

Residents are not allowed to work in an establishment where alcohol is the primary commodity or where alcohol is the primary source of income. Residents are not allowed to work for companies, subsidiaries, or be under the direct supervision of a family member.

Residents are not allowed to be signed out of the facility for more than twelve (12) hours.  Any request for exceeding the twelve (12) hour limit must be submitted to the Employment Placement Specialist (EPS) fourteen (14) days prior.  All requests are approved by the Residential Reentry Manager (RRM).  All schedules must be submitted to the EPS for verification 48 hours before the schedule starts.

## EMPLOYMENT VIOLATIONS (NOT OBTAINING WORK)

A resident who has not obtained work, might receive these sanctions:
1st offense: Loss of privileges, must find a job in 9 days.
2nd offense: In-house formal, loss of privileges, must find a job in 10 days.
3rd offense: Formal incident report, transfer to a more secure institution

## FURLOUGHS AND PASSES

Other than employment or a City of Faith sanctioned and escorted trip, a resident is allowed to be absent from the facility only as a result of the following:

**PASS** - A pass is used for overnight or weekend absences and is limited to a 150-mile radius. Residents in the Community Corrections Component are not ordinarily eligible for passes. A pass begins typically on Friday at 5:00 PM and may extend to curfew (9:00 PM) on Sunday. In the event a resident works on the weekends, then the pass will be for a similar period during their off days.  A Pass Request Form must be submitted to the Director no later than the Thursday morning preceding the Weekend Pass.

**HOUSING AREAS**

City of Faith provides separate sleeping and hygiene facilities for male and female residents. At no time is a male resident allowed in a female sleeping or bathroom area, nor is a female resident allowed in a male sleeping or bathroom area. In the event a resident is found to be in an opposite sex area, they will be subject to disciplinary actions.

**HOUSEKEEPING**

All residents, on a rotating basis, are required to maintain all common areas twice daily, before 7:00 am and before 10:00 PM. Weekly assignment sheet will be posted in conspicuous places throughout the facility.

Aside from the resident's responsibility of cleaning an assigned common area, each resident is responsible for maintaining his or her own personal living area.

Daily responsibilities include:
> Making bunk military style, while ensuring such is tight, neat, and has a six inch (6") collar.
> Sweeping and mopping around bed area.
> Dusting bed frame and locker exterior.
> Emptying trash can.

Weekly responsibilities include:
> Cleaning and straightening wall locker and bunk drawer.
> Wipe down ceiling fans and blades.
> Wipe windows, window ledges and mini blinds.
> Wipe baseboards and walls.

The following general housekeeping rules are to be strictly adhered to:
> All clothing and personal items must be stored in a resident's wall locker.
> All footwear must be stored in a resident's locker.
> Food and beverages are not allowed in a resident's room.
> Extension cords are not allowed in a resident's room and are subject to confiscation.
> Mini blinds are to be completely closed at dusk and while dressing and undressing.
> Lights, televisions and radios are to be turned off when rooms are not occupied.
> All game systems must be put away when not in use or any residents in the room are in the building.

**ALL ROOMS WILL BE INSPECTED ON A DAILY BASIS FOR CLEANLINESS AND COMPLIANCE.**

**INDIGENT RESIDENT**

It is the policy of City of Faith to provide and ensure that indigent residents receive postage and materials needed to maintain contact with their community ties. The resident must request these items from their Case Manager.

**SOCIAL RECREATIONAL LEAVE-** Absences from the City of Faith by Pre-Release Component residents for social/recreational purposes (Wal-Mart, haircut, church) may be authorized by the Director for after work, not to exceed three (3) hours and not to extend past curfew (9:00 Pm). A requesting resident is required to give the Director at least twenty four (24) hour advance notice.

**FURLOUGH-** A furlough is required for an absence from City of Faith which exceeds one hundred (150) miles. Community Correctional Component residents are not ordinarily eligible for a furlough. Examples for a reason for a furlough include a critically ill relative, funeral, medical treatment not otherwise available, work etc. A Furlough Application Approval Form must be submitted to the Director in advance of such request.

An on-site visit of a resident's home must be conducted by City of Faith staff personnel before a resident can go home on Pass or Social/ Recreational Leave. Also, other than employment, an aftercare obligation or AA/NA attendance, a resident must be physically present at City of Faith by no later than 9:00 Pm (curfew) each night unless specified otherwise by the Director.

**GRIEVANCE POLICY**
A resident may register a complaint at any time for immediate disposition without any threat of discharge or reprisal.

All complaints which successfully proceed through the proper channels will be ultimately reviewed by the Director or her designee and should the complaint warrant an investigation, an investigative committee will be appointed by the Director. This committee will be comprised of three staff members: one from administration, one from security, and one from accounting. The Complainant will be notified of the committee's findings and disposition of the respective complaint. All complaints will be kept on file in the Federal Case Manager's office.

City of Faith has developed the "Administrative Remedy Program" for residents. City of Faith staff will not allow any deviation from this procedure.

Formal Administrative Remedy Procedures will assure City of Faith residents are aware of their right to formally present their issues of concern to appropriate BOP staff and, at the same time, will facilitate the BOP's oversight capability of City of Faith.

Although residents will be encouraged to attempt informal resolution with City of Faith staff, it is not a requirement.  Formal or Informal resolution, residents shall follow the proper chain of command outlined in the City of Faith handbook and in the Administrative Remedy Program.

Any resident who desire to file a complaint is required to utilize the following chain of command:

| | |
|---|---|
| On Duty Security Staff | Program Manager |
| Security Supervisor | Director |
| Case Manager | Bureau of Prisons RRM Dallas |

NOTE:  THERE IS NO TIME LIMIT FOR REPORTING A GREIVANCE OF SEXUAL ASSAULT/ABUSE

## JOB SEARCH, DAILY, & WEEKEND ITINERARIES

Whenever a resident wants to leave the City of Faith grounds, he/she must get permission from their Federal Case Manager.  To get permission the resident must fill out one of the three itinerary sheets located in the front lobby of the center.

### Job Search Itinerary

Residents are required to be on an active job search from 8 a.m. to 4:00 p.m. until hired.  These itineraries are used by the residents in order to go out to seek employment.  The resident is allowed to be out at 3-hour intervals to look for employment, unless extended by the EPS or Case Manager. ***The resident must turn in their itinerary to their Employment Placement Specialist 24 hours prior to departing on a job search. Exceptions to this rule can be made at the discretion of the Employment Placement Specialist.  Job searches can only be approved by the Employment Placement Specialist or RRC Key Staff.*** All the information must be filled out before being approved (i.e. name of business, phone number, address, contact person, etc.). The resident must call when they have arrived and before leaving each approved location, as well as before returning to the facility.  Job searches are done on appointment basis only.  Residents will not be allowed to randomly select places to job search.  Along with your job search itinerary you are required to fill out a job search log and turn it in to the EPS weekly (Fridays).

### Daily Itinerary

Daily Itinerary forms are used if the resident wants to request to have a pass to anywhere else other than searching for employment.  The resident must turn in their itinerary in to their Federal Case Manager prior to departing from the facility.  Daily itineraries are approved by the residents Federal Case Manager. All the information must be filled out before being approved (i.e. name of place, phone number, address, etc.). The resident must call when they have arrived and before leaving each approved location, as well as before returning to the facility.

### Weekend Itinerary

Weekend itineraries are used to request weekend passes to an approved pass site.  Residents are expected to be current on all conditions and obligations of the City of Faith program before they are eligible for weekend passes (i.e. basic phone line, AA/NA meetings, Aftercare, etc.).  On Sunday, residents are allowed to go to church. The resident cannot substitute another place for a church pass. The resident can only go where he/she has indicated at the time approved. Locations or times cannot be changed once the resident has signed out on weekend pass. Residents are not allowed to go to any other homes other than the releasing address that was verified for pass (the site the resident requested on the Pass Site Verification form located in the Intake Book). The resident must make all required calls or he/she will be required to return to the facility before their weekend pass is completed.  Weekend pass are a privilege not a right.

The weekend pass schedule is as follows:

1st & 3rd weekends: Haircuts **2 ½ hours**

2nd Saturday only: Department stores (Wal-Mart or the like, up to your case manager's discretion.)  Buy enough supplies to last, **2 hours max**

**EXCEPTIONS MAY BE MADE ON A CASE BY CASE BASIS WITH THE APPROVAL OF THE CASE MANAGER.**

Sundays: Church **3 hours** (does include drive time)

These times to do include driving time unless otherwise noted on your itinerary. It is your responsibility to notice time changes. These times durations may be reduced by your case manager at his/her discretion.

**Residents should not ask security to change times or locations on passes they are not allowed to approve/change any itinerary; they also will not call Federal Case Managers neither at their homes to request passes, or changes to passes.**

**RULES OF MOVEMENT**
When a resident leaves the facility for any reason to go anywhere, he/she is required to telephone the center upon their arrival at the location on the itinerary that was approved by their Federal Case Manager. The resident is also required to call upon their departure of that location. For example, if you sign out of the center to seek employment at three separate locations, you are required to call upon arrival and departure of each location. This rule also applies to the daily itineraries and weekend pass itineraries.

When a resident acquires employment, he/she must call when arriving to work and departing from work every day, they are scheduled to work. This includes if the resident leaves on an errand for the company or for lunch. If the resident has a job that requires them to move to different locations each day, they must notify the center when they leave one job site to go to another and they must call when they arrive at the next job site.

Any unauthorized departures from the City of Faith Residential Re-Entry Center by a resident serving a federal sentence will be deemed as ESCAPE. Below are the conditions that constitute the meaning of escape:

1. Any failure to remain at the approved place of employment, training or treatment during the hours specified by the terms of the employment, training or treatment
2. Any failure to return to the facility at the prescribed time.
3. Any failure to abide by the conditions concerning accountability of an authorized pass or furlough.
4. Any failure to return from any authorized furlough or pass at the time and place stipulated.
5. Any failure to abide by the residence, employment or curfew conditions of home detention.
6. Any arrest.
7. Any voluntary departure from the facility, employment, training or treatment without permission.

Any person residing at City of Faith as a Condition of Probation or bond is not in the custody of the U.S. Attorney General or the Federal Bureau of Prisons and therefore cannot be prosecuted for escape if they leave the facility for any of the above listed reasons. However, any unauthorized departure from the facility by those on probation or bond will be immediately reported to the appropriate personnel.

City of Faith is responsible for knowing a resident's whereabouts each hour of everyday of his/her stay.  If City of Faith staff is unable to contact the resident for 30 minutes, the BOP must be notified that he/she has escaped.  Failure to comply with these rules will result in the loss of social activities and passes or removal from the program.

It is your responsibility to check for notices, documents, receipts, etc. that is possibly left in your folder at the front desk (i.e.: your folder is your mailbox).  Ask security politely to review any information in your folder that is necessary for your stay at City of Faith.  Additionally, you are all responsible for all the information posted on the bulletin boards.  Make it a point to review these regularly.

If residents request emergency medical treatment after hours (4pm-8am daily or entire weekends), an ambulance service or 911 must be called.  If the medical treatment need isn't an emergency, residents will be allowed to see a physician the next business day.  Security will call emergency medical services for residents unable to make the call for themselves.  It will be the responsibility of the resident to check-in with City of Faith hourly until admitted to the medical facility or returned to the facility.  Failure to do so could result disciplinary action.

Once returning to City of Faith from an approved pass, you are required to sign in and submit your car keys (if applicable).  Failure to submit your keys to on-duty security could result in loss of driving privileges.  Be sure to bring in all items from you vehicle upon arriving to the facility.  You will not be allowed to return to your vehicle until your next authorized departure.

**LAUNDRY**
City of Faith provides laundry rooms, which contain washers and dryers. The laundry room opens at 5:00 am and closes at 10:30 PM Sunday through Thursday, while staying open until midnight on Fridays and Saturdays. In addition, vending machines are also located in most houses.  All residents are expected to treat all laundry equipment and vending machines with respect and care. Also, residents are responsible for ensuring their laundry is removed promptly after each washing or drying to enable all residents to make optimum use of the laundry facility. Residents are responsible for providing their own laundry detergent.

**LIVING ACCOMMODATIONS**
Each resident will be issued the following items upon their arrival at City of Faith:

1. (1) laundry bag
2. (1) pillow case
3. (1) fitted sheet
4. (1) flat sheet
5. (1) towel
6. (1) wash cloth
7. (1) plastic glass
8. (1) roll toilet paper
9. (1) blanket

If a resident is in need of hygiene items, he/she will be issued (1) personal hygiene packet containing:

1. Deodorant
2. Soap
3. Razor
4. Toothpaste
5. Toothbrush
6. Shampoo
7. Comb
8. Special Hygiene items for female residents.

All residents' rooms contain an approved fire-retardant trash can. This can is not to be removed, there should not be a liner in the trash can, nor is any other type of can to be substituted. City of Faith, CCC provides each resident with a fire-retardant pillow upon arrival. **Personal pillows/bedding are not allowed and will be immediately confiscated.** Room assignments will be issued without regard to age, race, religion or creed. All resident requests for room changes are to be directed to the Case Manager. All foot lockers and storage lockers are labeled with your name as well as denoting your bed assignment. You are responsible for all contents in your assigned lockers at the time you take possession. A resident may have only one bed, one locker/bunk drawer and one lock. All unused lockers will be kept locked and unused until a new resident takes possession of that locker.

## MAIL
City of Faith does not limit the amount of mail a resident may receive or send. City of Faith maintains the option to randomly monitor the resident's mail. This includes the inspection of mail for contraband and when based on legitimate facility interests of order and security, mail may be read and/or rejected. It is the resident's responsibility to inform their correspondents of the City of Faith mail policy.

## MEALS
City of Faith provides residents with a hot and nutritious breakfast and dinner, with the noon meal being facilitated by means of a sack lunch. Residents should sign up for sack lunches if they wish to have one. Special diets are provided as prescribed by appropriate medical personnel or for residents with special religious requirements and requests must be in writing. Sack lunches are distributed during breakfast.

The meal schedule is listed below. The Little Rock facility will operate their dinner in shifts of half the in-house population to accommodate everyone in the facility. It is up to the discretion of the on-duty security to account for the correct number of people in each shift while considering those residents signed out of the facility requesting dinner at a later time (i.e.: to-go trays for approved absent residents).

<u>Weekday Meal Times:</u>
6am – 6:45am Breakfast for Female Residents
6:45am – 7:30 Breakfast for Male Residents
11:00am – 12:00pm Lunch for Female Residents
12:00pm – 1:00pm Lunch for Male Residents
6pm – 6:45pm Dinner for Female Residents
6:45pm – 8pm Dinner for Male Residents

<u>Weekend Meal Times:</u>
8am – 8:30am Breakfast for Female Residents
8:30am – 9:30 Breakfast for Male Residents
6pm – 6:45pm Dinner for Female Residents
6:45pm – 8pm Dinner for Male Residents

.* If you leave for work before your meal time begins, you will need to sign up for a breakfast/dinner tray with security.

**If you are on a job search during your lunch time, you can eat lunch when you return to the facility or you may take your lunch with you.

**Monday through Friday: (Monroe)**
Breakfast: 5:00a.m. through 7:00a.m.
Dinner:    5:00 p.m. through 8:30 pm

**Weekend/ Holiday : (Monroe)**
Breakfast: 6:00a.m. through 8:00a.m.
Dinner:    5:00p.m. through 8:30p.m.

## MEDICATION
Upon arrival, all residents must turn in prescription medication to security at the front desk. Security is responsible for dispensing all narcotic, psychotropic and prescription medication that requires refrigeration, during set pill calls.   Residents are allowed to possess prescription medication that is not narcotic, psychotropic. You are required to maintain your medication in the original prescription bottle. All medication must be presented to security for verification of ingredients upon entering the facility.  Residents are required to take their medication(s) as prescribed and are not allowed to deviate from the prescription.  Only a doctor can change a resident's prescription or release a resident from a prescription.

**Medication is dispensed by staff at the following times: 6:00 a.m., 12:00 p.m., and 7:30 p.m. only.**

## MONEY MANAGEMENT
Two of the principles City of Faith was founded upon are a resident must be productive in the workplace and that a portion of those wages must be deposited in savings to ensure that a resident returns to his or her community with the necessary funds to facilitate a successful transition. Consequently, upon a resident's arrival, he or she is required to meet with his/ her case manager to develop an individual program plan which includes a mutually determined amount that the resident will deposit from their earnings into savings. Resident savings will be closely monitored by their case manager.

## MONEY WAGES AND DEDUCTIONS
Residents are required to pay a subsistence fee of 25% of gross earnings. Residents on Home Confinement do not pay subsistence. Submittal of subsistence is a primary responsibility of each resident and such is subject to audit by the BOP. A resident's failure in paying their subsistence may result in their removal from City of Faith.  Resident will have 2 days or (48 hours) from the date of their paycheck to pay their subsistence to City of Faith.  Failure to do so will result in an informal incident report.  Resident's will have 24 hours from the time of the incident report to pay their subsistence.  If a resident underpays their subsistence they will also be issued an incident report and will have 24 hours from the incident report to pay the correct amount due. Failure to pay subsistence by the 3rd day after receipt of a paycheck will result in a formal incident report and possible removal from the City of Faith program.  All subsistence payments

must be made in the correct amount (see below chart for help, remember to use your **GROSS** wages not your **NET** wages).

## SANCTIONS FOR NOT PAYING CORRECTLY

A resident caught violating the subsistence payment instructions will receive the following:

1st offense: Formal incident report, goes to DHO for sanctioning.

2nd offense: Formal incident report, recommended loss of good conduct time/transfer to more secure facility

## SUBSISTENCE CALCULATION & PAYMENTS

Please follow the procedures below to calculate subsistence fees:

1. Find the gross amount of your check (the amount before any taxes or deductions are taken)
2. Multiple the gross by 0.25
3. You will pay the dollar amount. Do not add the cents to fee.

Examples:

| Gross Amount: | Gross Amount: | Gross Amount: | Gross Amount: |
|---|---|---|---|
| $254.19 | 598.21 | 300.00 | 15.85 |
| 254.19 | 598.21 | 300.00 | 15.85 |
| x 0.25 | x 0.25 | x 0.25 | x 0.25 |
| 63.55 | 149.55 | 75.00 | 3.96 |
| **You pay: $63.00** | **You pay: 149.00** | **You pay: 75.00** | **You pay: 3.00** |

## PERSONAL PROPERTY

City of Faith allows its residents to retain a reasonable amount of personal property in their possession, which includes the following items:

    a. Legal documents
    b. Prescription eye wear;
    c. Hearing aids;
    d. Dentures;
    e. Clothing that meets facility dress code requirements
    f. Personal hygiene articles
    g. Books, magazines, letters, correspondence, etc.
    h. Mementos
    i. Approved photographs
    j. Personal radio
    k. Other items as may be approved by the Facility Director

Personal property is not to be left out of your locker or closet. Any property left out it is subject to confiscation. Residents are not allowed to possess any property over $100 in value without prior approval. A new inventory sheet for these items must be completed by security. Residents will not be allowed to possess cash over $100 while residing in the facility. All items and cash exceeding $100 in value need to be immediately removed from the facility.

## INDIVIDUALIZED PROGRAM PLAN

**TELEPHONES**
City of Faith provides landline phones free of charge for resident use. These are local calls only. (Residents are expected to utilize discretion while being considerate of fellow resident phone needs.) A resident's abuse of phone privileges will result in disciplinary action.

**TRANSPORTATION**
*City of Faith does NOT provide transportation for residents to and from work or to look for work.*

Residents are responsible for all costs and transportation associated with their medical care.

An employer may pick up and return a resident to and from work if authorized by the Director. Family or friends may transport a resident to and/or from work.

A resident may use the city bus lines. The facility has bus route maps available along with all day bus passes for sale for 31-day passes. The bus lines are fully available to all residents. All new residents may receive one free 31-day bus pass upon arrival.

Permission for a resident to drive any vehicle can only be given by the Facility Director. Documentation needed is copy of insurance, proof of registration, copy of driver's license, driving record, and letter from the owner of the vehicle giving permission for the resident to have possession of the vehicle. The letter must either be notarized or witnessed by RRC Key staff. A notarized letter is not needed if the vehicle is in the resident's name. If a resident's driving record has any driving infractions on it, they will be required to attend a defensive driving class at their expense. All residents approved to drive are required to place a COF vehicle decal on their front bottom left side windshield. This decal must be visible at all times and must be placed by staff. At no time should a nonregistered vehicle be left on the City of Faith parking lot. Vehicles not registered with City of Faith will be towed at the owner's expense. Noncompliance with these rules will result in a loss of this privilege.

Rules for residents with driving privileges:
- **No other residents are allowed to ride in your vehicle**
- If you are caught with a resident who is a member of the opposite sex, you will be issued a formal incident report
- Turn keys into the front desk upon arrival (your keys will be considered a prohibited item while you are in the building
- Must keep all documentation up-to-date (turn updated information into Case Manager and Program Manager)
- Cannot change vehicles without authorization
- No prohibited items in the car with the exception of legal smoking paraphernalia
- You are **NOT** allowed to return to your vehicle once you are signed in to the facility

BOP residents are not allowed to ride with USPO cases and vice versa. Members of the opposite sex (including those residents who are related) are not allowed to ride together.

Residents are allowed to drive to work, transitional services, medical services, and other outside-approved programming requirements as well as weekend/social passes.

to the federal institution, he/she should make that request in writing and submit the request to the Director.

## SEARCHES

A resident's person, property or possessions may be searched at any time by City of Faith staff and/ or officials of any Federal Law Enforcement Agency. Upon arrival, residents are issued a combination lock for use on their clothing and personal items locker. **Consequently, a resident's use of his or her own personal lock is prohibited.** If City of Faith and/ or a Federal Law Enforcement Agency finds it necessary to enter a resident's locker and a lock other than the one issued by City of Faith is found on the respective locker, such lock will be cut off with possible disciplinary action resulting. Any resident who has approved driving privileges will be subject to vehicle searches at any time.

## SIGN-OUT / SIGN-IN

Resident's accountability is paramount. During your stay at City of Faith, it is mandatory that City of Faith knows your whereabouts at all times. To facilitate and ensure that your whereabouts is always known, residents are required to sign out to any and all locations where they will physically be and to sign in immediately upon their arrival back at the facility. Required information includes:

1. Time and date signed out
2. Location (s)
3. Address and phone number of locations (s)
4. Purpose
5. Time and date expected to return
6. Time and date resident returns to the facility

Residents are required to sign out to any and all locations and provide appropriate times. An example: should a resident plan to go to an AA/NA meeting and then directly to church services without returning to the facility, this must be indicated on the resident's sign out/ in sheet complete with each separate location's address and telephone number and relevant times. Staff must know at all times a resident's location. Failure of a resident to be at a location for which he or she has signed out may cause such resident to be considered on escape status with appropriate measures being immediately invoked.

It is of utmost importance that any deviation from a resident's itinerary be immediately communicated to City of Faith staff. An example would be if a resident is going to be later than the time previously indicated for returning to the facility. Residents are solely and ultimately responsible for ensuring City of Faith staff knows their whereabouts for any and all discrepancies.

## SMOKING

City of Faith Little Rock is a completely non-smoking facility. Smoking is not allowed anywhere in the building, in the vehicles or on the grounds. The outside visitation area is the designated smoking area at City of Faith Monroe.

All residents will meet with Staff Personnel and design and complete a personalized program plan that will measure your accomplishments, expected behavior, needs, and set a timeline for personal goals as well as goals set by staff.   Residents are encouraged to make input into this program plan during this process and once completed, both the resident and Case Manager will sign the plan,  Every two weeks (bi-weekly), the Individualized Program Plan will be reviewed by the Case Manager and resident.

**PROPERTY DISPOSITION**
Upon the death, escape, returned to secure custody, or hospitalization of a resident, their property must be immediately secured and inventoried.  Two or more staff members must accomplish inventory of resident property, each of whom will sign the completed inventory list (BP383 (58)).  A resident's property will be immediately secured and inventoried prior to the end of the work shift.  Personal property left behind by an escapee will be considered voluntarily abandoned.  The facility director or designee shall contact the person the resident identified to be notified in case of emergency and advised to pick up the residents property.  If the property (including confiscated cell phones) is not picked up within 10 days, it will be donated to a local charity or destroyed.

**PROHIBITED ITEMS (CONTRABAND)**

1.  **Mouthwash, toothpaste, and/or any item containing alcohol**
2.  **Medication (Narcotic, Psychotropic or Medication requiring refrigeration),  over the counter sleeping aids, over the counter weight loss aids, and all body building aids.**
3.  **Tools cannot be kept in facility.**
4.  **Food and Beverages- nothing in the way of food or beverage is allowed in the dorm areas.**
5.  **Dice or gambling paraphernalia of any kind.**
6.  **Pornography or anything that could be construed as pornography by City of Faith.**
7.  **Metal utensils of any kind.**
8.  **Bleach, Ammonia, and/or vinegar.**
9.  **Cameras, Video Equipment (or any device that can record video or take pictures), Boom Boxes, Computers (or related devices that can obtain a Wi-Fi connection), Software or any DVD or CD that does not have a Manufacturer's label (i.e. Burned/copied CD's/DVD's) or extension cords**
10. **Unauthorized cell phones**
11. **Any type of Energy Drinks such as Boost, No Fear, Etc.  Also any and all energy pills.**
12. **No Smoking is allowed inside the facility or COF vehicles. No Rolling papers, synthetic cannabinoids or smoking paraphernalia including electronic and/or vapor cigarettes is allowed.**
13. **Plug-in air fresheners**
14. **Non-clear backpacks or purses**
15. **Extension cords, heating blankets/pads, space heaters, & multi-plugs (power**

strips).
**16. Personal pillows, unauthorized blankets, personal bedding,**
**17. Clothing which a resident is unable to fit in his/her allotted locker space**

## RECREATION & LEISURE

City of Faith provides both indoor and outdoor recreational and leisure time activities for residents. Televisions with either a VCR or DVD player are available for residents use along with outside leisure activities. Residents may participate in these activities at their own discretion. City of Faith is not responsible for personal injury. Inspect all equipment before use. Notify Security if something is broken or unusable. Workout at your own risk.

Recreation Times:
6am - 7:30am Recreational Time for Male Residents
7:30am - 9am Recreational Time for Female Residents
6pm – 7:30pm Recreational Time for Male Residents
7:30pm – 9pm Recreational Time for Female Residents

Weekdays 4pm – 6pm
The men can be upstairs or outside in the recreation area
The women can be in their room or in the kitchen area

Weekend Recreation Times:
6am - 7am Recreational Time for Male Residents
7am – 8am Recreational Time for Female Residents
8am – 10:30am Recreational Time for Male Residents
10:30am – 1pm Recreational Time for Female Residents
5pm – 7pm Recreational Time for Female residents
7pm – 9pm Recreational Time for Male residents

## RECORDS

All resident records are **CONFIDENTIAL** and the contents of such will only be revealed to authorized personnel. In certain instances, residents may be required to sign a Release of Information Form to authorize access to specific information such as medical records.

Bureau of Prisons personnel have unlimited and unrestricted access to all applicable resident records. Residents have access to review their records at the discretion and only in the presence of the Director, and then only those records allowed by the Bureau of Prisons to be reviewed.

## RELIGION

It is the policy of City of Faith to provide and ensure that all residents have the opportunity to participate in the practice of their religious faith and in accordance with their desires.

## REMOVAL OF A RESIDENT UPON REQUEST

Upon the recommendation of the Director, any resident may be removed from City of Faith for proper cause and immediately returned to the Bureau of Prisons. Should a resident desire to return

**TRANSITIONAL ASSISTANCE**
City of Faith will assist the resident in locating housing suitable for release purposes, either through direct assistance or through referral to appropriate agencies.

**UNAUTHORIZED CONTACT**
The building and ground of the City of Faith comprise a <u>Restricted Area</u>. Outsiders are not allowed to come and go as they please nor meet residents without permission. Besides regular scheduled visitation, a resident may not be personally contacted by family, friends, or other persons at City of Faith without prior written permission from the Director. Should a resident be contacted by an outsider on City of Faith ground without prior Director approval, such contact would constitute unauthorized visitation. If a staff member observes such contact, the outside individual will be asked to leave and the resident will face appropriate disciplinary sanctions.

**UNAUTHORIZED ITEMS**
A resident may receive personal items through the mail. However, other than through the mail, a resident may not receive food, clothes or other items directly or personally from any other person than a member of City of Faith's staff without prior written authorization from the Director. Should a resident obtain the Director's approval, the item(s) must be delivered directly to an on-duty security personnel, who will examine the item(s) for contraband and unauthorized item(s) to the resident.

**URINALYSIS/ BREATHALYZER**
Drug screen urinalysis and alcohol testing will be conducted on a random basis as well as for specific cause.

**VISITATION GUIDELINES**
City of Faith does require a previously approved visitation list. Residents are free to visit immediate family members or significant other named in their PSI as long as the following guidelines are stringently adhered to:

Visitation hours are as follows:
> Little Rock
> **Saturdays (A-M) and Sundays (N-Z) from 1:00pm to 5:00pm.**
> **Mondays & Wednesdays 6:00 pm to 7:00 pm**

> Monroe
> **Tuesday & Thursday- Family Visitation at COF from 6p-8p**

This is an additional time during the week for your family to come and visit. Visitation will be held at the City of Faith Church. Visitors MUST check in with Security Staff at House 3 or House 5 before proceeding with visitation at the Church. Please ensure that you and your family members abide by the rules of visitation as listed in your Resident Handbook.

> **Thursday – Social Pass from 6p - 9p**

This is a time you can go to a restaurant with your family. If you are taking regular weekend passes and you live within 30 minutes of City of Faith, you will be allowed to go home during this

time in lieu of going to a restaurant.

Sunday Family Visitation at COF  1p  -  5p

This is standard visitation time for family members and/or friends.

Should a resident desire to visit at a time other than the time specified above, he/she should submit a request at least forty-eight (48) hours in advance. Such request must be in writing and is subject to the Director's approval. The only exception being a resident who is required to work during the regularly scheduled visitation hours noted above, arrangements will be made to facilitate visitation at another time.

1. All visitors are required to have proper identification, which, in most instances, is a valid driver's license. Visitors must register at the front desk and along with providing the on-duty security officer with proper identification, must provide the following:
   A. Name and BOP register number of resident to be visited
   B. Name, address and phone number
   C. Relationship to resident
2. City of Faith may refuse to allow any person or persons the privilege of visiting a resident for any of the following reasons:
   A. Failing to provide proper identification.
   B. Refusing to submit to a search if requested by the Director or his designee. A visit is immediately terminated upon a visitor's refusal to submit to such a search. A visitor's personal belongings or anything they bring the resident is subject to search.
   C. Arriving for a visit-intoxicated and/ or under the influence of a controlled substance.  The Director or his designee may make such determination.
   D. Being in possession of a weapon and/or firearm.
3. A resident's visit may be terminated for the following reasons:
   A. A visitor refuses to comply with posted visitation rules.
   B. A visitor's conduct constitutes a violation of federal, state, parish, and/or city law including but not limited to, assault, battery, disturbing the peace, introduction or attempted introduction of contraband.
   C. A disturbance occurs at the facility during visitation prompting the Director or her designee to terminate visitation for safety reasons.
   D. A visitor becomes boisterous, purposefully loud, uses profanity, and/ or fails to show proper respect toward staff, resident's and/ or other visitors.
4. An ex-felon who has not been finally discharged from an institution or from probation or parole for more than two (2) years without an intervening criminal record or who has pending criminal charges is not allowed to visit. Any exception is dependent upon the Director's approval.
5. A visitor is not allowed to visit a resident in his or her assigned room, laundry room, on any property adjacent or in the vicinity of City of Faith, or any place designated as an "Unauthorized Area".
6. Children visiting residents are expected to be supervised and well behaved. Residents are responsible for the behavior of the children visiting them. Failure by a resident to restrain a child's errant behavior may result in termination of visitation and the suspension of such child's privilege to visit.

7. Attorneys, their employees and law students in approved clinical programs may visit their clients at any time during normal working hours (7:00 am- 4:00 PM, Monday through Friday). A request for an attorney visit outside these times may be submitted to the Director for her consideration. Except in emergency cases, visits by attorneys, their employees and law students must be scheduled twenty four (24) hours in advance.

8. Privacy will be afforded to the degree that security permits when a resident visits with a legal counsel or clergy. Under no circumstance will conversations be monitored.

9. Any person other than a resident's legal or spiritual counsel may be denied the privilege of visiting a resident who has had his visitation privileges suspended due to disciplinary action.

10. A resident is only allowed 5 visitors at a time.  This includes children.  Once a visitor leaves, they are not allowed to return during that visitation cycle.

## PROHIBITED ACTS AND AVAILABLE SANCTIONS

### GREATEST SEVERITY LEVEL PROHIBITED ACTS

100 Killing.

101 Assaulting any person, or an armed assault on the institution's secure perimeter (a charge for assaulting any person at this level is to be used only when serious physical injury has been attempted or accomplished).

102 Escape from escort; escape from any secure or non-secure institution, including community confinement; escape from unescorted community program or activity; escape from outside a secure institution.

103 Setting a fire (charged with this act in this category only when found to pose a threat to life or a threat of serious bodily harm or in furtherance of a prohibited act of Greatest Severity, *e.g.,* in furtherance of a riot or escape; otherwise the charge is properly classified Code 218, or 329).

104 Possession, manufacture, or introduction of a gun, firearm, weapon, sharpened instrument, knife, dangerous chemical, explosive, ammunition, or any instrument used as a weapon.

105 Rioting.

106 Encouraging others to riot.

107 Taking hostage(s).

108 Possession, manufacture, introduction, or loss of a hazardous tool (tools most likely to be used in an escape or escape attempt or to serve as weapons capable of doing serious bodily harm to others; or those hazardous to institutional security or personal safety; *e.g.,* hacksaw blade, body armor, maps, handmade rope, or other escape paraphernalia, portable telephone, pager, or other electronic device).

109 (Not to be used).

110 Refusing to provide a urine sample; refusing to breathe into a Breathalyzer; refusing to take part in other drug-abuse testing.

111 Introduction or making of any narcotics, marijuana, drugs, alcohol, intoxicants, or related paraphernalia, not prescribed for the individual by the medical staff.

112 Use of any narcotics, marijuana, drugs, alcohol, intoxicants, or related paraphernalia, not prescribed for the individual by the medical staff.

113 Possession of any narcotics, marijuana, drugs, alcohol, intoxicants, or related paraphernalia, not prescribed for the individual by the medical staff.

114 Sexual assault of any person, involving non-consensual touching by force or threat of force.

115 Destroying and/or disposing of any item during a search or attempt to search.

196 Use of the mail for an illegal purpose or to commit or further a Greatest category prohibited act.

197 Use of the telephone for an illegal purpose or to commit or further a Greatest category prohibited act.

198 Interfering with a staff member in the performance of duties most like another Greatest severity prohibited act. This charge is to be used only when another charge of Greatest severity is not accurate. The offending conduct must be charged as "most like" one of the listed Greatest severity prohibited acts.

199 Conduct which disrupts or interferes with the security or orderly running of the institution or the Bureau of Prisons most like another Greatest severity prohibited act. This charge is to be used only when another charge of Greatest severity is not accurate. The offending conduct must be charged as "most like" one of the listed Greatest severity prohibited acts.

### AVAILABLE SANCTIONS FOR GREATEST SEVERITY LEVEL PROHIBITED ACTS

A. Recommend parole date rescission or retardation.

B. Forfeit and/or withhold earned statutory good time or non-vested good conduct time (up to 100%) and/or terminate or disallow extra good time (an extra good time or good conduct time sanction may not be suspended).

B.1. Disallow ordinarily between 50% and 75% (27-41 days) of good conduct time credit available for year (a good conduct time sanction may not be suspended).

C. Disciplinary segregation (up to 12 months).

D. Make monetary restitution.

E. Monetary fine.

F. Loss of privileges (*e.g.,* visiting, telephone, commissary, movies, recreation).

G. Change housing (quarters).

H. Remove from program and/or group activity.

I. Loss of job.

J. Impound inmates personal property.

K. Confiscate contraband.

L. Restrict to quarters.

M. Extra duty.

## HIGH SEVERITY LEVEL PROHIBITED ACTS

200 Escape from a work detail, non-secure institution, or other non-secure confinement, including community confinement, with subsequent voluntary return to Bureau of Prisons custody within four hours.

201 Fighting with another person.

202 (Not to be used).

203 Threatening another with bodily harm or any other offense.

204 Extortion; blackmail; protection; demanding or receiving money or anything of value in return for protection against others, to avoid bodily harm, or under threat of informing.

205 Engaging in sexual acts.

206 Making sexual proposals or threats to another.

207 Wearing a disguise or a mask.

208 Possession of any unauthorized locking device, or lock pick, or tampering with or blocking any lock device (includes keys), or destroying, altering, interfering with, improperly using, or damaging any security device, mechanism, or procedure.

209 Adulteration of any food or drink.

210 (Not to be used).

211 Possessing any officers or staff clothing.

212 Engaging in or encouraging a group demonstration.

213 Encouraging others to refuse to work, or to participate in a work stoppage.

214 (Not to be used).

215 (Not to be used).

216 Giving or offering an official or staff member a bribe, or anything of value.

217 Giving money to, or receiving money from, any person for the purpose of introducing contraband or any other illegal or prohibited purpose.

218 Destroying, altering, or damaging government property, or the property of another person, having a value in excess of $100.00, or destroying, altering, damaging life-safety devices (e.g., fire alarm) regardless of financial value.

219 Stealing; theft (including data obtained through the unauthorized use of a communications device, or through unauthorized access to disks, tapes, or computer printouts or other automated equipment on which data is stored).

220 Demonstrating, practicing, or using martial arts, boxing (except for use of a punching bag), wrestling, or other forms of physical encounter, or military exercises or drill (except for drill authorized by staff).

221 Being in an unauthorized area with a person of the opposite sex without staff permission.

222 (Not to be used).

223 (Not to be used).

224 Assaulting any person (a charge at this level is used when less serious physical injury or contact has been attempted or accomplished by an inmate).

225 Stalking another person through repeated behavior which harasses, alarms, or annoys the person, after having been previously warned to stop such conduct.

226 Possession of stolen property.

227 Refusing to participate in a required physical test or examination unrelated to testing for drug abuse (e.g., DNA, HIV, tuberculosis).

228 Tattooing or self-mutilation.

229 Sexual assault of any person, involving non-consensual touching without force or threat of force.

296 Use of the mail for abuses other than criminal activity which circumvent mail monitoring procedures (e.g., use of the mail to commit or further a High category prohibited act, special mail abuse; writing letters in code; directing others to send, sending, or receiving a letter or mail through unauthorized means; sending mail for other inmates without authorization; sending correspondence to a specific address with directions or intent to have the correspondence sent to an unauthorized person; and using a fictitious return address in an attempt to send or receive unauthorized correspondence).

297 Use of the telephone for abuses other than illegal activity which circumvent the ability of staff to monitor frequency of telephone use, content of the call, or the number called; or to commit or further a High category prohibited act.

298 Interfering with a staff member in the performance of duties most like another High severity prohibited act. This charge is to be used only when another charge of High severity is not accurate. The offending conduct must be charged as "most like" one of the listed High severity prohibited acts.

299 Conduct which disrupts or interferes with the security or orderly running of the institution or the Bureau of Prisons most like another High severity prohibited act. This charge is to be used only when another charge of High severity is not accurate. The offending conduct must be charged as "most like" one of the listed High severity prohibited acts.

## AVAILABLE SANCTIONS FOR HIGH SEVERITY LEVEL PROHIBITED ACTS

A. Recommend parole date rescission or retardation.

B. Forfeit and/or withhold earned statutory good time or non-vested good conduct time up to 50% or up to 60 days, whichever is less, and/or terminate or disallow extra good time (an extra good time or good conduct time sanction may not be suspended).

B.1 Disallow ordinarily between 25% and 50% (14-27 days) of good conduct time credit available for year (a good conduct time sanction may not be suspended).

C. Disciplinary segregation (up to 6 months).

D. Make monetary restitution.

E. Monetary fine.

F. Loss of privileges (e.g., visiting, telephone, commissary, movies, recreation).

G. Change housing (quarters).

H. Remove from program and/or group activity.

I. Loss of job.

J. Impound inmates personal property.

K. Confiscate contraband.
L. Restrict to quarters.
M. Extra duty.

## MODERATE SEVERITY LEVEL PROHIBITED ACTS

300 Indecent Exposure.
301 (Not to be used).
302 Misuse of authorized medication.
303 Possession of money or currency, unless specifically authorized, or in excess of the amount authorized.
304 Loaning of property or anything of value for profit or increased return.
305 Possession of anything not authorized for retention or receipt by the inmate, and not issued to him through regular channels.
306 Refusing to work or to accept a program assignment.
307 Refusing to obey an order of any staff member (may be categorized and charged in terms of greater severity, according to the nature of the order being disobeyed, *e.g.* failure to obey an order which furthers a riot would be charged as 105, Rioting; refusing to obey an order which furthers a fight would be charged as 201, Fighting; refusing to provide a urine sample when ordered as part of a drug-abuse test would be charged as 110).
308 Violating a condition of a furlough.
309 Violating a condition of a community program.
310 Unexcused absence from work or any program assignment.
311 Failing to perform work as instructed by the supervisor.
312 Insolence towards a staff member.
313 Lying or providing a false statement to a staff member.
314 Counterfeiting, forging, or unauthorized reproduction of any document, article of identification, money, security, or official paper (may be categorized in terms of greater severity according to the nature of the item being reproduced, *e.g.,* counterfeiting release papers to effect escape, Code 102).
315 Participating in an unauthorized meeting or gathering.
316 Being in an unauthorized area without staff authorization.
317 Failure to follow safety or sanitation regulations (including safety regulations, chemical instructions, tools, MSDS sheets, OSHA standards).
318 Using any equipment or machinery without staff authorization.
319 Using any equipment or machinery contrary to instructions or posted safety standards.
320 Failing to stand count.
321 Interfering with the taking of count.
322 (Not to be used).
323 (Not to be used).
324 Gambling.
325 Preparing or conducting a gambling pool.
326 Possession of gambling paraphernalia.
327 Unauthorized contacts with the public.
328 Giving money or anything of value to, or accepting money or anything of value from, another inmate or any other person without staff authorization.
329 Destroying, altering, or damaging government property, or the property of another person, having a value of $100.00 or less.
330 Being unsanitary or untidy; failing to keep one's person or quarters in accordance with posted standards.

331 Possession, manufacture, introduction, or loss of a non-hazardous tool, equipment, supplies, or other non-hazardous contraband (tools not likely to be used in an escape or escape attempt, or to serve as a weapon capable of doing serious bodily harm to others, or not hazardous to institutional security or personal safety) (other non-hazardous contraband includes such items as food, cosmetics, cleaning supplies, smoking apparatus and tobacco in any form where prohibited, and unauthorized nutritional/dietary supplements).

332 Smoking where prohibited.

333 Fraudulent or deceptive completion of a skills test (*e.g.,* cheating on a GED, or other educational or vocational skills test).

334 Conducting a business; conducting or directing an investment transaction without staff authorization.

335 Communicating gang affiliation; participating in gang related activities; possession of paraphernalia indicating gang affiliation.

336 Circulating a petition.

396 Use of the mail for abuses other than criminal activity which do not circumvent mail monitoring; or use of the mail to commit or further a Moderate category prohibited act.

397 Use of the telephone for abuses other than illegal activity which do not circumvent the ability of staff to monitor frequency of telephone use, content of the call, or the number called; or to commit or further a Moderate category prohibited act.

398 Interfering with a staff member in the performance of duties most like another Moderate severity prohibited act. This charge is to be used only when another charge of Moderate severity is not accurate. The offending conduct must be charged as "most like" one of the listed Moderate severity prohibited acts.

399 Conduct which disrupts or interferes with the security or orderly running of the institution or the Bureau of Prisons most like another Moderate severity prohibited act. This charge is to be used only when another charge of Moderate severity is not accurate. The offending conduct must be charged as "most like" one of the listed Moderate severity prohibited acts.

## AVAILABLE SANCTIONS FOR MODERATE SEVERITY LEVEL PROHIBITED ACTS

A. Recommend parole date rescission or retardation.

B. Forfeit and/or withhold earned statutory good time or non-vested good conduct time up to 25% or up to 30 days, whichever is less, and/or terminate or disallow extra good time (an extra good time or good conduct time sanction may not be suspended).

B.1 Disallow ordinarily up to 25% (1-14 days) of good conduct time credit available for year (a good conduct time sanction may not be suspended).

C. Disciplinary segregation (up to 3 months).

D. Make monetary restitution.

E. Monetary fine.

F. Loss of privileges (*e.g.,* visiting, telephone, commissary, movies, recreation).

G. Change housing (quarters).

H. Remove from program and/or group activity.

I. Loss of job.

J. Impound inmate's personal property.

K. Confiscate contraband.

L. Restrict to quarters.

M. Extra duty.

## LOW SEVERITY LEVEL PROHIBITED ACTS

400 (Not to be used).

401 (Not to be used).

402 Malingering, feigning illness.

403 (Not to be used).

404 Using abusive or obscene language.

405 (Not to be used).

406 (Not to be used).

407 Conduct with a visitor in violation of Bureau regulations.

408 (Not to be used).

409 Unauthorized physical contact (e.g., kissing, embracing).

498 Interfering with a staff member in the performance of duties most like another Low severity prohibited act. This charge is to be used only when another charge of Low severity is not accurate. The offending conduct must be charged as "most like" one of the listed Low severity prohibited acts.

499 Conduct which disrupts or interferes with the security or orderly running of the institution or the Bureau of Prisons most like another Low severity prohibited act. This charge is to be used only when another charge of Low severity is not accurate. The offending conduct must be charged as "most like" one of the listed Low severity prohibited acts.

## AVAILABLE SANCTIONS FOR LOW SEVERITY LEVEL PROHIBITED ACTS

B.1 Disallow ordinarily up to 12.5% (1-7 days) of good conduct time credit available for year (to be used only where inmate found to have committed a second violation of the same prohibited act within 6 months); Disallow ordinarily up to 25% (1-14 days) of good conduct time credit available for year (to be used only where inmate found to have committed a third violation of the same prohibited act within 6 months) (a good conduct time sanction may not be suspended).

D. Make monetary restitution.

E. Monetary fine.

F. Loss of privileges (e.g., visiting, telephone, commissary, movies, recreation).

G. Change housing (quarters).

H. Remove from program and/or group activity.

I. Loss of job.

J. Impound inmate's personal property.

K. Confiscate contraband

L. Restrict to quarters.

M. Extra duty.