IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

**UNITED STATES OF AMERICA**                                             **PLAINTIFF**

v.                               **Case No. 4:14-cr-00201 KGB**

**LYNN ALISA ESPEJO**                                                       **DEFENDANT**

**ORDER**

Before the Court are defendant Lynn Alisa Espejo's motion for reduction in sentence and emergency amended motion for reduction in sentence (Dkt. Nos. 237, 240). The government responded in opposition to Ms. Espejo's motions (Dkt. No. 241), and Ms. Espejo replied (Dkt. No. 242). The government supplemented its response to address Ms. Espejo's current custody status, and Ms. Espejo also filed a status update with the Court (Dkt. No. 245, 246).

**I.**      **Background**

After a jury trial, this Court sentenced Ms. Espejo in January 2018 to 45 months of imprisonment in the Bureau of Prisons ("BOP") (Dkt. Nos. 192, 199, 205). Ms. Espejo was convicted of wire fraud in violation of 18 U.S.C. § 1343, money laundering in violation of 18 U.S.C. § 1957, and filing false tax returns in violation of 26 U.S.C. § 7206(1) (Dkt. No. 192). Ms. Espejo self-surrendered to a federal prison camp in Bryan, Texas, on February 26, 2018. At the time she filed her current motion, Ms. Espejo represented that she was released from the BOP on May 27, 2020; would be serving the remainder of her sentence on home confinement; and was set to be released from home confinement on May 5, 2021[1] (Dkt. No. 237, ¶ 3). After that date, Ms.

---

[1] In their most recent filings, the government and Ms. Espejo inform the Court that Ms. Espejo's was removed from home confinement and placed in the Pulaski County Detention Center, a BOP designated detention facility, on January 12, 2021, due to an alleged violation of a condition of her home confinement (Dkt. Nos. 245, 246). The Court lacks jurisdiction to address the BOP's

Espejo will begin serving three years of supervised release (Dkt. No. 192).  Further, Ms. Espejo is required to make restitution in the amount of $611,099.41 to Practice Management Services, Inc., and to the Internal Revenue Service in the amount of $207,941.00 (Dkt. No. 199).

Ms. Espejo previously argued to the Court that her age, severe allergies, and arthritis, as well as other health issues, put her at risk for COVID-19 and that these conditions, along with her time spent in custody and conduct while in custody, supported her request for compassionate release (Dkt. No. 225).  In her current motions, Ms. Espejo requests that the Court grant her a reduction in sentence to permit her to obtain mental health counseling that she has requested but not been afforded by the BOP and "so that she can be placed on supervised release and move forward with taking classes that will allow her to be gainfully employed, help with the care of her mother, attend religious services, and do basic chores such as grocery shopping." (Dkt. No. 237, at 2-3).

The government previously opposed and currently opposes Ms. Espejo's motions and now contends that she has failed to exhaust the mandatory claims-processing rule in 18 U.S.C. § 3582(c), that she is not entitled to a waiver of those requirements, and that, even if Ms. Espejo could show that she did exhaust these requirements, compassionate release is not warranted in this case (Dkt. No. 227; Dkt. No. 241; Dkt. No. 245, at 2).

**II.    Discussion**

Ms. Espejo does not cite a statute in support of her request; however, the Court interprets her motion to be a request pursuant to the compassionate release provision of the First Step Act of 2018, 18 U.S.C. § 3582(c)(1).

---

decision to remove Ms. Espejo from home confinement and to confine her in a facility.  *United States v. Brown*, No. 4:10-cr-00013-2 BSM, 2020 WL 3619535, at *1 (E.D. Ark. July 2, 2020).

"'[A] judgment of conviction that includes [a sentence of imprisonment] constitutes a final judgment' and may not be modified by a district court except in limited circumstances." *Dillon v. United States,* 560 U.S. 817, 825 (2010).  Once a district court has pronounced sentence and the sentence becomes final, the district court may only reconsider or alter the sentence pursuant to statutory authority.  *See United States v. Addonizio,* 442 U.S. 178, 289 (1979).  The compassionate release provision permits a district court to modify a term of imprisonment after it is imposed.  18 U.S.C. § 3582(c)(1)(A).

Until passage of the First Step Act, under the then-governing statute only the BOP could seek from a district court compassionate release on behalf of an incarcerated federal defendant for extraordinary and compelling reasons.  The First Step Act amended the statute to authorize defendants to seek compassionate release on their own behalf, provided the defendant first asks the BOP to do so and exhausts administrative appeals following denial of this request by the BOP. 18 U.S.C. § 3582(c)(1).  Specifically, an inmate may seek a compassionate release directly from the sentencing court "after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility." 18 U.S.C. § 3582(c)(1)(A).  The BOP may oppose a defendant's motion for compassionate release.  The statute authorizes the district court to grant compassionate release, over the BOP's objection, under certain circumstances.

The Court previously ruled on, and denied, a request for compassionate release filed by Ms. Espejo because at the time she filed her request for compassionate release she had not requested such relief from the BOP (Dkt. No. 229).  In support of her first motion for compassionate release, Ms. Espejo argued that she is 56 years old and suffers from severe allergies,

which cause her to be susceptible to upper respiratory issues such as bronchitis and pneumonia, and arthritis, all of which she maintains make her particularly susceptible to COVID-19 (Dkt. No. 225, at 2). The government maintains it does not (Dkt. No. 227, at 14-15). The government did not contest Ms. Espejo's representation in her first motion for compassionate release of her time spent in custody and her conduct while in custody.

In connection with that prior motion, in her reply, Ms. Espejo represented that she obtained and submitted a BP8 form on April 3, 2020 (Dkt. No. 228, ¶¶ 6-7). The Court acknowledged that it was not clear whether the government agreed that this step started Ms. Espejo's 30-day clock and directed that, if the government objected and contended that Ms. Espejo's filing of the BP8 form in early April 2020 did not suffice to start the 30-day clock, the government submit an objection in writing within 10 days from the entry of the Court's April 23, 2020, Order (Dkt. No. 229). The government filed no timely written objection.

For this reason, to the extent the government contends Ms. Espejo did not submit a request for compassionate release to the BOP, the Court rejects that argument (Dkt. No. 241, at 4). The government also appears to contend that Ms. Espejo needed to request specifically from the BOP the specific type of relief she seeks and failed to do so (Dkt. No. 241, at 4). Despite making these arguments, the government also now concedes that it has shifted its policy; the government no longer contends that exhaustion is a jurisdictional requirement despite taking this position previously before this Court. Instead, the government acknowledges that, although it previously took the position that § 3582(c) was jurisdictional, it "now believes that the 'may not modify' language in § 3582(c) is not sufficiently clear to render § 3582(c) jurisdictional." (Dkt. No. 241, at 3).

The record does not include a copy of Ms. Espejo's BP8 form submitted to the BOP. Previously, Ms. Espejo stated that she "was finally given a BP8 on April 3, 2020. She filed her request for home confinement on that same date." (Dkt. No. 228, at 3). Now, Ms. Espejo represents that she requested that the BOP file for a reduction in sentence on her behalf in the BP8 form, that the BOP never acted on that request, and that she has the right to file a motion with the Court, as it has been 30 days since she submitted her request for compassionate release (Dkt. No. 242, at 1-2). The Court agrees. Further, Ms. Espejo recites in this record her attempts, and attempts made on her behalf, to follow-up on these matters with BOP staff and with staff at the halfway house (Dkt. No. 228; Dkt. No. 237). There is no record evidence that the BOP acted on Ms. Espejo's request within 30 days from the date her request was filed; the Court does not understand the government to contend otherwise. As a result, the Court determines that it has jurisdiction to consider Ms. Espejo's request for compassionate release.

Although the First Step Act does not define the phrase "extraordinary and compelling," it defers to the United States Sentencing Guidelines, which does set out examples. The Court acknowledges that this list predates the COVID-19 outbreak. U.S.S.G § 1B1.13 cmt. n.1. The examples are: (1) the defendant's medical condition is such that he suffers from a "terminal illness" or the condition "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover"; (2) "[t]he defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less; (3) the defendant's family circumstances include either "(i) [t]he death or incapacitation of the caregiver of the defendant's minor child or minor children" or "(ii) [t]he incapacitation of the defendant's spouse or registered

partner when the defendant would be the only available caregiver for the spouse or registered partner." *Id.*

Ms. Espejo argues that she qualifies for compassionate release under the circumstances presented. In her prior motion, with respect specifically to confinement, Ms. Espejo argued to the Court that her age, severe allergies, and arthritis, as well as other health issues, put her at risk for COVID-19 and that these conditions, along with her time spent in custody and conduct while in custody, supported her request for compassionate release (Dkt. No. 225). The government did not contest Ms. Espejo's representations regarding her age and health conditions; it just maintained that those conditions did not qualify Ms. Espejo for compassionate release (Dkt. No. 227, at 14-15). The Court understands that the Department of Justice takes the position that, under present circumstances, an inmate's diagnosis with a medical condition that the Centers for Disease Control has identified as a risk factor for COVID-19, and from which the inmate is not expected to recover, presents an extraordinary and compelling reason that may warrant compassionate release if other criteria also are met.

In more recent filings, Ms. Espejo relates to the Court her experience in incarceration, including but not limited to the following. Ms. Espejo claims that she "was in solitary confinement while housed at the Oklahoma Transfer Center," "in a cell by herself" from March 1, 2020 to May 14, 2020, and allowed only "30 minutes out of her cell every 48 hours for shower, email and telephone privileges" (Dkt. No. 237, at 1). Although she was set to be released to home confinement on May 14, 2020, the BOP "failed to quarantine [her] according to CDC guidelines, and at the last minute refused to allow her husband to pick her up when he reported to the BOP in Oklahoma City on the morning of May 14, 2020." (Dkt. No. 237, at 1).

As a result, Ms. Espejo maintains that on "May 14, 2020, [she] and another inmate were moved to the maximum-security housing unit in the men's unit of the Oklahoma Transfer Center for quarantine," "housed with men in adjacent cells," "not allowed hygiene items, not even a comb," and "experienced harassment from the men inmates housed adjacent to her cell." (Dkt. No. 237, at 2). Ms. Espejo alleges that she began experiencing panic attacks during her time at the BOP in Oklahoma, that those panic attacks have continued, and that she seeks treatment for anxiety and post-traumatic stress disorder as a result (Dkt. No. 237, at 2). The government does not refute Ms. Espejo's contentions with respect to these events (Dkt. No. 241, at 7).

Ms. Espejo requested counseling at the half-way house in September and December 2020, with no counseling being offered (Dkt. No. 237, at 2; Dkt. No. 242, at 3, 6-7). Ms. Espejo maintains that she received no response to her September or December requests, and the record includes no response to her September or December request for counseling. Further, although the government claims counseling should be available to Ms. Espejo (Dkt. No. 241, at 7), there is no record evidence to support the government's assertion. Ms. Espejo maintains that, if she is granted a reduction in sentence by the Court, "she would be able to pay a ten-dollar co-pay to the Court and attend counseling sessions with a professional counselor." (Dkt. No. 237, at 2).

In addition, Ms. Espejo represents that, prior to her incarceration, she was only six hours short of completing her master's degree and that, to complete that degree, she is required to complete one class "only offered in the Spring semester" and to complete an internship at a mental health facility that she cannot do while wearing an ankle monitor (Dkt. No. 237, at 2). Ms. Espejo explains that, the longer she waits to complete these requirements, the more credit hours she may need to pay for and complete again, due to the school's degree requirements (Dkt. No. 240). Ms. Espejo acknowledges that she has a substantial restitution payment to make, and she seeks this

degree to assist her in obtaining gainful employment to make payments toward that obligation. The government appears to rely on Ms. Espejo's spouse's income to claim that she is not in "dire straits" and maintains any delay would only be "inconvenient." (Dkt. No. 241, at 8).

Ms. Espejo asserts that her mother, who lives in another Arkansas town, is ill and that Ms. Espejo was not permitted to visit her mother while she was on home confinement (Dkt. No. 237, at 2). Further, Ms. Espejo explains that her mother also was not allowed to live with her without going through an approval process while she was on home confinement (*Id.*).

Ms. Espejo states that, after being removed from home confinement, she has been held at the Pulaski County Detention Center. The government contends that Ms. Espejo's return to confinement has "resolved" some of the issues raised by Ms. Espejo in her motion for compassionate release because she "will have access to mental-health treatment" and because it will not be necessary for her to run errands, have her mother reside with her, or participate in an internship (Dkt. No. 245, at 3). Ms. Espejo states, however, that she has been placed in a COVID-19 situation," has been placed in cells that have not been cleaned or sterilized for the COVID-19 virus, has an untreated "skin cancer issue" that needs immediate attention, is experiencing high blood pressure, is having anxiety and "continuous" panic attacks, and will not be able to see a mental health professional for "at least a month" (Dkt. No. 246, ¶¶ 2, 9, 10).

There is no record evidence that Ms. Espejo is a danger to the safety of any other person or to the community, and the Court has considered the appropriate 18 U.S.C. §3553(a) factors. Ms. Espejo remained on release in this case until reporting to serve her BOP sentence. She represents in her written filings that she maintained a good disciplinary record while in the BOP.

Having considered all appropriate factors, and having considered the entire record before the Court with respect to Ms. Espejo's requests for compassionate release, the Court finds that Ms.

Espejo is entitled to compassionate release, and the Court orders that she be released from the BOP as of 3:00 p.m. Central Standard time Wednesday, January 27, 2021, to begin serving her term of supervised release previously imposed. All standard, mandatory, and special conditions imposed on Ms. Espejo, including those imposed on her during her term of supervised release, remain in full force and effect (Dkt. No. 192; Dkt. No. 198; Dkt. No. 199).

It is so ordered this 26th day of January, 2021.

_____
Kristine G. Baker
United States District Judge