**FILED**
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

JAN **1 8** 2022

**TAMMY H. DOWNS, CLERK**
By: _____
                                    **DEP CLERK**

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**

| |
|---|
**UNITED STATES OF AMERICA**          |   **Case no. 4:14CR00201 KGB**

                                      |

                                      |   **DEFENDANT  LYNN ALISA**

                                      |   **ESPEJO'S MOTION FOR EARLY**

**v.**                                |   **TERMINATION OF SUPERVISED**

                                      |   **RELEASE, PURSUANT TO**

                                      |   **18 U.S.C. § 3583(e)(1)**

                                      |

**LYNN ALISA ESPEJO_____**  |


Defendant Lynn Alisa Espejo,  in propria persona,  moves this Court for early termination of her supervised release pursuant to 18 U.S.C. § 3583(e)(1). Defendant understands that early termination is supported by her probation officer, Victoria Fitzhugh,  because continuing to supervise the Defendant would not be an efficient use of the scarce resources of the United States Probation Office.

## I. INTRODUCTION

Congress has authorized this Court to terminate a term of supervised release "at any time after the expiration of one year of supervised release . . . if it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice." 18 U.S.C. § 3583(e)(1). Defendant was convicted of wire fraud, money laundering and filing false tax returns, and was sentenced to 45 months of incarceration, three years of supervised release, and restitution $819,040.41, to be paid at the rate of 10% of her gross income during the period of

1

supervised release. Defendant was released to supervised release on January 27, 2021, and therefore is eligible under the statute.[1] For the reasons discussed *infra*, the defendant's extraordinary success while on supervised release, the impediments which continuing supervised release imposes on her rehabilitative efforts, and the interest of justice warrant early termination of supervised release at this time, rather than requiring her to serve another two years of supervised release in this case. "Congress intended supervised release to assist individuals in their transition to community life." *United States v. Johnson*, 529 U.S. 53, 59 (2000). "Supervised release fulfills rehabilitative ends, distinct from those served by incarceration." *Id.*

## II. LEGAL STANDARD

The standard Congress has told this Court to follow is a discretionary decision based on the conduct of the defendant and the interest of justice. 18 U.S.C. § 3583(e)(1). The courts have followed two standards. In the past, many courts followed the "extraordinary circumstances" or "exceptionally good behavior" tests. See, *United States v. Lussier*, 104 F. 3d 32, 36 (2d Cir. 1997). Under the *Lussier* test, mere compliance with the terms of supervised release was insufficient to mandate early termination. However, more recently, courts follow the standards set forth in Monograph 109, Guide to Judiciary Policy, Vol. 8, Part E, § 380.10, Early Termination (2017 version). The Guide to Judiciary Policy is authored by the Judicial Conference and published by the Administrative Office of the U.S. Courts to provide supervision policy guidance to probation officers. Under § 380.10, the probation officer is encouraged to evaluate the feasibility of early termination of supervised release after completion of one year of the offender's term of supervised release:

---

[1] Although her sentence was originally scheduled to terminate on May 4, 2021, this Court granted Defendant's motion for compassionate release (document 247).

2

(b) Officers should consider the suitability of early termination for offenders as soon as they are statutorily eligible. The general criteria for assessing whether a statutorily eligible offender should be recommended to the court as an appropriate candidate for early termination are as follows:

(1) Stable community reintegration (e.g., residence, family, employment);
(2) Progressive strides toward supervision objectives and in compliance with all conditions of supervision;
(3) No aggravated role in the offense of conviction, particularly large drug or fraud offenses;
(4) No history of violence (e.g., sexually assaultive, predatory behavior, or domestic violence);
(5) No recent arrests or convictions (including unresolved pending charges) or ongoing, uninterrupted patterns of criminal conduct;
(6) No recent evidence of alcohol or drug abuse;
(7) No recent psychiatric episodes;
(8) No identifiable risk to the safety of any identifiable victim; and
(9) No identifiable risk to public safety based on the Risk Prediction    Index.

(c) The existence of an outstanding financial penalty *per se* does not adversely affect early termination eligibility as long as the offender has been paying in accordance with the payment plan.
(d) During the first 18 months of supervision, the appropriateness of early termination should be based on the offender's overall progress in meeting supervision objectives and should include an evaluation of all the circumstances in the individual case. Offenders with identified risks to community safety should not be recommended for early termination. However, the failure to meet other criteria listed should not automatically exclude an offender from further consideration.

Over the last year, the defendant has demonstrated that she is one of those

exceptional offenders who meet not only the new standards recommended by the Judicial

Conference, but the "exceptional circumstances/extraordinary compliance" standard as well. The

USPO agrees with this assessment.

## III. THE DEFENDANT AMPLY MEETS THE REQUIREMENTS FOR EARLY RELEASE

**A. The interests of justice will be served by early termination due to defendant's concrete and immediate need for relief.**

3

As will be elaborated on below, defendant has used her time in supervised release to complete her master's degree in Clinical and Mental Health  Counseling at Southern Arkansas University, and she is preparing for the national written and oral examination to become a licensed professional counselor under the laws of the state of Arkansas. However, pursuant to Rule 5.5 of the Arkansas Board of Examiners in Counseling and Marriage & Family Therapy (accessible at https://abec.statesolutions.us/wp-content/uploads/2020/06/2020-Rules-Final-6-22-20.pdf)

> Applications from individuals who are under investigation, sanction, probation, disciplinary supervision, revocation, or rehabilitation by counseling, psychology, social work, or other related Boards or credentialing bodies will not be considered for an Arkansas license until documentation from the issuing body is received that the sanctions are removed or completed.

Therefore, until the termination of her supervised release, the defendant will be unable to sit for the exams necessary for her to begin her career. Due to her age (57) and her criminal record, she has only been able to obtain minimum wage employment since completing her degree. (Her offense of conviction is not an impediment to her licensure as a counselor under Arkansas Code Annotated §17.27-101.)[2] This impedes her rehabilitation and reintegration into society.

**B. Defendant has satisfied all the requirements mandated by the Judicial Conference for early termination, as well as under the *Lussier* standard.**

Defendant had a perfect disciplinary record while incarcerated and continuing during her term of supervised release. She did not commit any violent or sex offense, is not a danger to the community, nor did she have an aggravated role in any serious fraud case. She has complied

---

[2] In Arkansas, as most other states, an applicant first receives a temporary license entitling her to practice under the supervision of a licensed counselor. After completion of 3,500 hours of such supervised work, she can then receive a permanent license.

with the restitution payment obligation of 10% of her gross income. Although she was excused from the work requirement imposed by the Standard Conditions of Supervision due to her educational efforts, she voluntarily paid a nominal $50 per month from February 2021 to November 2021. Commencing in December 2021, the defendant paid $143, based on an assumed minimum wage job at 30 hours per week. In January 2022, the defendant began working at a minimum wage job (the only job available due to her criminal record), and paid $150 toward her restitution.  She will continue to comply with her restitution obligations.

Defendant has demonstrated extraordinary effort in her rehabilitation and reintegration into society. Prior to her incarceration, she had completed all but a handful of credits necessary for her master's degree, and following her release, she immediately completed those required classes as well as an additional course prerequisite for licensure. She also completed the mental health internship required for graduation, and after graduation in April, 2021, she continued to volunteer at that internship because she was the co-facilitator for a court ordered domestic battery group therapy class and wanted to see the group through to the end of all sessions in September 2021.  The Defendant's internship supervisor highly praised the defendant's abilities and provided the letter attached as Exhibit 1 hereto.

But this is not all.

Defendant has been and continues to volunteer at her church with Share Your Lunch, a program which feeds hungry people and school children, as well as one on one with the local homeless population.  She is scheduled to start volunteering with a women's rehab facility as a mentor later this month.  This mentorship will utilize the skills obtained in her graduate classes (See Exhibits 2 and 3).

She has also spent countless hours working as a voice for criminal justice reform (See Exhibit 4) and advocating for those released under the CARES Act, (See Exhibits 5 and 6) and has been quoted in many news articles due to her advocacy. [3]

She has volunteered with criminal justice advocate organizations, and was recently invited by FAMM to go to Washington, DC, to attend an event sponsored by FAMM, the ACLU, Color of Change, and Dream Corps Justice, where she was able to speak about the mental health issues pertinent to incarceration. A video of this event that includes a portion of an interview with the defendant is accessible at https://www.youtube.com/watch?v=udJzI7nFNxc. The Defendant also appeared in a Justice Round Table video that was played before Congress to help bring attention to the possible return to prison of those released under the Cares Act accessible at https://www.youtube.com/watch?v=5yVwDYh2_X0.

Defendant is currently scheduled to begin working with the Dream Corp Justice organization on their Ban The Box Arkansas campaign for 2022, and has been approached by Van Jones' Reform Alliance and the National Association of Criminal Defense Attorneys regarding similar use of the defendant's story in upcoming legislative efforts.

She is currently applying for a doctoral program in her field and plans to pursue that part time while working with a temporary license.

This is the Defendant's only conviction in a long and law-abiding life. Her post-incarceration life stands out from the crowd. She has used her time since release and during her supervised release to reintegrate into society and contribute to others (See Exhibits 7 and 8),

---

[3] See, for example, Forbes Magazine, February 6, 2021 article by Walter Pavlo, https://www.forbes.com/sites/walterpavlo/2021/02/06/inmate-on-home-confinement-spoke-out-on-bureau-of-prisons-policy-and-ended-up-back-in-prison/?sh=48bc51f855ba;

building upon the experiences she had while incarcerated. Finally, she enjoys the continued

strong support of her spouse, friends (See Exhibit 9), and her extended family.

**C. The delayed implementation of the First Step Act has caused an**
**unwarranted disparity in sentencing as to Defendant, which disparity can be remedied in**
**part by early termination.**

Congress passed the First Step Act of 2018 (the "FSA") on December 21 of that

year. In relevant part, the FSA provides that eligible prisoners (those who have not committed

any one of several enumerated offenses and are not subject to an order of removal) can earn

"time credits" by successful completion of evidence-based recidivism reduction programs or

productive activities. Under the PATTERN scoring system developed pursuant to the FSA, the

Defendant was classified as having "Minimum" risk of recidivism at all her unit team reviews,

and therefore was entitled to receive 15 days of time credits for every month of successful

participation commencing on December 21, 2018 through January 27, 2021, when her term of

supervised release began (Exhibit 10). The time credits are to be utilized to transfer prisoners

either to "pre-release custody" (halfway house or home confinement) or, for Minimum risk

prisoners such as the Defendant, to early release to supervised release, at such time as the amount

of time credits are equal to the time left until prisoner's projected release date.

While incarcerated, the Defendant completed a year of cosmetology programming

(Exhibit 11), took classes recommended by her case manager at FPC Bryan, worked as the

ReEntry Clerk in the ReEntry Department, and as a Cosmetology Clerk in the Cosmetology

School, and she taught classes to other inmates on QuickBooks, self-esteem, and women's value

and worth.   All these activities counted as programming under the FSA, and the Defendant

would have received time credits for these activities, as well as for the productive activities

7

during her half way house time with City of Faith for the work she did at her church and at Bobbi
Patterson Law Firm.

The time period of December 21, 2018 to January 27, 2021 comprises 25 months.
Had the Bureau of Prisons (the "BOP") timely implemented the FSA, Defendant would have
effectively reduced her period of incarceration by one- third, or after about 16 months—by May
4, 2020. She would have been transferred to supervised release on that date—almost nine months
earlier.

The BOP did not timely implement the FSA, taking the position that it need not be
implemented until January 2022, and otherwise severely limiting the applicability of the FSA.
The BOP failed to release a single prisoner based on the earning of time credits absent a court
order.[4] In a November 2021 report, Department of Justice Inspector General Michael Horowitz
wrote "We are concerned that the delay in applying earned time credits may negatively affect
inmates who have earned a reduction in their sentence or an earlier placement in the
community." As a result of this criticism and court cases holding that the delayed
implementation was improper, the Department of Justice issued a press release reversing course
on January 13, 2022. [5] Following this press release, the BOP began releasing all prisoners with
one year or less on their sentence to supervised release.

---

[4] US Senate Majority Whip Dick Durbin, who was one of the original cosponsors of the FSA, recently called for the
replacement of BOP Director Carvajal, alleging that Carvajal has "overseen a series of mounting crises, including
failing to protect BOP staff and inmates from the COVID-19 pandemic, failing to address chronic understaffing,
**failing to implement the landmark First Step Act**, and more. (emphasis added). See
https://www.durbin.senate.gov/newsroom/press-releases/durbin-calls-on-ag-garland-to-dismiss-bop-director-
carvajal. These senators criticized the BOP for this failure in a May 5, 2021 letter,

[5] See, Department of Justice Press Release, and link to final rules, accessible at
https://www.justice.gov/opa/pr/justice-department-announces-new-rule-implementing-federal-time-credits-program-
established

Had the BOP timely implemented the FSA, Defendant would have been released 9 months earlier to supervised release, and would have now completed 21 months of supervised release. This represents a sentencing disparity as compared to those other offenders who, because they were sentenced later, or because their sentences were longer than Defendant's sentence, have enjoyed the benefits promised to them by the FSA. Defendant faithfully participated in programming and productive activities in reliance upon the FSA, but she failed to receive any of the promised benefits. The only remaining remedy for her is early termination of supervised release.

## IV. CONCLUSION

Defendant has successfully completed 12 months of supervised release and has done so in an extraordinary manner. Her conduct in supervised release demonstrates that she has the ability to maintain a stable and a law-abiding life. Continued supervision is unnecessary and would be a waste of resources, as well as be counterproductive to her reintegration into society. *See United States v. Pregent*, 190 F.3d 279, 282-83 (4th Cir. 1999) ("The plain language of the statute illustrates that § 3583(e) . . . allows a conduct-based inquiry into the continued necessity for supervision."). Terminating her supervised release at this time would satisfy Congress' intent that "supervised release be used to assist individuals in their transition to community life and to fulfill rehabilitative ends distinct from those served by incarceration."

For all these reasons, the Defendant respectfully asks this Court for early termination of her supervised release, commencing on January 27, 2022.

9

Respectfully submitted on January 18, 2022.


Lynn A. Espejo

9309 Millers Pointe Court.
Sherwood, AR 72120

lynnespejo@sbcglobal.net

501-772-6321

## CERTIFICATE OF SERVICE

The undersigned certifies that she served the foregoing Motion by email to jamie.dempsey@usdoj.gov, electronic filing with the Court, and by mailing it, first class mail prepaid, to the government in an envelope addressed to Jonathan Ross, US Attorney, US Attorney's Office, 425 West Capitol Avenue Suite 500, Little Rock, Arkansas 72201, on the date set forth below.


Lynn A. Espejo
January 18, 2022



Conway Counseling & Wellness Center, PLLC

855 South German Lane, Suite 1

Conway, AR 72034

Office 501-358-6606

Fax 501-325-5554

www.conwaycwc.com

This is a letter of reference for Lynn Espejo. Mrs. Espejo served as an intern at Conway Counseling and Wellness Center in 2020-21. I was her field instructor. During her tenure with us, her performance was exemplary. The main areas of strength that I personally observed were her: 1.) professionalism; 2.) competence; and 3.) compassion.

1.) Mrs. Espejo was self-motivated, and thus able to manage her schedule efficiently, and perform her assigned objectives with minimum supervision. She was consistently prompt with her appointments, and her documentation was accurate, objective and reliable.
2.) Mrs. Espejo demonstrated adroit utilization of her education, training, and life experience for the benefit of her clients. She was able to quickly form a therapeutic alliance with them, which allowed for effective interactions.
3.) All the education and training in the world mean little if a client does not feel that his or her therapist has his or her best interests at heart. Mrs. Espejo is a warm, caring person; and it is genuine.

These and other attributes made Mrs. Espejo an asset to our organization, and also benefitted our local community at large. I believe that Mrs. Espejo has much to offer in the years ahead and has already begun to prove herself to be a credit to the counseling profession. Without any reservation, I consider it to be a privilege and an honor to give her my highest recommendation.

Sincerely,

John C. Knott, LCSW

| | | |
|---|---|---|
| Ayisha Canant, PhD | Shane Baskins, LPC | CariAnn Bergner-Moore, PhD |
| Charles Cole, LPC | Heath Evans, SW | Channing Hall, PMHNP |
| Bradley Hays, LPC | Katherine Henkel, LCSW | Sam Hernandez, APRN |
| Alice Keener, LPC | John Knott, LCSW | Amber McKenzie, LPC |
| Matthew Reel, LCSW | Micah Rowland, LPC | Adam Steinfeld, APRN |
| Tracie Wells, LPC | Summer Westerberg, SW | Christine Wilson, LPC |

Exhibit 1



The Honorable Kristine Baker:

It is my pleasure to recommend that Lynn Espejo be released from probation.

Since her release from prison, Lynn has been an exemplary citizen and a valued member of our church family.  She and her husband, Pancho regularly volunteer for community service events and are faithful in ministry and service.

Lynn serves as a lead for Share Your Lunch – a feeding program that has provided 10,000 bags of groceries for needy families and over 500 food backpacks a week for elementary school children.  In addition, she reaches out and ministers to the homeless.  In addition, she is volunteering with a ministry to women who are trying to escape addiction.

I am happy to discuss Lynn and her qualifications for release if you should so desire.

Pastor Rod Loy
501.758.8553

First Assembly of God
4500 W. Commercial
North Little Rock, AR 72116
501.758.8553
firstnlr.com

Exhibit 2



December 16, 2021

The Honorable Judge Kristine Baker:

I am writing this letter on behalf of Lynn Espejo.  I have known her and her family for the past 7 years.  They have been strong members of First NLR, serving others and giving generously of their time and energy.

Lynn has helped lead our "Share Your Lunch" Ministry, providing bags of groceries to the hungry and food insecure of our city.  She weekly serves to organize the food closet, bag groceries, and deliver them to our stations so people can receive free food in their time of need.

She has also volunteered many hours doing computer work, filing, and other jobs in our church office.  She has also worked many hours with our homeless ministry and countless special events.

Lynn also is beginning to serve at New Hearts Ministries as a mentor to ladies who are finding freedom from addiction and substance abuse.

We are so thankful for Lynn, her heart, and her faithfulness.

Sincerely,

Brian Dollar
Associate Pastor, First Assembly of God
4500 West Commercial Dr.
North Little Rock, AR 72116

First Assembly of God
4501 Burrow Drive
North Little Rock, AR 72116
501.758.8553
firstnlr.com

Exhibit 2

The Honorable Judge Kristine G. Baker
U. S. District Judge of Eastern District of Arkansas
500 West Capitol Avenue, Room D469
Little Rock, AR 72201

Re:  Lynn Alisa Espejo 26304009 Case No. 4:14-cr-00201-KGB

Dear Honorable Judge Baker,

I have known Lynn Espejo since 2018 through my daughter who also served at FPC Bryan. However, I have really gotten to know and admire her since then with our common interest in reforming the criminal justice system.

I have watched Lynn achieve her dream of graduating with an MS in Clinical & Mental Health Counseling, blogging her story "Inside The Walls", speaking on the radio about desperate issues behind bars with other former inmates, speaking to reporters, and going to Washington DC in November to push the "Keep Them Home" campaign. I have spoken to her many times about her passion for justice for the incarcerated. She works often through the night helping others fill out compassionate release papers, etc for those who are not able. She loves these women who have no voice! She is always available to listen to the stories of those who until that moment, had nowhere to turn! She fills their hearts with hope and her faith in God.  There is no one who cares or is more motivated than Lynn Espejo!

Lynn never gives up when anyone is unjustly accused because she knows from personal experience how debilitating that can be. She is an excellent public speaker and her passion is evident! I have never met anyone who has such compassion for her fellow citizens. She needs to be free from probation in order help the ones who need her so desperately.

Thank you for this opportunity to advocate for a truly deserving person, Lynn Espejo!

Sincerely,

Lynne Williams
12500 S. Western Ave.
Apt 42
Oklahoma City, OK 73170
(407) 256 0045
williamslynner@gmail.com

Exhibit 4

January 16, 2022

Honorable  Judge Kristine Baker,

My name is Ricardo Gonzalez.  I want to take the time to express to you how crucial knowing Lynn Espejo was at a low point in my life.  Last May my fiancée who was 6 months pregnant at the time, was wrongfully violated from the Cares Act, and taken back to prison.

Upon exhausting all avenues while searching for help, I happened to come across Ms. Espejo's story which was similar to what my fiancée was going through. I immediately reached out to her in hopes to get help and guidance. To my surprise I heard back from her right away. Since our first conversation she has been instrumental in advocating for my fiancée, and has never hesitated to provide vital information to my family, and speak out on my fiancée's behalf.

Ms. Espejo has been honest and shows that she is genuine and fully invested in the people she helps advocate for.  She is pure of heart.  During the lowest point of my journey she also helped me overcome personal obstacles, and I never felt alone because she was in my corner. She put on a virtual baby shower for me and I received gifts from my Amazon list for the baby, which was a great help.  When I needed to travel more than 8 hours to see my son in NICU after he was born, she rallied donations for  me to make travel possible.  Within hours, total strangers had sent me money due to her call to action.  She always made herself available to hear me, and showed professionalism with her experience in mental health counseling. She was able to explain how it feels to be incarcerated when I didn't understand what my fiancée was going through.

A video I made in August 2021, at one of the lowest times in the process with what has happened to my family, can be watched at https://www.youtube.com/watch?v=5jElA9x55g0&t=240s.  In the video, I talk about Ms. Espejo's help to my family and the kind of person I know her to be.  I believe the video explains better what Ms. Espejo means to my family, than any words I can put on paper.

I hope that she will be awarded the opportunity to pursue her career in counseling, as well as advocating for those that fear they do not have a voice, as she has been a great asset to me, my fiancée, and my newborn son.

I would highly recommend Ms. Espejo to others who are going through what we went through, especially those in need of counseling.

Please feel free to reach out to me should you require any other information.

Sincerely,

Ricardo Gonzalez

830-308-1300

Exhibit 5

January 16, 2022

Honorable Judge Kristine Baker

RE:  Lynn Espejo

Dear Honorable Judge Baker:

I am writing in regards to the above-named individual, who is currently on supervised release.

Lynn has been a proponent for the rights of individuals who, having been released through the compassion of the CARES Act, were disenfranchised by a system that seemed bent on returning them to their former states of incarceration. On a personal level, Lynn advocated for my sister and our family. She took a personal interest in my sister's tragic medical neglect, and spent countless hours devoted to making certain we were seeking proper avenues of support for our family. She has done no less for the other women for whom she's advocated in the past.

I therefore ask that you consider releasing Lynn from a supervised state so that she might achieve her long sought-after counseling license.

Lynn takes the emotional and physical needs of others into consideration on an hourly basis. She is compelled by a feeling of justice, and ensuring that nobody feels alone, excluded, alienated or marginalized. Her work with other individuals struggling with their return to the world from prison is priceless and should not be impeded by a stipulation of supervision.

Your utmost attention is appreciated and regarded,

Shannon Lawson
Shannon Lawson, MS, MBA, PhD
Lawson Ventures
Hot Springs, Arkansas
(501) 318-4638

Exhibit 6

# STILL STANDING MINISTRY

January 14, 1022

**US District Judge Kristine G. Baker**
**500 West Capitol Avenue, Room D469**
**Little Rock, AR 72201**

Your Honor:

I am writing this letter on behalf of Lynn Espejo, a woman whom I am proud to call friend.

I became acquainted with Lynn during my incarceration at FPC Bryan. I self-surrendered to FPC Bryan on September 1, 2017, for a single charge of mail fraud. I first met Lynn at the chapel where we worshipped together.

I took a position in the education department as clerk for the Supervisor of Education. During my tenure there, I had several occasions to interact with Lynn, as she worked as a clerk for the Reentry Supervisor. We had several things in common, such as age, education, family structure and religion. My position transformed to a dual position of working for education and reentry. It was during this time that I worked with Lynn daily.

It was during this time that our office became a haven for those overcome by grief. We had women there on a daily basis for prayer and encouragement. It was an honor to see her put her counseling education to use as we tackled the trauma that many of the inmates suffered from. Her empathy was evident as she put her own struggles behind to help others. It became apparent that Lynn had compassion for these females, and had the background to counsel these ladies. Our office became full of women seeking guidance on how to reenter society. Lynn was instrumental in offering advice to the ladies on how to get a job, how to avoid triggers regarding addictions and restoring relationships.

208 Garvin Street, Pickens, SC  29671

(864) 397-0031                                                                 Page 1

Exhibit 7

When Lynn found out that I was of the same religious affiliation as she was, she began to share her pastor's notes with me. When I shared how much they meant to me, she had her son, an associate pastor, place me on the mailing list. I began to receive sermon notes each week. Her pastor wrote a letter to me encouraging me. She shared numerous books with me through the years.

We had several conversations during our time sharing an office. On several occasions, we spoke about our hopes and dreams for our release. Lynn spoke about her desire to work for criminal justice reform. Little did we know that three years later she would be in Washington D, C. to do just that. I know that she will continue to be a voice for those behind prison walls. This is her passion.

Lynn recognized the importance of being able to start your own business and promptly began teaching Quickbooks to those desiring to follow that path. Not only did she teach the class but spent countless hours tutoring those who needed extra help.

When the Reentry Department was taken over by a new supervisor, they put an end to doing resumes for the women leaving. Lynn took it upon herself to come over in her free time and assist those leaving with resumes. She also coached them on tips for interviewing and how to properly dress for an interview. She did mock interviews with them to assist them in addressing the felony question. Her heart was always about helping others.

It was not unusual to see her spending hours walking the track with others to help them relieve stress. She was a constant supporter for those who needed assistance. Even in prison she advocated for the less fortunate.

Upon her release, it was such an encouragement to see Lynn begin to advocate in the criminal justice reform community. She spoke on numerous pod casts and zoom calls. Her story was one of victory not victimization. You could not help but feel uplifted after hearing her story.

I was excited to see her advocacy begin to reach national platforms. She has worked with such organizations as FAMM and REFORM. She has been invited to speak on numerous occasions. She recently traveled to Washington D.C. to speak about those released on the CARES Act who were scheduled to return to prison after the pandemic. It was through the efforts of the criminal justice community, aided by Lynn that the policy was changed.

208 Garvin Street, Pickens, SC  29671

Like Queen Esther in the Bible, it seems to me, that Lynn encountered this journey for such a time as this. As the Queen advocated for her people, so Lynn has encouraged prisoners, far and wide. While many would want to put these circumstances behind them, Lynn brought them into the light. What a brave woman she was, when confronted by the Bureau of Prisons to be silent, she stood up and utilized her First Amendment rights to speak out.

I ask that you grant her request to be released early from supervision, so that she can freely meet with those being released from prison. She has expressed an interest in working with a support group for families of the incarcerated. With her community supervision completed she will be free to contact these families.

I can think of no one more worthy of being granted early release.

Respectfully,

*Retta Sundblad*

Retta Sundblad

208 Garvin Street, Pickens, SC  29671

Honorable Judge Kristine Baker,

My name is Cecilia Cardenas and I am writing today to tell you how I witnessed, and how I, myself, have been impacted by Lynn Espejo's dedication and passion for standing up for individual's rights when she sees something amiss.

Before I actually met Lynn at FPC Bryan, I had already heard so much about her. She was known on the compound as the woman to go to if you weren't sure if a situation you encountered had been handled correctly or fairly. She would go out of her way and study BOP policies and provide others with the accurate information so they could defend their rights. She would also counsel women who had broken rules to do better. Her ability to exhibit courage in the Bureau of Prisons while she was an inmate by helping herself and others stand up for themselves was unmatched and she was retaliated against by staff many times for doing so.

It is easy to succumb to your new reality of being mistreated and degraded while incarcerated. It happened to many of us. But Lynn was not going to have it. She educated herself on her rights and took initiative on protecting herself and others from the mistreatment. As others began to see Lynn's ability to make change, when she stood up in the correct way by using Administrative Remedies, she became largely sought after as a confidant and counselor by all.

Lynn tackled issues such as Prison Rape Elimination Act violations when staff would have sex with inmates, when male staff started being allowed to do shower checks, Lynn stood up against it as she knew that many women had been sexually abused or raped. Using her voice, Lynn was able to get the male shower checks stopped within a matter of weeks using policy as her guide. She stood up for transgender and gay women when we had a guard that would degrade them over the loud speaker and at our daily counts. Later that guard was fired and I have no doubt that Lynn Espejo's documentation and write ups against him was part of the reason he is no longer allowed to work with women.

I traveled with Lynn on the US Marshal air lift, commonly referred to as ConAir. I stood by Lynn in the frigid February air wearing thin, short sleeve clothing on a tarmac surrounded by US Marshals with lots of guns as we shivered to stay warm. The Marshals and BOP staff were wearing big coats, gloves, and hats, but we were not even given a jacket. Lynn should have never been placed in that situation because she was community custody, but even in the midst of it, Lynn was focused on the changes she wanted to make so other women never had to experience what we did that day. See Lynn had requested to be transferred to Carswell camp but instead was being transferred to Aliceville. I have no doubt this was done as punishment toward Lynn by BOP staff for her standing up for women's rights. Lynn was not deterred. Instead she saw it as another journey that God was leading her on, and a way to meet and help other ladies.

Since Lynn has been home, she has become a voice for so many of us that have suffered injustice while incarcerated. She truly is an inspiration and a mentor to many including myself. Women still seek her out. Her ability to share information, encourage women to stand up for themselves, and her dedication to others is obvious to anyone who has ever encountered Lynn.

When I released from incarceration and had questions or concerns, Lynn became my counselor, confidant, and true friend. I believe her early release from supervision will truly allow her to fulfill her dream of getting her license to be a therapist and begin impacting even more lives.

Exhibit 8

Having a therapist that has been through the same struggles that we have gone through, and who has become successful in being a voice for change, maintaining integrity, and encouraging women to be better, would be astronomical.  There is nothing more reassuring than witnessing someone before you make it out of incarceration, already helping others.

To the formerly and currently incarcerated, Lynn is more than just a mother, wife, daughter, and ex-inmate.  She is a symbol of hope in the darkness, change in a broken system, and a fighter for equality and fairness when you forget you have rights.

Your honor, allowing Lynn a chance at early release from supervision is so much bigger than just helping one person.  You would be helping thousands and possibly hundreds of thousands.  Lynn already has a large platform.  From her podcast, to her advocacy articles that get written in the Midnight Report, to her quotes used by reporters in the Washington Post and other large publications, and her blog *Inside The Walls*, she is already recognized as a go to person for help.  It is very common to hear that people reach out to Lynn or go to Lynn's blog to get caught up on what is going on in criminal justice reform and what changes are being made.  She also runs several social media groups for support of those who have been incarcerated and families of currently incarcerated individuals.  She gives countless hours of her time to help others.

We know the system is broken, it is time for change, and Lynn is doing everything in her power for no compensation whatsoever because it is her passion to be at the forefront of that change.


Thank you,

Cecilia Cardenas

Judge Baker,

I am writing you on behalf of Lynn Espejo, asking if it would at all be possible to end the remainder of her probation period. I have written you before on behalf of Lynn in a letter reflecting her character before her prison sentence. These past few years I haven't seen anything less than resilience in the face of adversity from Lynn. The challenges that she has faced during that time and the amount of courage it took to follow through with her prison sentence, I will never understand. Lynn is courageous, and her gift is that she gives that same courage to everyone that she touches. That courage that she can give to others should be spread as far as it can, and that is why I am asking you to end her probation period early. If her probation were to come to an end, she can finally sit for her counseling license. This is a dream that has been a true passion of hers for as long as I can remember, and it would be a great honor to aid her in any way that I can.

Lynn Espejo has made impacts on my life that have bettered me as a person. Our families have known each other for many years, my parents went to church with her and her husband, and I went to school with two of her sons. I am now almost 26 years old, and I have been involved with this family for probably half of my life or more. There hasn't ever been a moment of anything other than comfort and security when I am around Lynn, and I know she can bring those same comforts to others who will receive counseling from her.

There are two specific times in my life that I want to reflect on in this letter where Lynn directly impacted my life. I will tell you about these times and then I will close with an overall reflection of who she is to me and who she is in my life.

When I was in high school, I remember getting a text from my mom of this funny looking dog, a French Bulldog. Little did I know that the funny looking dog would be mine and that precious angel would get me through some of the worst years of my life. I responded to my mom, 'I NEED HER." My mother, Kathy Skrdlant, took me the next day to Lynn's house to get that sweet funny looking pup, Izzy. Being the animal lover and the kind person that she is, Lynn had taken in a dog from a friend who had a job that required travel and it wasn't fair to Izzy. Instead of putting her in a shelter, Lynn wanted to rehome the dog using her own process. After visiting for a while, my mother and I left leash-in-hand and rode off into the sunset with literally the most precious gift I would ever receive from anyone. It may sound silly, but without Izzy, I am not certain I would be here. That poor old girl saw me ugly cry, acted silly when I was angry at the world to get me to laugh, pushed herself into me when I would have panic attacks, and she gave me a reason to stay here. Izzy has been gone for a couple of years now, and almost every time I think of her and the love she made me feel, I think of Lynn. Lynn is at the root of that companionship that I cherished so much with that dog. I wish that I had the words to even describe to you how grateful I am for Lynn, but I am finding that there really aren't words for it. The best I can hope for is that you, Judge Baker, at some point in your life have loved an animal with all your heart, that you would understand why I am expressing so much gratitude towards

her. She gave me a gift I don't think anyone will ever be able to give me again.

I am recently married to a young woman I have been dating for six years now. When wedding planning was going on and we were finally getting everything set in stone to be married this past October, Taylor, my wife, and I started trying to decide who would do the honor of marrying us. We didn't want someone we didn't know to do something as meaningful as unifying two souls, and not being apart of a congregation of any kind limited us in that area.

Exhibit 9

When the topic came about, the first person in my mind to do such a task was Lynn. As a reminder and mentioned previously years ago when I wrote my first letter to you, I am transgender (ftm), and I am very open about it. While I live a life that others may not understand or agree with, I am not scared by what others think or say, but I am always cautious about it to stay safe. Lynn has been a big advocate for the LGBTQ+ community, so thinking of her as the one who would get to lead the ceremony of my marriage felt very safe, comfortable, and easy. So, we asked and of course, she said yes. On October 28, 2021, my wife and I were married by Lynn. We were given the honor of a lifetime by being able to call on someone as pure, kindhearted, thoughtful, smart, and such a humble person as Mrs. Lynn Espejo. It was on this day too that she gave me another gift that I wouldn't ever be able to receive from anyone else in the world, a priceless moment with an abundance of love in all ways comprehensible.

There are certain people in this world that have gifts. As you have read, these gifts could be spontaneous dog rehoming or letting love rain over two people as they celebrate each other. Those gifts could be the guidance that has been given to me from Lynn in my time in college when I call her with crazy questions about my Philosophy homework. Those gifts could be the way she brought so much light to helping the homeless in our communities. Those gifts could be her spreading the word of her church and how they help the families within the church and out of the church. Or maybe, it isn't the gifts that Lynn has to give, but it is that SHE is the gift. As I prepare to end this character reflection, I ask respectfully and humbly for you to consider releasing Lynn from her probationary period, Judge Baker. Should her probation end and she is given the chance to sit for her counseling license, I am certain that she will bring all the good that she has to the table in all areas of her counseling practices. She is a woman who has spent her days bettering herself so that she may be the best version of her not only for herself but for those around her. As someone who suffers from intense anxiety and suffered from chronic depression in my youth to the point where I considered suicide, the world needs more Lynn Espejo's. It is because of her and people like her that myself and others like me can find light in the dark places of our worlds. Being a counselor was what Lynn was put on this Earth to do. She was meant to hold the burdened hearts of others carefully in her hands because these hearts that she will hold are so fragile, and only she has the gentle yet steady hands to mend them.

With everything going on in the world today, it is a comfort to know her and her heart. There are so many more stories I could tell and so many more examples I could give. Please know that Lynn would be such a wonderful counselor and my heart overflows with excitement for her to have the chance to achieve these dreams. Judge Baker, I wish you wellness and safety during these times and I hope you know how much I appreciate you for taking the time to read my stories of Lynn and how she has lifted me up and been overall just a true joy to know and love.

Sincerely,
Nicholas Parks

1/13/2022

# THE FIRST STEP ACT OF 2018: Earned Time Credits
**Sentencing Resource Counsel for the Federal Public and Community Defenders (updated Nov. 2019)**

## Important Dates

- **January 2020:** BOP to post full list of approved programs on www.bop.gov

- **January 15, 2020:** BOP to complete initial risk and needs assessment for each prisoner and "begin" to assign programming

- **January 15, 2022:** BOP must provide evidence-based recidivism reduction programs or productive activities for all inmates.

*See* 18 U.S.C. § 3621(h); Dep't of Just, *The First Step Act of 2018: Risk and Needs Assessment System*, at 71.

## Incentives

1) Phone & visitation privileges

2) Transfer closer to home

3) Additional rewards developed by BOP (commissary, email, preferred housing units, etc.)

4) Earned Time Credits (ETCs)

*See* 18 U.S.C. § 3632(d)(1) – (4)

## Acquiring "Earned Time Credits" (ETCs)

All eligible persons: earn **10 days** of ETCs for "every 30 days of successful participation in evidence-based recidivism reduction programming or productive activities"

Persons in min/low risk categories who, "over 2 consecutive assessments"* have not increased their risk category shall earn "an **additional 5 days** of time credits for every 30 days of successful participation in evidence-based recidivism reduction programming or productive activities"

*Persons who "successfully participate" in programming shall receive reassessments "not less often than annually." Persons in medium/high risk categories who are less than 5 years from release shall receive "more frequent" reassessments.

*See* 18 U.S.C. § 3632(d)(4), (5)

## Using "Earned Time Credits" (ETCs)

**ETCs can be used when accumulated credits are equal to remainder of prison term.**

For **prerelease custody** (home confinement or RRC):
(1) Min/Low risk for last 2 reassessments; **or**
(2) Warden approval after determining (a) no danger to society; (b) good-faith effort to lower recidivism risk through programming; and (c) unlikely to recidivate

For **supervised released** (not to exceed 12 months):
(1) Min/Low risk for last reassessment; **or**
(2) Warden approval after determining (a) no danger to society; (b) good-faith effort to lower recidivism risk through programming; and (c) unlikely to recidivate

*See* 18 U.S.C. § 3624(g)

## Ineligible for ETCs

If "serving a sentence for a conviction" under any of the following:

- 18 U.S.C. § 32
- 18 U.S.C. § 33
- 18 U.S.C. § 36
- 18 U.S.C. § 81
- 18 U.S.C. § 111(b)
- 18 U.S.C. § 113(a)(1), (7), (8)
- 18 U.S.C. § 115, except threats
- 18 U.S.C. § 116
- 18 U.S.C. § 117
- Ch. 10 (biological weapons)
- Ch. 11B (chemical weapons)
- 18 U.S.C. § 351
- 18 U.S.C. § 521

- 18 U.S.C. § 751
- 18 U.S.C. § 793
- 18 U.S.C. § 794
- Ch. 39 (explosives), except § 836
- 18 U.S.C. § 842(p) if weapon of mass destruction)

- 18 U.S.C. § 844(f)(3), (h), (i)
- 18 U.S.C. § 871
- 18 U.S.C. § 879
- 18 U.S.C. § 924(c)
- 18 U.S.C. § 1030(a)(1)
- 18 U.S.C. § 1091
- Ch. 51 (homicide) except §§ 1112, 1113 (att. manslt.), 1115, 1122
- Ch. 55 (kidnapping)

- Ch. 77 (slavery/peonage) except §§ 1593 – 1596
- 18 U.S.C. § 1751
- 18 U.S.C. § 1791
- 18 U.S.C. § 1792
- 18 U.S.C. § 1841(a)(2)(C)
- 18 U.S.C. § 1992
- 18 U.S.C. § 2113(e)

- 18 U.S.C. § 2118(c)
- 18 U.S.C. § 2119
- Ch. 105 (sabotage) except § 2152
- Ch. 109A (sex abuse)
- 18 U.S.C. § 2250
- 18 U.S.C. § 2251
- 18 U.S.C. § 2251A
- 18 U.S.C. § 2252
- 18 U.S.C. § 2252A
- 18 U.S.C. § 2260
- 18 U.S.C. § 2283
- 18 U.S.C. § 2284
- 18 U.S.C. § 2291 if sub. risk of death/SBI
- Ch. 113B (terrorism)
- 18 U.S.C. § 2340A
- 18 U.S.C. § 2381
- 18 U.S.C. § 2442
- 18 U.S.C. § 3559(c)(2)(F) if +1 year imprisonment and if certain prior convictions
- 42 U.S.C. § 2077(b)
- 42 U.S.C. § 2122
- 42 U.S.C. § 2131
- 42 U.S.C. § 2274
- 42 U.S.C. § 2275
- 42 U.S.C. § 2284
- 49 U.S.C. § 60123(b) if sub. risk of death/SBI
- 21 U.S.C. § 841(b)(1)(A-C) if death/SBI resulted
- 8 U.S.C. § 1326(b)(1), (2)
- 8 U.S.C. § 1327
- 8 U.S.C. § 1328
- 50 U.S.C. § 4611 et seq.
- 50 U.S.C. § 1705
- 50 U.S.C. § 3121
- 21 U.S.C. §§ 841(b)(1)(A)-(B) or 960(b)(1)-(2) if for **fentanyl**/analogue

**Court-found ineligibilities:**
- 21 U.S.C. §§ 841(b)(1)(A)-(B) or 960(b)(1)-(2) if **heroin** and court finds role enhancement
- 21 U.S.C. §§ 841(b)(1)(A)-(B) or 960(b)(1)-(2) if **meth** and court finds role enhancement
- 21 U.S.C. §§ 841(b)(1)(A)-(B) or 960(b)(1)-(2) for **any drug** if court finds offense involved fentanyl/analogue and role enhancement

**Deportable persons:** ineligible to apply time credits if subject to a final order of removal under any provision of the INA

*See* 18 U.S.C. § 3632(d)(4)(D)-(E)

Exhibit 10

```
   OKLAX        *       INMATE EDUCATION DATA        *      05-01-2020
   PAGE 001 OF 001 *           TRANSCRIPT            *      14:13:35

   REGISTER NO: 26304-009    NAME..: ESPEJO                 FUNC: PRT
   FORMAT.....: TRANSCRIPT    RSP OF: OKL-OKLAHOMA CITY FTC

   ------------------------- EDUCATION INFORMATION -------------------------
   FACL ASSIGNMENT DESCRIPTION              START DATE/TIME STOP DATE/TIME
   OKL  ESL HAS    ENGLISH PROFICIENT           03-08-2018 0900 CURRENT
   OKL  GED HAS    COMPLETED GED OR HS DIPLOMA   03-08-2018 0900 CURRENT


   ------------------------- EDUCATION COURSES -------------------------
   SUB-FACL    DESCRIPTION                   START DATE  STOP DATE EVNT AC LV  HRS
   BRY         RPP2,3,6 - COSMETOLOGY        02-05-2019 12-10-2019  P  C  C  1500
   BRY         VISUAL ARTS ADVANCED CLASS    04-12-2019 07-12-2019  P  C  P    12
   BRY         GRANT WRITING                 01-26-2019 03-16-2019  P  C  P    12
   BRY         FINDING JOB W/ TROUBLED PAST  01-25-2019 01-25-2019  P  C  P     1
   BRY         VISUAL ARTS DRAMATIC PERF     09-21-2018 09-21-2018  P  C  P    30
   BRY         RPP2,3,6 - COSMETOLOGY        10-05-2018 11-15-2018  P  W  I   220
   BRY         MAKING OF DISNEYLAND RESORT   07-30-2018 07-30-2018  P  C  P     1
   BRY         LIFE STORY - ALBERT EINSTEIN  09-03-2018 09-03-2018  P  C  P     1
   BRY         MAKING OF DISNEYLAND RESORT   07-23-2018 07-23-2018  P  C  P     1
   BRY         RPP6 - SIGN LANGUAGE (ACE)    09-20-2018 10-15-2018  P  C  P    12
   BRY         DOLPHIN LIFE                  06-11-2018 06-11-2018  P  C  P     1
   BRY         THE EARTH IN 250 MILLION YEARS 06-04-2018 06-04-2018  P  C  P     1
   BRY         HURRICANE KATRINA             05-21-2018 05-21-2018  P  C  P     1
   BRY         DECORATED BATTLES IN AMERICA  05-14-2018 05-14-2018  P  C  P     1
   BRY         TIGER SHARKS                  07-02-2018 07-02-2018  P  C  P     1
   BRY         TIGER SHARKS                  06-25-2018 06-25-2018  P  C  P     1
   BRY         DINOSAUR BURIAL GROUNDS       07-09-2018 07-09-2018  P  C  P     1
   BRY         MAKING OF DISNEYLAND RESORT   07-15-2018 07-15-2018  P  C  P     1
   BRY         20 - 21ST CENTURY CIVILIZATION 09-27-2018 09-27-2018  P  C  P     1
   BRY         JUMBO SQUIDS                  09-28-2018 09-28-2018  P  C  P     1
   BRY         BE THE BEST MOM YOU CAN BE    05-07-2018 06-11-2018  P  C  P    10
   BRY         OBESITY CLASS ON HEALTH RISKS 05-22-2018 06-11-2018  P  C  P    12
   BRY         RPP3 - PERSONAL FINANCE       05-22-2018 05-22-2018  P  C  P     8
   BRY         RPP6 - PARENTING/FAITH BASED  03-22-2018 04-23-2018  P  C  P    12




   G0000       TRANSACTION SUCCESSFULLY COMPLETED
```

Exhibit 11