FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

FEB 0 7 2022

TAMMY H. DOWNS, CLERK
By:_____
DEP CLERK

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| vs. ) | NO. 4:14CR00201 KGB |
| ) | |
| LYNN ALISA ESPEJO ) | |

**REPLY TO GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION FOR EARLY TERMINIATION OF SUPERVISED RELEASE**

Now comes Lynn Alisa Espejo, pro se, and for her REPLY TO GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION FOR EARLY TERMINATION OF SUPERVISED RELEASE states as follows:

1. In its response the government makes many misleading statements including misstatements of factual dates, misstatements regarding the intent of supervised release, as well as conclusory assertions regarding the defendant's state of mind and intentions. The government's response also attempts to relitigate certain aspects of the defendant's case—aspects which this Court already considered at the defendant's sentencing. In consideration of the Court's time, the defendant will not address each and every misstatement, and none of the misstatements of factual dates.

2. The defendant has made no attempts to hide anything from this Court or Ms. Fitzhugh, despite the government's attempts in its response to imply otherwise.

3. The defendant agrees with the government that she is fortunate that she was released under the CARES Act, even though the government argued against such release, and referred to the defendant's release from a deadly situation in its response as a "windfall". As recently as last month, three non-violent prisoners with sentences

ranging from 42-54 months, died from COVID at a women's prison camp in West Virginia, due to what appears to be medical neglect and failure of the Bureau of Prisons (BOP) to release prisoners who qualified under the CARES Act. Those deaths, as well as others, are currently the subject of Congressional hearings examining the BOP's failures with respect to these matters. Many more federal prisoners have died of COVID during the pandemic. Their deaths have brought attention to the horrific condition under which prisoners are being housed, and the continued examples of inhumane treatment, indifference to, and medical neglect of prisoners entrusted to the BOP's care.

4. The defendant further agrees with the government that she was fortunate that this Court granted her motion for Compassionate Release which released the defendant from yet another deadly COVID situation, has allowed the defendant to help care for her very ill mother, allowed the defendant to receive mental health counseling for the anxiety and PTSD caused by incarceration the defendant suffers, and gave the defendant the opportunity to graduate with her master's degree. The government argued against that motion as well, and also referred to the Court's decision to grant it as a "windfall" for the defendant.

5. The defendant and her husband do maintain separate finances at the advice of attorneys, and have done so since March 2011. The defendant was indicted in the instant case on October 8, 2014. Regardless of the government's arguments otherwise, there is nothing manipulative in doing so, and many married couples maintain separate financial lives. The government continues to insert the defendant's husband's finances into the restitution owed by the defendant, regardless that the defendant's husband is

not under the jurisdiction of the Court, not a party to the defendant's case, and Arkansas is not a community property state. The restitution order in this case refers only to the defendant's gross income, and not her husband's income.

6. The government asks this Court to imply that the instant motion is deceptive because it does not provide information regarding the defendant's husband's business dealings. However, the existing restitution order only requires payments out of defendant's gross income, and the government has provided no evidence that the defendant's husband's personal or business assets are commingled with that of the defendant. The defendant's probation officer, Ms. Fitzhugh, was informed of the defendant's husband's business from the time of her first home visit in **February 2021**, and of the defendant's commencing employment at such business in **January 2022** (emphasis added).

7. Nothing in the defendant's conditions of release prohibit the defendant from working directly for a family member. The defendant is only required to work at a full time job (at least 30 hours per week) at a lawful type of employment. The government argues that the defendant is taking steps to minimize her restitution payments. The government makes baseless allegations against the defendant without any proof and attempts to mislead this Court into believing the defendant is not following the stipulations of her supervised release. Paystubs attached hereto as Exhibits 1 and 2 are provided to the Court as proof of the defendant's pay and hours worked. The defendant paid $150 toward her restitution in January 2022, which represents 10% of her gross monthly income from her current job, as is ordered by this Court, and in full compliance with her supervised release conditions. The defendant has taken no steps

to minimize her restitution payments, paid a nominal amount toward her restitution even in months she was excused from doing so, and has worked more than the required 30 hours each week, regardless of the government's assertions otherwise.

8. On December 27, 2021, the defendant was able to obtain employment with her husband's business when another employee tendered their two week notice. The defendant immediately informed Ms. Fitzhugh of this job opportunity. On January 1, 2022, when the defendant filled out her monthly supervision report, she listed the job and the rate of pay as was required for her monthly reporting. The defendant's first day of work was January 5, 2022. The defendant is paid as a W2 employee every two weeks like every other employee that works for the business. The day the defendant received her first paycheck was January 18, 2022, and she immediately provided a copy of that paycheck and paystub to Ms. Fitzhugh, in full compliance with the conditions of her supervised release. The defendant has continuously kept Ms. Fitzhugh informed of her attempts to obtain employment.

9. There are no orders of this Court that prohibit the defendant from owning her own business. The government is correct that the defendant disclosed in her PSR at the time of that report, April 2017, that the defendant owned a business, Sage Clothing, Inc., that the defendant started in 2013. That corporation owned a retail store located at 4531 John F Kennedy Blvd in North Little Rock, Arkansas, from November 2013-February 2016, and rental spaces in various marketplaces during the years of 2016-2018. The government is very aware, since it used grand jury subpoenas to obtain the banking records and tax returns of that business, that the business was actually funded using personal credit cards belonging to the defendant, as well as money given to the

defendant by her husband to start the business, and that the defendant nor her husband were ever paid any monies from the business. A final tax return for that business was filed for the year ending December 31, 2018. Since that date the defendant has not owned a business, and there have been no notable changes to the defendant's financial situation since sentencing.

10. The government now implies that the defendant's husband started a similar business in October 2021, in order to "reopen" a previous retail store location belonging to the defendant in Sherwood, Arkansas. While the defendant has no access to her husband's financial records, she is aware that her husband did start a business sometime in 2019, during the time the defendant was incarcerated at Bryan, Texas, and that the business has owned several retail locations since that time—including a retail store in Sherwood, Arkansas. The defendant has no ownership in her husband's business and no access to any monies belonging to her husband's business. She is only an employee and a very supportive spouse.

11. The government argues against the defendant being terminated from supervised release because the defendant owes restitution. Under § 380.10 owing restitution "does not adversely affect early termination eligibility…". It is apparent that the government only wishes for the defendant to rely on her husband's income and finances to pay more in restitution, even attempting to dictate to the USPO that the defendant's husband needed to pay her more than minimum wage (regardless that all other employees of the business are paid minimum wage, and the defendant is working at a minimum wage job). Further, the government in its response implies that the defendant is actually doing something wrong by working at a legal job for her

husband's business in order to earn money to pay towards her restitution, while also admitting in its response that "those convicted of serious felonies are regularly restricted in their options for employment." Getting her license and becoming gainfully employed in her chosen career field, which the defendant is highly motivated to do, would enable the defendant to pay more towards restitution, as well as work for someone other than her husband. If the defendant were to serve another two years on supervised release, she would be 60 years old before she could sit for her license. The government's arguments are illogical.

12. Congress' intent is clear that "supervised release be used to assist individuals in their transition to community life and to fulfill rehabilitative ends distinct from those served by incarceration." The case law cited by the government in support of its arguments is outdated, and the decisions in those cases do not follow recent changes in judiciary policy, because current policies were not in place at the time of those rulings.

13. The government further argues that the defendant should have applied for a prospective waiver from the counseling licensing board. However, a waiver does not appear to be a requirement to her licensure. Regardless, the defendant would not be able to apply for a waiver until she is terminated from supervised release and can start the process of applying to be licensed. The government's argument relies on language in (see https://abec.statesolutions.us/wp-content/uploads/2020/06/2020-Rules-Final-6-22-20.pdf) "Waiver Request for Offenses on Background Check (a) If an individual has been convicted of an offense listed in A.C.A. §17-2-102(a), except those permanently disqualifying offenses found in A.C.A. §17-2-102(e), the Board may waive disqualification of a potential applicant or revocation of a license based on the

conviction *if a request for a waiver* is made by:

1. An affected applicant for a license…

(c) A request for a waiver, *if made* by an applicant, *must* be in writing and *accompany the completed application and fees."* (emphasis added)

Additionally, when looking at A.C.A. §17-2-102(a) and A.C.A. §17-2-102(e), none of the offenses for which the defendant was convicted are listed as a disqualifying offence. The government takes the position that the defendant was convicted of theft of property (see https://law.justia.com/codes/arkansas/2019/title-5/subtitle-4/chapter-36/subchapter-1/section-5-36-103/), which is an offense listed in A.C.A. §17-2-102(a) for which the defendant could apply for a waiver. The defendant has discussed her circumstances with the counseling license board and believes based on those discussions that they did not bar licensure. And nothing in the instructions for licensure requires that the defendant must apply for a waiver ahead of time. As previously stated in her motion, the defendant is unable to complete an application for licensure until her supervised release is terminated and the plain language of the licensing board requirements for licensure clearly state that a waiver if made "must…accompany the completed application and fees" which makes the government's arguments irrelevant.

14. What is most telling about the government's response is its failure to respond to the defendant's arguments regarding the First Step Act (FSA) Earned Time Credits (ETC), and the sentencing disparity caused by the failure of the BOP to timely implement it.

Its lack of response indicates that the government undoubtedly concurs with the defendant's arguments that had the FSA been implemented timely, the defendant would have already served 21 months of her supervised release time instead of 12 months. And that the defendant would have actually been released from prison one month earlier than she was released under the CARES Act, and would have been released directly to supervised release not home confinement.

15. The USPO has the best understanding of the defendant's needs at this juncture of the defendant's case. Ms. Fitzhugh supports the defendant's motion, encouraged the defendant to file said motion, and does not see the need to continue to waste valuable resources supervising the defendant. This is something even the government had to admit in its response.

WHEREFORE, the defendant prays that her MOTION FOR EARLY TERMINATION OF SUPERVISED RELEASE be granted and for all other relief to which she may be entitled.

Respectfully submitted,

*Lynn A. Espejo*
Lynn A. Espejo, pro se
9309 Millers Pointe Court
Sherwood, Arkansas 72120
lynnespejo@sbcglobal.net

## CERTIFICATE OF SERVICE

The undersigned certifies that she served the foregoing Reply To Government's Response To Defendant's Motion For Early Termination of Supervised Release by mailing it, first class mail prepaid, to the government in an envelope addressed to Jonathan Ross, US Attorney, US Attorney's Office, 425 West Capitol Avenue Suite 500, Little Rock, Arkansas 72201, on the date set forth below.

_____
Lynn A. Espejo
February 7, 2022

1/17/2022

Lynn A Denton                                                                 **692.64

Six Hundred Ninety-Two and 64/100*********************************************************************

Lynn A Denton
9309 Millers Pointe Court
Sherwood, AR 72120

Pay Period: 01/02/2022 - 01/15/2022

---

**Employee:** Lynn A Denton, 9309 Millers Pointe Court, Sherwood, AR 72120
**SSN:** ***-**-3389
**Pay Period:** 01/02/2022 - 01/15/2022   **Pay Date:** 01/17/2022

| Earnings and Hours | Hours | Rate  | Current | YTD Amount |
|--------------------|-------|-------|---------|------------|
| Hourly             | 68:11 | 11.00 | 750.02  | 750.02     |

| Taxes                      | Current | YTD Amount |
|----------------------------|---------|------------|
| Medicare Employee Addl Tax | 0.00    |            |
| Federal Withholding        | 0.00    |            |
| Social Security Employee   | -46.50  | -46.50     |
| Medicare Employee          | -10.88  | -10.88     |
| AR - Withholding           | 0.00    |            |
|                            | -57.38  | -57.38     |

| Net Pay | 692.64 | 692.64 |
|---------|--------|--------|

SAGE Boutique, 9309 Millers Pointe Court, Sherwood, AR 72120, Pancho H Espejo dba SAGE Boutique

---

**Employee:** Lynn A Denton, 9309 Millers Pointe Court, Sherwood, AR 72120
**SSN:** ***-**-3389
**Pay Period:** 01/02/2022 - 01/15/2022   **Pay Date:** 01/17/2022

| Earnings and Hours | Hours | Rate  | Current | YTD Amount |
|--------------------|-------|-------|---------|------------|
| Hourly             | 68:11 | 11.00 | 750.02  | 750.02     |

| Taxes                      | Current | YTD Amount |
|----------------------------|---------|------------|
| Medicare Employee Addl Tax | 0.00    |            |
| Federal Withholding        | 0.00    |            |
| Social Security Employee   | -46.50  | -46.50     |
| Medicare Employee          | -10.88  | -10.88     |
| AR - Withholding           | 0.00    |            |
|                            | -57.38  | -57.38     |

| Net Pay | 692.64 | 692.64 |
|---------|--------|--------|

SAGE Boutique, 9309 Millers Pointe Court, Sherwood, AR 72120, Pancho H Espejo dba SAGE Boutique



Exhibit 1

1/31/2022

Lynn A Denton                                                                                                          **654.94

Six Hundred Fifty-Four and 94/100*************************************************************************************

Lynn A Denton
9309 Millers Pointe Court
Sherwood, AR 72120

Pay Period: 01/16/2022 - 01/29/2022

| Employee | | | | | SSN | |
|---|---|---|---|---|---|---|
| Lynn A Denton, 9309 Millers Pointe Court, Sherwood, AR 72120 | | | | | ***-**-3389 | |
| | | | | | Pay Period: 01/16/2022 - 01/29/2022 | Pay Date: 01/31/2022 |
| Earnings and Hours | Hours | Rate | Current | YTD Amount | | |
| Hourly | 68:15 | 11.00 | 750.75 | 1,500.77 | | |
| Taxes | | | Current | YTD Amount | | |
| Medicare Employee Addl Tax | | | 0.00 | | | |
| Federal Withholding | | | -25.00 | -25.00 | | |
| Social Security Employee | | | -46.55 | -93.05 | | |
| Medicare Employee | | | -10.88 | -21.76 | | |
| AR - Withholding | | | -13.38 | -13.38 | | |
| | | | -95.81 | -153.19 | | |
| Net Pay | | | 654.94 | 1,347.58 | | |

SAGE Boutique, 9309 Millers Pointe Court, Sherwood, AR 72120, Pancho H Espejo dba SAGE Boutique

| Employee | | | | | SSN | |
|---|---|---|---|---|---|---|
| Lynn A Denton, 9309 Millers Pointe Court, Sherwood, AR 72120 | | | | | ***-**-3389 | |
| | | | | | Pay Period: 01/16/2022 - 01/29/2022 | Pay Date: 01/31/2022 |
| Earnings and Hours | Hours | Rate | Current | YTD Amount | | |
| Hourly | 68:15 | 11.00 | 750.75 | 1,500.77 | | |
| Taxes | | | Current | YTD Amount | | |
| Medicare Employee Addl Tax | | | 0.00 | | | |
| Federal Withholding | | | -25.00 | -25.00 | | |
| Social Security Employee | | | -46.55 | -93.05 | | |
| Medicare Employee | | | -10.88 | -21.76 | | |
| AR - Withholding | | | -13.38 | -13.38 | | |
| | | | -95.81 | -153.19 | | |
| Net Pay | | | 654.94 | 1,347.58 | | |

SAGE Boutique, 9309 Millers Pointe Court, Sherwood, AR 72120, Pancho H Espejo dba SAGE Boutique



Exhibit 2